UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC, <br><br>        Plaintiff, <br><br>  v. <br><br>UNITED STATES, <br><br>        Defendant, <br><br>  and <br><br>DIAMOND SAWBLADES MANUFACTURERS' COALITION, <br><br>        Defendant-Intervenor. | Court No. 20-00060 |

**PLAINTIFF'S COMMENTS IN OPPOSITION TO THE FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

Walter J. Spak
Jay C. Campbell
Dean A. Barclay
Ron Kendler
Allison J.G. Kepkay

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

February 28, 2022

TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     STANDARD OF REVIEW ....................................................................................... 2

III.    ARGUMENT .......................................................................................................... 2

        A.      The Redetermination Fails to Comply with the Court's Holding that the
                Plain Language of the EAPA Requires Some Level of Culpability ...................... 2

                1.      CBP continues to misinterpret the plain language of §
                        1517(a)(5)(A) highlighted by the Court.......................................................... 3

                2.      CBP's authority to investigate whether an importer entered
                        merchandise through fraud, gross negligence, or negligence under
                        § 1592(a) does not negate the culpability requirement under
                        § 1517(a)(5)(A) .............................................................................................. 4

                3.      The culpability requirement under § 1517(a)(5)(A) is not
                        inconsistent with the covered merchandise referral procedure under
                        § 1517(b)(4) ..................................................................................................... 8

        B.      The Redetermination Fails to Comply with the Court's Holding that DTT
                USA Did Not Have an Obligation to Seek a Commerce Scope Ruling ............... 10

                1.      Commerce's 2006 IDM did not put importers on notice of
                        circumvention concerns with respect to third-country welding of
                        segments and cores ........................................................................................ 11

                2.      Recognizing that DTT USA lacked an obligation to request a
                        Commerce scope ruling would not subvert the EAPA's purpose ............... 14

        C.      The Redetermination Fails to Establish that DTT USA Made a False
                Statement ......................................................................................................... 15

IV.     CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Tech. & Materials Co., Ltd. v. United States*,
  35 C.I.T. 1380 (2011) ..................................................................................................11

*AMS Assoc. v. United States*,
  737 F.3d 1338 (Fed. Cir. 2013)....................................................................................10

*Icdas Celik Enerji Tersane Ve Ulasim Sanayi, A.S. v. United States*,
  475 F. Supp. 3d 1293 (Ct. Int'l Trade 2020) .............................................................4, 8

*Perfectus Aluminum, Inc. v. United States*,
  391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019),
  *aff'd* 836 F. App'x 883 (Fed. Cir. 2020)......................................................................9

*Quiedan Co. v. United States*,
  927 F.3d 1328 (Fed. Cir. 2019)......................................................................................9

*Shandong Dongfang Bayley Wood Co. v. United States*,
  375 F. Supp. 3d 1339 (Ct. Int'l Trade 2019) ...............................................................10

*Sunpreme Inc. v. United States*,
  256 F. Supp. 3d 1265 (Ct. Int'l Trade 2017)*,
  aff'd in relevant part* 946 F.3d 1300 (Fed. Cir. 2020) ...............................................9

*Trust Chem Co. v. United States*,
  819 F. Supp. 2d 1373 (Ct. Int'l Trade 2012) .............................................................2, 4

## STATUTES AND REGULATIONS

19 U.S.C. § 1484.................................................................................................................12

19 U.S.C. § 1517(a) .............................................................................................................5

19 U.S.C. § 1517(a)(5)(A) ........................................................................................... passim

19 U.S.C. § 1517(b)(1) .......................................................................................................7

19 U.S.C. §§ 1517(b)(1)-(2) ...............................................................................................7

19 U.S.C. § 1517(b)(4) .......................................................................................................8

19 U.S.C. § 1517(b)(4)(A) ...................................................................................................3

19 U.S.C. § 1517(b)(4)(B) ...................................................................................................9

AMERICAS 112027905

19 U.S.C. § 1517(c)(1)..............................................................................................14

19 U.S.C. § 1517(d)(1) ............................................................................................14

19 U.S.C. § 1517(e) ...................................................................................................7

19 U.S.C. § 1517(g)(2)(A).......................................................................................1, 2

19 U.S.C. § 1517(g)(2)(B).......................................................................................1, 2

19 U.S.C. § 1592..................................................................................................5, 7, 8

19 U.S.C. § 1592(a) ........................................................................................... passim

19 U.S.C. § 1592(b)(1)(A)..........................................................................................7

19 U.S.C. § 1592(c) ....................................................................................................7

19 U.S.C. § 1677j(c) .................................................................................................10

19 C.F.R. 165.1 ....................................................................................................2, 3, 4

## LEGISLATIVE MATERIALS

H.R. Rep. No. 114-114, pt. 1 (2015).........................................................................6, 7

## ADMINISTRATIVE DETERMINATIONS

*Diamond Sawblades and Parts Thereof from the People's Republic of China*,
    84 Fed. Reg. 33920, 33920-21 (Dep't Commerce July 16, 2019).........................10

*Final Determination of Sales at Less than Fair Value: Diamond Sawblades and Parts Thereof
    from the People's Republic of China*,
    71 Fed. Reg. 29303 (Dep't Commerce May 22, 2006),
    and accompanying Issues & Decision Memorandum..................................... passim

## MISCELLANEOUS

*Regulations to Improve Administration and Enforcement of Antidumping and Countervailing
    Duty Laws,*
    86 Fed. Reg. 52300 (Dep't Commerce Sept. 20, 2021)........................................13

AMERICAS 112027905

## I.   INTRODUCTION

Plaintiff Diamond Tools Technology LLC ("Plaintiff" or "DTT USA") hereby submits comments in opposition to the final results of redetermination by U.S. Customs and Border Protection ("CBP").  *See Final Remand Redetermination – Diamond Tools Technology LLC v. United States*; Court No. 20-00060, Slip Op. 21-151 (Court of Int'l Trade, Oct. 29, 2021) ("Redetermination"), EAPA Case No. 7184, (Jan. 27, 2022) (ECF 70) ("Redetermination"); *Diamond Tools Technology LLC v. United States*, CIT Consol. Ct. No. 20-00060, Slip Op. 21-151 (Oct. 29, 2021) ("Remand Order").[1]

In the Remand Order, the Court ordered CBP to reconsider "whether DTT USA made any material and false statement or act, or material omission" and to reach a finding consistent with the Court's opinion that, in the underlying Enforce and Protect Act ("EAPA") investigation, CBP "failed to establish that DTT USA entered merchandise by means of material and false statement or an omission that is material . . . ."  Remand Order at 62.  In its Redetermination, CBP "continue{d} to find that DTT made material false statements, or acts, or material omissions with respect to its entries of diamond sawblades imported prior to December 1, 2017." Redetermination at 1; *see generally id.*  As explained below, CBP's finding is inconsistent with the Court's Remand Order, and its affirmative "evasion" determination remains "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."   19 U.S.C. § 1517(g)(2)(A), (B).

In particular, CBP failed to follow the Court's instruction that the plain language of the EAPA requires some level of culpability for an affirmative determination of "evasion."  CBP further disregarded the Court's holding that no legal authority obligated DTT USA to seek a

---

[1]  References to underlying record documents use the abbreviated names from DTT USA's initial brief (ECF 48, 49) ("Pl. Br.") and reply brief (ECF 54) ("Reply Br.").

scope ruling from the Department of Commerce ("Commerce") to confirm that DTT USA's imports of diamond sawblades manufactured in Thailand were outside the scope of the antidumping ("AD") order on diamond sawblades from China – particularly in light of Commerce's 2006 country-of-origin determination in the underlying AD investigation.  *See Final Determination of Sales at Less than Fair Value: Diamond Sawblades and Parts Thereof from the People's Republic of China*, 71 Fed. Reg. 29,303 (Dep't Commerce May 22, 2006) and accompanying Issues and Decision Memorandum ("2006 IDM").  Ultimately, CBP again fails to establish that DTT USA made material "false" statements or "omissions" when it entered imports of diamond sawblades before December 1, 2017.  Therefore, CBP's affirmative "evasion" determination with respect to DTT USA's pre-December-2017 entries should not be sustained.

## II.     STANDARD OF REVIEW

The court will not sustain a remand redetermination if that decision fails to comply with the terms of the court's remand order.   *See*, *e.g.*, *Trust Chem Co. v. United States*, 819 F. Supp. 2d 1373, 1378 (Ct. Int'l Trade 2012) (citation omitted).  In addition, the court evaluates whether a "determination, finding, or conclusion" under the EAPA is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2)(A), (B).

## III.    ARGUMENT

### A.     The Redetermination Fails to Comply with the Court's Holding that the Plain Language of the EAPA Requires Some Level of Culpability

At bottom, CBP's Redetermination should not be sustained because CBP disregards the Court's holding that the EAPA requires some finding of culpability before CBP may determine that an importer entered merchandise through "evasion."  *See* Remand Order at 61 ("{N}either the text of the EAPA statute nor 19 C.F.R. 165.1 supports Customs' statement that it does not

2

need to establish 'any level of culpability.'").  Here, CBP (1) ignores the Court's holding concerning the plain meaning of the terms "false" and "omission" under 19 U.S.C. § 1517(a)(5)(A); (2) illogically claims that 19 U.S.C. § 1592(a)'s enumeration of *specific* degrees of culpability negates the EAPA's requirement to find *some* degree of culpability; and (3) wrongly asserts that recognizing a culpability requirement under the EAPA would be inconsistent with the "covered merchandise referral" provision, 19 U.S.C. § 1517(b)(4)(A).

### 1.  CBP continues to misinterpret the plain language of § 1517(a)(5)(A) highlighted by the Court

CBP fails to interpret the second requirement for a finding of "evasion" under the EAPA – *i.e.*, a "material and false" statement or "omission that is material" – in a manner that is consistent with the Court's opinion.  The EAPA and regulation require CBP to determine whether the importer entered covered merchandise through a material "false" statement or material "omission."  19 U.S.C. § 1517(a)(5)(A); *see also* 19 C.F.R. § 165.1 (defining "evade" or "evasion").  In the Remand Order, the Court found that the plain meaning of these terms requires some degree of culpability before CBP may determine that an importer engaged in evasion.  *See* Remand Order at 61.  Contrary to the Court's instruction, on remand CBP persists in its view that, under the EAPA, an importer can "evade" an antidumping order without any culpability at all.

Citing Black's Law Dictionary, the Court noted that "false" "is defined as: 'Untrue . . . Deceitful . . . Not genuine; inauthentic . . . {,}'" – whether "by intent, by accident, or by mistake" – while "omission" "is defined as: 'A failure to do something; esp., a neglect of *duty* . . . .'"  *Id.* at 56 (citing Black's Law Dictionary (11th ed. 2019)) (emphasis in original).  As the Court recognized, the plain meaning of these terms connotes some measure of culpability (*e.g.*, knowledge, intent, negligence, neglect of duty).  *See id.* at 61.  Accordingly, the Court held that

AMERICAS 112027905

"neither the text of the EAPA statute nor 19. C.F.R 165.1 supports Customs' statement that it does not need to establish 'any level of culpability.'" *Id.* (citing 19 U.S.C. § 1517(a)(5)(A) and 19 C.F.R. § 165.1).  Furthermore, as DTT USA highlighted during CBP's remand proceeding, "evasion" is defined as "{a}n act of eluding, dodging, or avoiding, or avoidance by artifice." *Comments on Draft Remand Redetermination* (Jan. 21, 2022) at 5 (ECF 74-1, P.D. 5) (citing *Evasion*, Black's Law Dictionary (11th ed. 2019)) ("DTT USA Draft Remand Comments").

In response, CBP ignored the Court's definition for "false," asserting instead that "false" simply means "Erroneous, wrong."  Redetermination at 14 (citing "Oxford English Dictionary Online, December 2021"); *see also* Remand Order at 61.  CBP also failed to address the Court's definition for "omission."  *See* Redetermination at 14.  Because CBP ignored the Court's holding that culpability inheres in § 1517(a)(5)(A)'s use of the terms "material" and "omission," *cf. Icdas Celik Enerji Tersane Ve Ulasim Sanayi, A.S. v. United States*, 475 F. Supp. 3d 1293, 1304 (Ct. Int'l Trade 2020) (stating that "an altered methodology that negates the court's remand instruction does not comply with those instructions"), the Redetermination cannot be sustained. *See Trust Chem*, 819 F. Supp. 2d at 1378.  Additionally, because CBP's refusal to recognize a culpability requirement is inconsistent with § 1517(a)(5)(A)'s use of the terms "evasion," "false," and "omission," the Redetermination is contrary to law.  *See*, *e.g.*, *Icdas Celik*, 475 F. Supp. 3d at 1300, 1305 (concluding that the agency's "remand methodology does not comport with the plain language of the statute" and deeming it "not in accordance with law").

> **2.     CBP's authority to investigate whether an importer entered merchandise through fraud, gross negligence, or negligence under § 1592(a) does not negate the culpability requirement under § 1517(a)(5)(A)**

Despite the Court's holding, CBP further denies a culpability requirement in § 1517(a)(5)(A) based on a contrived dissimilarity to the customs penalties provision, 19 U.S.C.

§ 1592.  Specifically, CBP asserts that, unlike the EAPA, § 1592(a) uses the terms "fraud, gross negligence, or negligence{,}" and argues that requiring CBP to find *any* (as opposed to the *same*) levels of culpability in an EAPA investigation would be duplicative.  *See* Redetermination at 4-6.  Besides assuming, without basis, that a statute may require only the three levels of culpability that § 1592(a) sets forth, and no other, CBP's argument ignores the plain meaning of the EAPA's language, discussed above, as well as the EAPA's purpose itself.

According to the Redetermination, because § 1592(a) requires CBP to find that the importer entered merchandise "by fraud, gross negligence, or negligence" to collect duties on already liquidated entries or impose penalties under that statute, "Congress would have" likewise included such language in § 1517(a) if Congress had intended to require CBP to "determine whether the importer did so intentionally, or without exercise of reasonable care . . . ."  *Id.* at 4-5.  CBP's reasoning is flawed and, like CBP's preferred definition of "false" discussed above, conflicts with the Court's Remand Order.  The requirement in § 1592(a) that CBP find a *specific* level of culpability does not negate a culpability requirement under § 1517(a)(5)(A).  As discussed above, the Court held that neither the statute nor the regulation supports CBP's "statement that it does not need to establish 'any level of culpability.'"  Remand Order at 61.

Although the EAPA requires some degree of culpability to support an affirmative determination of "evasion," the statute does not require CBP to determine a *specific level* of culpability that § 1592(a) sets forth (*i.e.*, fraud, gross negligence, or negligence).  The legislative history indicates that Congress enacted the EAPA in response to domestic industries' concern that CBP was unable or unwilling to investigate evasion of AD/CVD orders in a timely manner, resulting in uncollected AD/CVD duties and denying U.S. industries an effective trade remedy:

> CBP has a critical role in preventing and acting against evasion.  Evasion often involves the violation of laws and regulations enforced by CBP, and

> Congress expects CBP to fully enforce those laws and regulations. However, CBP sometimes requires time to conduct an inquiry into evasion and collect the evidence needed to meet the criteria to apply the relevant laws and regulations.  The law-enforcement nature of CBP's actions makes it inappropriate to subject those actions to timelines. . . .  In the meantime, though, evasion continues, leaving antidumping and countervailing duties uncollected and U.S. industries denied an effective remedy from unfair trade.  ***The Committee has often heard from concerned domestic industries that timely collection of the antidumping and countervailing duties owed on evading imports is as important or even more important than having the parties involved in evasion subject to penalties or criminal liability.***  As a result, this provision grants the Department of Commerce the authority to administratively investigate evasion and instruct CBP to collect or preserve for collection antidumping and countervailing duties owed on evading imports.

H.R. Rep. No. 114-114, pt. 1, at 85 (2015) (emphasis added).

Viewed in the context of the EAPA's legislative history, relieving CBP of the obligation to find a ***specific level*** of culpability (such as fraud, gross negligence, or negligence) is consistent with Congress's objective to empower CBP to act quickly to protect the revenue of the United States (antidumping and countervailing duties) and affected domestic industries in instances of "evasion."  This does not mean, however, that Congress intended for CBP to make an affirmative evasion determination without any finding that the importer was culpable.  Rather, as discussed above, the EAPA's use of the terms "evasion," "false," and "omission" indicates that culpability is required – but need not be defined or proven at a specific level.  In contrast, § 1592(a) requires CBP to find a specific level of culpability because the amount of penalties CBP may impose depends on the level of culpability found (*i.e.*, fraud, gross negligence, or negligence).  *See* 19 U.S.C. § 1592(a), (c).

AMERICAS 112027905

Similarly, CBP claims that requiring it "to find that the importer intended to make false statements . . . would be duplicative of CBP's authority pursuant to section 1592 and defeat the purpose of EAPA."  Redetermination at 5.  CBP again fails to account for the EAPA's purpose, which **supplements** and **complements**, rather than duplicates, § 1592.  As the above quote from the legislative history shows, other statutes authorized but did not require CBP to investigate "evasion" even before the EAPA was enacted.  Congress enacted the EAPA so that, in addition to the ability to impose penalties under § 1592(a), CBP would have not only the ability but also the obligation – if "reasonably available" evidence in an allegation "reasonably suggests" evasion – to investigate evasion quickly and "preserve for collection antidumping and countervailing duties owed on evading imports."  19 U.S.C. §§ 1517(b)(1)-(2); H.R. Rep. No. 114-114, pt. 1, at 85 (2015).

For example, under the EAPA, CBP can impose interim measures upon finding "reasonable suspicion" of evasion of AD and CVD orders – a power it lacks under § 1592.  *See* 19 U.S.C. § 1517(e).  Furthermore, the EAPA directs that CBP "*shall*" initiate an EAPA investigation if it "determines that the information . . . reasonably suggests that covered merchandise has been entered . . . through evasion."  19 U.S.C. § 1517(b)(1) (emphasis added). In contrast, § 1592, gives CBP the **discretion** to conduct a penalty investigation if it "determines that further proceedings are **warranted** . . . ."  19 U.S.C. § 1592(b)(1)(A) (emphasis added).

CBP also mischaracterizes DTT USA's position when it claims that DTT USA asks CBP to "ignore" the view that the EAPA and § 1592 "are two very different statutory provisions, enacted at different times, for different purposes."  Redetermination at 14.  As discussed above, the purpose of the EAPA supplements and complements – rather than duplicates – the purpose of § 1592, which CBP itself recognizes.  *See* Redetermination at 15 ("Congress enacted EAPA so

that, 'in addition to the ability to impose penalties under § 1592(a), CBP would have the ability to investigate evasion quickly . . . .'  DTT's statement is correct.").

CBP further claims that:

> Declaring that no duties are owed, when, in fact, the goods are subject to antidumping and/or countervailing duty orders (and thus, payment of such duties), is a false statement, regardless of whether the importer intended to deceive the government.  Under EAPA, the absence of intent to deceive the U.S. Government does not absolve the importer from payment of duties owed on imported merchandise.

*Id.*  CBP's argument is unavailing.  As the Court found, DTT USA "complied fully" with Commerce's clear directive and labeled its imports in a way "expressly contemplated and sanctioned by Commerce's 2006 IDM."  Remand Order at 57-58.  Consequently, DTT USA's statements that its entries were not subject to the AD order on diamond sawblades from China were ***not***, in fact, "false" at the times of entry, because "false" conveys a culpable mental state.

By concocting a "duplicative" overlap between two statutory provisions that are, in fact, complementary, CBP has further misread the plain language of the EAPA.  Therefore, the Redetermination fails to comply with the Remand Order and is otherwise contrary to law.  *See Icdas Celik*, 475 F. Supp. 3d at 1300, 1304-05.

### 3. The culpability requirement under § 1517(a)(5)(A) is not inconsistent with the covered merchandise referral procedure under § 1517(b)(4)

CBP's assertion that a culpability requirement under § 1517(a)(5)(A) would contravene other elements of the EAPA is also unavailing.  CBP claims that requiring any culpable mental state "would be inconsistent with the covered merchandise referral process as outlined in the EAPA statute."  Redetermination at 6 (citing 19 U.S.C. § 1517(b)(4)).  According to CBP, "importers would inevitably argue that if CBP is unable to determine whether merchandise is covered, the importers also should not be expected to have known that the merchandise was

covered at the time of importation and thus did not have any intent to evade the payment of duties . . . ."  *Id.*  CBP's argument is speculative and unfounded.

CBP's argument is speculative because, even if CBP were uncertain whether a product was covered merchandise, Commerce could find in the Covered Merchandise Referral proceeding that the scope clearly covers the product – thereby thwarting an importer's attempt to claim lack of culpability based on CBP's covered merchandise referral alone.  *See* 19 U.S.C. § 1517(b)(4)(B).  In this regard, Commerce oftentimes has determined that merchandise at issue is clearly covered by the scope of an order despite a party's argument that the scope is unclear. *See*, *e.g.*, *Quiedan Co. v. United States*, 927 F.3d 1328, 1331-33 (Fed. Cir. 2019) (finding that an importer's arguments "fail{ed} to undermine Commerce's conclusion that the {products} at issue are clearly within the language of the ADD Order"); *Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1355-56 (Ct. Int'l Trade 2019) (upholding Commerce's determination that certain merchandise fell "unambiguously within the plain language of the Orders' scope," despite the importer's arguments to the contrary), *aff'd* 836 F. App'x 883 (Fed. Cir. 2020); *Sunpreme Inc. v. United States*, 256 F. Supp. 3d 1265, 1283-84 (Ct. Int'l Trade 2017) (sustaining Commerce's ruling placing the importer's products within the scope of the orders because it was "reasonable, given the plain language of the Orders")*, aff'd in relevant part* 946 F.3d 1300 (Fed. Cir. 2020).

More importantly, CBP's argument overlooks the exceptional circumstances of DTT USA's case, where Commerce itself had explicitly determined beforehand in the 2006 IDM that "the country of origin {for AD purposes} is determined by the location where segments and cores are attached to create finished diamond sawblades."  2006 IDM at Comment 4. Furthermore, Commerce based its affirmative covered merchandise determination on

circumvention under 19 U.S.C. § 1677j(c) – which constitutes an ***expansion*** of the AD order's scope to include merchandise manufactured in a third country, *see*, *e.g.*, *AMS Assoc. v. United States*, 737 F.3d 1338, 1343 (Fed. Cir. 2013) – and found that two of the three products raised in CBP's covered merchandise referral were ***not*** circumventing the AD order.  *See Diamond Sawblades and Parts Thereof from the People's Republic of China*, 84 Fed. Reg. 33920, 33920-21 (Dep't Commerce July 16, 2019) (final circumvention determ.).  Under these circumstances, DTT USA could not have been expected to know at the time of importation that its imports of diamond sawblades manufactured in Thailand were potentially subject to the AD order on diamond sawblades from China.  Rather, as the Court found, DTT USA "complied fully with Commerce's clear directive" at the time of entry.  Remand Order at 57; *see also id.* at 58 ("{T}he way in which DTT USA labeled its imports was expressly contemplated and sanctioned by Commerce's 2006 IDM.").  Because CBP failed to account for Commerce's 2006 IDM, the agency's continued finding in the Redetermination that DTT USA made a material false statement or omission is unreasonable, arbitrary, and capricious.  *See*, *e.g.*, *Shandong Dongfang Bayley Wood Co. v. United States*, 375 F. Supp. 3d 1339, 1344 (Ct. Int'l Trade 2019) (deeming agency action to be arbitrary or capricious if the agency "entirely failed to consider an important aspect of the problem {or} offered an explanation for its decision that runs counter to the evidence" (internal quotation marks and citation omitted)).

**B.     The Redetermination Fails to Comply with the Court's Holding that DTT USA Did Not Have an Obligation to Seek a Commerce Scope Ruling**

In the alternative, CBP appears to argue that, even if the EAPA includes a culpability requirement, DTT USA was culpable because it failed to exercise reasonable care by not requesting a scope ruling (or, more precisely, a negative circumvention ruling) from Commerce. *See* Redetermination at 8-11.  In staking this position, however, CBP ignores the Court's

10

contrary holding that, in light of Commerce's 2006 IDM, DTT USA *lacked* an obligation to request a ruling from Commerce or disclose the Chinese-origin of cores or segments to CBP at entry.  *See* Remand Order at 57-58.  Defying the Court's opinion, CBP (1) unreasonably concludes that Commerce's 2006 IDM obligated DTT USA to request a negative circumvention ruling, and (2) illogically reasons that a culpability requirement must be read out of the EAPA so that CBP can retroactively suspend liquidation of DTT USA's pre-December-2017 entries (despite § 1517(a)(5)(A)'s requirement of a material "false" statement or "omission" for CBP to conclude that an importer entered covered merchandise through "evasion").

1. **Commerce's 2006 IDM did not put importers on notice of circumvention concerns with respect to third-country welding of segments and cores**

CBP unreasonably asserts that Commerce's 2006 IDM put importers like DTT USA on notice that their imports of diamond sawblades assembled in third countries were potentially circumventing the AD order on *Diamond Sawblades from China*.  *See* Redetermination at 7-12. Quoting Commerce's statement that it "retains that statutory authority to address circumvention concerns as appropriate{,}" CBP argues that this isolated language put DTT USA on notice and obligated it to seek a Commerce scope ruling to ensure that its imports of diamond sawblades from Thailand did not circumvent the AD order.  *Id.* at 8-9 (citations omitted).  In doing so, CBP ignores the context of Commerce's statement and fails to reconsider the issue consistent with the Court's Remand Order.

In the original AD investigation of *Diamond Sawblades from China*, Commerce determined that the country of origin for AD purposes is the location where the segments are joined to the core.  *See* 2006 IDM at Comment 4.  This court affirmed Commerce's country-of-origin determination.  *See Advanced Tech. & Materials Co., Ltd. v. United States*, 35 C.I.T. 1380, 1386 (2011).  In addition, Commerce *rejected* the petitioner's argument that the country of

origin should be established based on where the segments are produced, and that "the minimal capital investment required for the attachment process poses circumvention concerns." 2006 IDM at 18-19. Contrary to petitioner's assertion, Commerce found that the "manufacturing process of attaching segments to a core" requires "substantial capital investment and great technical expertise" and, thus, rejected the petitioner's circumvention argument. *See id.* at 19. In this context, Commerce's statement that it "retains that statutory authority to address circumvention concerns as appropriate" did not impose a duty on DTT USA to seek a Commerce scope ruling to confirm its imports of diamond sawblades manufactured in Thailand were outside the scope of the AD order. *See* 2006 IDM at 19.

Importantly, the Court reached the same conclusion. While acknowledging the 2006 IDM's statement that Commerce retains "authority to address circumvention concerns as appropriate{,}" Remand Order at 59 (quoting 2006 IDM at 19), the Court found that CBP "***failed to reference any authority that would create an obligation on DTT USA to seek a scope determination from Commerce or to seek a clarification from Customs*** as to the scope of the 2009 Order." *Id.* at 60 (emphasis added). Consequently, the Court stated it "is unable to conclude that DTT USA had a 'duty' to disclose that its diamond sawblades assembled in Thailand consisted of Chinese-origin cores and segments, nor that any disclosure or action by DTT USA was 'neglected'." *Id.* at 57.

Attempting to find an authority imposing an obligation on DTT USA, CBP claims that, "{u}nder 19 U.S.C. § 1484, all importers have a duty to ensure that the information provided on entry documentation is correct." Redetermination at 17. Section 1484(a) requires importers to use "***reasonable care***" in reporting information to CBP at entry. Here, the Court held that, "{g}iven Commerce's clearly stated conclusion {in the 2006 IDM}, DTT USA did ***not*** make a

material and false statement by importing the diamond sawblades as Thai-origin because such a statement was not 'erroneous', 'untrue' or 'deceitful'{,}" and DTT USA "complied fully" with Commerce's clear directive.  Remand Order at 57 (emphasis added).  Because DTT USA followed Commerce's instructions, it cannot be said that DTT USA failed to exercise reasonable care.

Finally, CBP further asserts that, by not requesting a scope ruling, DTT USA "shifted the burden to CBP and Commerce to discover the true nature of DTT's operations" and "cannot be rewarded for its willful ignorance and failure to utilize the tools it had available all along . . . ." Redetermination at 17.  The Court should reject CBP's efforts to impugn DTT USA.  Again, as the Court found, DTT USA "complied fully" with the 2006 IDM, which provided a "clear standard" for doing so, and there was no "duty" on DTT USA's part to disclose that Chinese-origin cores or segments were included in its Thai-origin sawblades.  Remand Order at 57, 60. CBP, for its part, continues to "fail{} to reference any authority" in the Redetermination "that would create an obligation on DTT USA to seek a scope determination{,}" despite arguing that DTT should have done so.  *See* Redetermination at 9-10, 17; Remand Order at 60.  Moreover, we are unaware of any instance in which an importer requested a circumvention ruling from Commerce to confirm its imports are *not* circumventing an order.[2]  Nor did DTT USA have any reason to do so, given that, as the Court noted, Commerce "expressly rejected the petitioner's {circumvention} concerns" in the 2006 proceeding.  Remand Order at 59 (quoting 2006 IDM at 19).

---

[2] To this point, Commerce's newly promulgated circumvention regulation only permits interested parties to submit **allegations** of circumvention.  *See Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52300, 52378 (Dep't Commerce Sept. 20, 2021) (final rule) ("An interested party may submit a request for a circumvention inquiry that alleges that the elements necessary for a circumvention determination under section 781 of the Act exist . . . .").

In sum, by misinterpreting the relevance of the 2006 IDM and continuing to insist that DTT USA should have pursued a circumvention ruling or clarification concerning – or otherwise had a duty to disclose – the Chinese origin of cores or segments included in its Thai-origin sawblades, CBP has failed to comply with the Court's Remand Order.  The Court should therefore remand to CBP once again with instructions to revise its findings regarding a "false" statement and otherwise comply with the Court's opinion.

2. **Recognizing that DTT USA lacked an obligation to request a Commerce scope ruling would not subvert the EAPA's purpose**

CBP also unreasonably claims that "reward{ing}" DTT USA "for its failure to exercise due diligence required by statute . . . would subvert the purpose of EAPA to retroactively capture entries made prior to the commencement of an investigation, as articulated in the statute itself and the legislative history."  Redetermination at 10.  Under the EAPA, however, CBP may suspend (or continue suspension of) liquidation and require AD/CVD cash deposits as part of its final determination *only if* it finds that the importer engaged in "evasion" when it entered the merchandise.  *See* 19 U.S.C. § 1517(a)(5)(A), (c)(1), (d)(1).  Here, as discussed, the Court held that DTT USA did *not* fail to exercise due diligence required by statute because DTT USA "complied fully" with Commerce's clear directive and labeled its imports in a way "expressly contemplated and sanctioned by Commerce's 2006 IDM."  Remand Order at 57-58.  "Given Commerce's clearly stated conclusion {in the 2006 IDM}, DTT USA did *not* make a material false statement by importing the diamond sawblades as Thai-origin because such a statement was not 'erroneous', 'untrue' or 'deceitful{,}'" and CBP also "failed to establish that DTT USA's actions constitute a material omission."  *Id.*  In essence, CBP impermissibly seeks to evade the EAPA's requirement to find a material "false" statement or "omission" so that it can

14

retroactively reach imports properly entered by DTT USA in compliance with Commerce's 2006 IDM. CBP's reasoning contravenes the EAPA and consequently is not in accordance with law.

C.     **The Redetermination Fails to Establish that DTT USA Made a False Statement**

The Redetermination further states that DTT USA made a "false" statement by entering its imports of diamond sawblades manufactured in Thailand as type 01 entries (*i.e.*, not subject to AD duties or CVD), as opposed to a type 03 entry (*i.e.*, subject to AD duties or CVD). Redetermination at 11. Here again, CBP disregards the Court's opinion that, "{g}iven Commerce's clearly stated conclusion {in the 2006 IDM}, DTT USA did not make a material and false statement by importing diamond sawblades as Thai-origin because such a statement was not 'erroneous', 'untrue' or 'deceitful.'" Remand Order at 57. Nor did DTT USA have a duty or obligation to identify any Chinese-origin cores or segments included in the diamond sawblades manufactured in Thailand or to request a negative circumvention ruling from Commerce. Rather, as explained above, DTT USA reasonably relied on and fully complied with Commerce's country-of-origin determination in the 2006 IDM, which this court affirmed. Therefore, CBP has failed to establish that DTT USA made a material "false" statement or material "omission" by declaring its pre-December-2017 imports of diamond sawblades manufactured in Thailand to be type 01 entries subject to the AD order on diamond sawblades from China.

15

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court reject the Redetermination on the basis that it fails to comply with the terms of the Remand Order and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Respectfully submitted,

WHITE AND CASE LLP

 /s/ Jay C. Campbell
Walter J. Spak
Jay C. Campbell
Dean A. Barclay
Ron Kendler
Allison J.G. Kepkay
WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Date:  February 28, 2022          Counsel to Diamond Tools Technology LLC

16

CERTIFICATE OF COMPLIANCE

I, Jay C. Campbell, certify that the attached Plaintiff's comments in opposition to the final results of redetermination pursuant to court remand comply with the page limitation requirement, as stated in the Court's February 4, 2022 Scheduling Order.  Plaintiff's comments run sixteen pages.

_____/s/ Jay C. Campbell_____
Jay C. Campbell