UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC,<br><br>                              Plaintiff,<br><br>        v.<br><br>UNITED STATES,<br><br>                              Defendant,<br><br>        and<br><br>DIAMOND SAWBLADES<br>MANUFACTURERS' COALITION,<br><br>                    Defendant-Intervenor | Court No. 20-00060 |

**DEFENDANT-INTERVENOR'S COMMENTS IN SUPPORT OF THE FINAL RESULTS
OF REDETERMINATION PURSUANT TO COURT REMAND**

**Daniel B. Pickard, Esq.**

**Buchanan Ingersoll & Rooney PC**
**1700 K Street, NW**
**Washington, DC 20006**
**(202) 452-7936**
**daniel.pickard@bipc.com**

***Counsel for Diamond Sawblades***
***Manufacturers' Coalition***

**Dated: March 30, 2022**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

II.   ARGUMENT ................................................................................................. 1

III.  CONCLUSION ............................................................................................... 5

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Diamond Tools Technology LLC v. United States*, CIT Consol. Ct. No. 20-00060,
    Slip Op. 21-151 (Oct. 29, 2021) ("Remand Order")...................................................................1

*Diamond Tools Technology LLC v. United States*; Court No. 20-00060, Slip Op.
    21-151 (Court of Int'l Trade, Oct. 29, 2021) ("Redetermination").............................................1

*Diamond Tools Technology v. United States*,
    Ct. No. 20-00060, Slip Op. 21-151 (Ct. of Int'l Trade Oct. 29, 2021)...........................1, 2, 3, 4

**Statutes**

19 U.S.C. § 1484.....................................................................................................................................4

Enforce and Protect Act .................................................................................................1, 2, 3, 4

## I.     <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

On behalf of the Diamond Sawblades Manufacturers' Coalition ("DSMC"), the alleger in EAPA Case No. 7184 and defendant-intervenor in these proceedings, we respectfully submit these written arguments regarding the final remand redetermination arising from *Diamond Tools Technology LLC v. United States*. See Final Remand Redetermination – *Diamond Tools Technology LLC v. United States*; Court No. 20-00060, Slip Op. 21-151 (Court of Int'l Trade, Oct. 29, 2021) ("Redetermination"), EAPA Case No. 7184, (Jan. 27, 2022) (ECF 70) ("Redetermination"); *Diamond Tools Technology LLC v. United States*, CIT Consol. Ct. No. 20-00060, Slip Op. 21-151 (Oct. 29, 2021) ("Remand Order"). DSMC is in agreement with Custom and Border Protection's (CBP) final redetermination and urges the U.S. Court of International Trade to sustain the Final Remand Redetermination. The final redetermination appropriately responds to the concerns expressed in the remand order issued by the Court and explains the agency's reasonable conclusion that Diamond Tools Technology LLC ("DTT") evaded the antidumping duty order on diamond sawblades and parts thereof from the People's Republic of China, including as to entries made prior to December 1, 2017.

## II.     <u>ARGUMENT</u>

DSMC is in agreement with CBP's final redetermination and urges the Court to sustain the Final Remand Redetermination. As the final redetermination notes, these remand proceedings arise from an opinion and order issued in Court No. 20-00060.[1] In its opinion remanding the action to CBP, the Court required CBP to reconsider whether DTT "made any material false statement or act, or material omission" when entering its diamond sawblades as not subject to the antidumping

---

[1]     Final Results at 1; *see also Diamond Tools Technology v. United States*, Ct. No. 20-00060, Slip Op. 21-151 (Ct. of Int'l Trade Oct. 29, 2021) ("Slip Op. 21-151") (PUBLIC VERSION).

duty order.[2] The Court expressed its concern that CBP had not clearly explained its finding that it did not need to determine "{a} level of culpability," but only that evasion had occurred.[3] The Court also found that CBP had not appropriately addressed whether a material omission had been made, or a material false statement or act occurred,[4] given the analysis of sawblade origin contained in a 2006 U.S. Department of Commerce ("Commerce") memorandum.[5]

On remand, CBP has clarified that the Enforce and Protect Act ("EAPA") does not incorporate any intent requirement.[6] Unlike other statutes that CBP enforces, EAPA does not define specific levels of culpability, or provide for penalties that vary with that level of culpability.[7] Instead, any incorrect statement that is material to the assessment of antidumping duties is sufficient to demonstrate evasion within the meaning of EAPA.[8] And rather than authorize the imposition of penalties in the manner of a statute that defines levels of culpability, EAPA instead requires payment of duties owed.[9]

Further, as pointed out in the remand determination, while CBP may proceed after a finding of evasion to consider whether an importer's actions merit penalties under separate statutory authority that defines culpability levels, it is not the case that an evasion finding inevitably results in those separate statutory penalties.[10] That would depend on whether the importer's material false acts, statements, or omissions occurred by reason of particular levels of culpability, *i.e.*, fraud, gross negligence, etc. Given that the EAPA statute requires neither intent nor culpability – simply

---

[2]    Final Results at 1; Slip Op. 21-151 at 64.
[3]    Slip Op. 21-151 at 61.
[4]    *Id.*
[5]    *Id.* at 56-60.
[6]    Final Results at 3-4.
[7]    *Id.* at 4.
[8]    *Id.*
[9]    *Id.* at 5.
[10]   *Id.* at 6.

materially incorrect statements, acts, or omissions – separate penalties are not automatic.[11]

Moreover, as CBP points out, EAPA explicitly contemplates situations in which it is not clear whether goods subject to an EAPA investigation are "covered merchandise," and authorizes referrals to Commerce for clarification.[12] Importantly, the statute does not require CBP to make a negative evasion determination – that is, to find that no material false statement, act, or omission occurs – where such goods are imported as non-subject merchandise. Indeed, as CBP properly recognizes, such treatment would invalidate the statute as to products subject to referral.[13] The statute requires that CBP stay the deadlines in the EAPA investigation while Commerce determines whether merchandise is in scope.[14] As CBP explains, this implies that if Commerce finds that merchandise is covered, CBP will continue the EAPA investigation and may find evasion.[15]

CBP's final remand results also address Commerce's 2006 memorandum, in which that agency determined that it would consider sawblades to originate in one of the two subject countries (China or Korea at that time) where joining operations take place. As CBP notes, however, Commerce also indicated that circumvention of the order could occur as a result of joining operations outside of subject countries.[16] Despite Commerce's clear signal that third-country joining operations did not necessarily insulate sawblades from antidumping duty liability, DTT "took {a} chance" and declared its products as non-subject without seeking guidance from CBP or from Commerce.[17] Such declaration was incorrect, as confirmed by Commerce's scope referral

---

[11]   *Id.* at 6-7.
[12]   *Id.* at 6.
[13]   *Id.*
[14]   Id.
[15]   *Id.*
[16]   *Id.* at 8.
[17]   *Id.* at 9.

and its separate circumvention proceeding.[18]

Further, as CBP notes, the Court affirmed the agency's finding that DTT's sawblades – including those entered prior to the December 1, 2017 initiation of Commerce's separate circumvention proceeding – constituted covered merchandise.[19] To consider it impossible for DTT to have made a materially false – incorrect – statement in declaring that such goods were not covered merchandise would be inconsistent with the finding that the goods were, in fact, covered merchandise. It would also inappropriately discourage importers from seeking any confirmation regarding the status of their goods.[20] Too, it would be inconsistent with Congress's intention to capture, through EAPA, entries made prior to the initiation of an EAPA investigation.[21]

Here, DTT selected an incorrect entry type for its sawblades, in conjunction with its failure to deposit appropriate duties. Not only did DTT enter covered merchandise, as CBP, the Court, and Commerce have all confirmed, but it made a material and incorrect, *i.e.*, false, statement in doing so.[22] As CBP notes, all importers have a duty to ensure that the information provided on entry documentation is correct.[23]

---

[18]   *Id.*
[19]   *Id.* at 7.
[20]   *Id.* at 9.
[21]   *Id.* at 10.
[22]   *Id.* at 11.
[23]   *Id.* at 17; *see also* 19 U.S.C. § 1484.

## III.    <u>CONCLUSION</u>

Accordingly, Defendant-Intervenor respectfully requests that this Court sustain the Final Remand Redetermination as CBP has appropriately responded to the concerns expressed in the remand order, and find that DTT has evaded the order, inclusive as to entries covered by Case No. 7184 made prior to December 1, 2017.

Respectfully submitted,

*/s/ Daniel B. Pickard*
Daniel B. Pickard, Esq.

**BUCHANAN INGERSOLL & ROONEY PC**
1700 K Street, NW Washington, DC 20006
(202) 452-7936
daniel.pickard@bipc.com

*Counsel to the Diamond Sawblades Manufacturers'*
*Coalition*

Dated: March 30, 2022

CERTIFICATE OF COMPLIANCE

I, Daniel B. Pickard, certify that the attached Defendant-Intervenor's comments in support of the final results of redetermination pursuant to court remand comply with the page limitation requirement. Defendant-Intervenor's comments run five pages.

*/s/ Daniel B. Pickard*
Daniel B. Pickard, Esq.

4887-6679-8873, v. 2

6