UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | Court No. 20-00060 |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| DIAMOND SAWBLADES ) | |
| MANUFACTURERS COALITION, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## **ORDER**

Upon consideration of the remand redetermination issued by U.S. Customs and Border

Protection (Customs) pursuant to *Diamond Tools Technology LLC v. United States*, 545 F. Supp.

3d 1324 (Ct. Int'l Trade 2021); plaintiff's comments upon the remand redetermination; and

defendant's and defendant-intervenor's replies thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.

_____
JUDGE

Dated: _____, 2022
　　　　New York, NY

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | )   Court No. 20-00060 |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| DIAMOND SAWBLADES | ) |
| MANUFACTURERS COALITION, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

---

**DEFENDANT'S REPLY TO PLAINTIFF'S
COMMENTS ON THE REMAND REDETERMINATION**

---

<div style="margin-left:40%">

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

</div>

OF COUNSEL:

TAMARI J. LAGVILAVA
Attorney
U.S. Customs and Border Protection
Office of the Chief Counsel

ANTONIA R. SOARES
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
antonia.soares@usdoj.gov

March 30, 2022

Attorneys for Defendant

# **TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................1

I.    Standard Of Review ..............................................................................1

II.    DTT Erroneously Contends That Customs Failed To Comply With The Court's Remand Order ..........................................................................2

III.    Customs' Interpretation Of The EAPA Statute Is Supported By Traditional Tools Of Statutory Construction Or, Alternatively, Is Entitled To *Chevron* Deference ...............................................................................4

    A.  Legal Standard ..........................................................................4

    B.  Under *Chevron* Step-One, Customs Lawfully Determined That, By Its Plain Terms, The EAPA Statute Does Not Require Customs To Establish Intent Or Negligence ...........................................................4

        1.  The Statutory Text Supports Customs' Interpretation ..............................5

        2.  The Statute's Design As A Whole Supports Customs' Interpretation......7

        3.  The Canons Of Statutory Construction Support Customs' Interpretation....................................................................9

        4.  The Legislative Purpose Supports Customs' Interpretation ....................10

        5.  The Statutory Scheme Supports Customs' Interpretation........................11

    C.  Customs' Interpretation Is Entitled To Deference Under *Chevron* Step-Two Because It Is Permissible .............................................14

IV.    Customs' Interpretation Is Entitled To *Skidmore* Deference ...............................15

V.    The Court Should Sustain Customs' Determination That DTT Made A False Statement...........................................................................................17

    A.  DTT's Reliance On The 2006 IDM Should Be Rejected Because The EAPA Statute Does Not Require Customs To Establish Culpability............17

    B.  DTT Had A Duty To Provide Correct Information Under 19 U.S.C. § 1484...........................................................................19

CONCLUSION........................................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Atilano v. McDonough*,
  12 F.4th 1375, 1380 (Fed. Cir. 2021) ....................................................................... 3

*BMW of North Am. LLC v. United States*,
  926 F.3d 1291 (Fed. Cir. 2019) ......................................................................... 2, 13

*Bostock v. Clayton Cnty.*,
  140 S. Ct. 1731 (2020) .......................................................................................... 11

*Bragdon v. Abbott*,
  524 U.S. 624 (1998) ............................................................................................... 15

*Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*,
  400 F.3d 1352 (Fed. Cir. 2005) ....................................................................... 13, 15

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ........................................................................................ *passim*

*ClearCorrect Operating, LLC v. Int'l Trade Com'n*,
  810 F.3d 1283 (Fed. Cir. 2015) ......................................................................... 9, 12

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938) ................................................................................................. 2

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ................................................................................................. 2

*Diamond Tools Tech. LLC v. United States*,
  545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) .................................................. *passim*

*Digit. Realty Tr., Inc. v. Somers*,
  138 S. Ct. 767 (2018) ............................................................................................... 6

*Downhole Pipe & Equip., L.P. v. United States*,
  776 F.3d 1369 (Fed. Cir. 2015) ......................................................................... 2, 19

*Gazelle v. Shulkin*,
  868 F.3d 1006 (Fed. Cir. 2017) ............................................................................... 9

*Gilead Scis., Inc. v. Lee*,
  778 F.3d 1341 (Fed. Cir. 2015) .................................................................... 2, 4, 12

*Hymas v. United States*,
  810 F.3d 1312 (Fed. Cir. 2016) ............................................................... 4, 5

*Hyundai Steel Co. v. United States*,
  19 F.4th 1346, 1352 (Fed. Cir. 2021) ...................................................... 3, 7

*K Mart Corp. v. Cartier*,
  486 U.S. 281 (1988) ................................................................................. 6

*King v. Burwell*,
  576 U.S. 473 (2015) ................................................................................. 9

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  140 S. Ct. 2367 (2020) ............................................................................ 7

*Lomax v. Ortiz-Marquez*,
  140 S. Ct. 1721 (2020) ............................................................................ 7

*Long v. Soc. Sec. Admin.*,
  635 F.3d 526 (Fed. Cir. 2011) ....................................................... 10, 12, 13

*MacLean-Fogg Co. v. United States*,
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) .......................................... 2

*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371 (2013) ............................................................................ 7, 18

*McNary v. Haitian Refugee Ctr., Inc.*,
  498 U.S. 479 (1991) ................................................................................. 8

*Prestonback v. United States*,
  965 F.3d 1363 (Fed. Cir. 2020) ............................................................... 15

*Regions Hosp. v. Shalala*,
  522 U.S. 448 (1998) ................................................................................. 13

*Rotkiske v. Klemm*,
  140 S. Ct. 355 (2019) ........................................................................... 7,11

*Russello v. United States*,
  464 U.S. 16 (1983) ................................................................................... 7

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ............................................................................ 13, 15

*Taizhou United Imp. & Exp. Co. Ltd. v. United States*,
  No. 16-00009, 2022 WL 500665 (Ct. Int'l Trade Feb. 18, 2022) ............ 17

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001) ................................................................................. 7

*United States v. Int'l Fidelity Ins. Co.*,
  273 F.Supp.3d 1170 (Ct. Int'l Trade 2017) .............................................. 20

*United States v. Mead Corp.*,
  533 U.S. 218 (2001) ............................................................................... 13

*United States v. Mexico Feed & Seed Co., Inc.*,
  980 F.2d 478 (8th Cir. 1992) ........................................................ 18, 19, 20

*Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*,
  818 F.3d 1336 (Fed. Cir. 2016) ................................................................ 2

## **Statutes**

16 U.S.C. § 661 ........................................................................................... 5

19 U.S.C. § 1484 ................................................................................... 19, 20

19 U.S.C. § 1484(a) .............................................................................. 19, 20

19 U.S.C. § 1516a(b) ............................................................................... 2, 17

19 U.S.C. § 1517 ....................................................................................... 10

19 U.S.C. § 1517(a) .............................................................................. *passim*

19 U.S.C. § 1517(b) ................................................................................. 8, 18

19 U.S.C. § 1592 .............................................................................. 10, 11, 12

## **Other Authorities**

Black's Law Dictionary (11th ed. 2019) ................................................. 5, 9

*Investigation of Claims of Evasion of Antidumping and Countervailing Duties, Interim
  Regulations*, 81 Fed. Reg. 56,477 (Dep't of Homeland Security Aug. 22, 2016).............. 16, 18

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>DIAMOND SAWBLADES<br>MANUFACTURERS COALITION, )<br><br>Defendant-Intervenor. ) | Court No. 20-00060 |

**DEFENDANT'S REPLY TO PLAINTIFF'S**
**COMMENTS ON THE REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this reply to comments filed by

plaintiff, Diamond Tools Technology LLC (DTT).  *See* Pl. Br., ECF No. 77.  This reply concerns

the remand redetermination filed by U.S. Customs and Border Protection (Customs) pursuant to

the Court's remand order in *Diamond Tools Technology LLC v. United States*, 545 F. Supp. 3d

1324 (Ct. Int'l Trade 2021) (remand order).  *See* Remand Redetermination, ECF No. 70 (Redet.).

The Court should sustain Customs' remand redetermination because it complies with the Court's

remand order, is supported by substantial evidence, and is otherwise in accordance with law.

**ARGUMENT**

I.     **Standard Of Review**

In remand proceedings, the Court will sustain an agency's determinations if they are "in

accordance with the remand order," and are "supported by substantial evidence, and are

otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d

1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  Substantial evidence

means evidence that a "reasonable mind might accept as adequate to support a conclusion."

*Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Under this standard, "the possibility of

drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*,

383 U.S. 607, 620 (1966).

## II.    DTT Erroneously Contends That Customs Failed To Comply With The Court's Remand Order

DTT contends that the redetermination should not be sustained because Customs (1)

"disregards the Court's holding that the EAPA requires some finding of culpability"; and (2)

fails to comply with the Court's holding that DTT had no obligation to seek a Commerce scope

ruling because DTT "complied fully" with the 2006 IDM.  Pl. Br. at 1-4, 10-14.  Under DTT's

formulation, it is difficult to discern the reason for or scope of the Court's remand.

Under Part III.B.1 of the remand decision, the Court considered whether Customs'

evasion determination was reasonable and in accordance with law.  *Diamond Tools Tech. LLC*,

545 F. Supp. 3d at 1347-56.  In so doing, the Court analyzed the three elements required for a

determination of evasion under the statute.  *Id.* at 1347.  With respect to the first element related

to "covered merchandise," after applying *Chevron*, the Court concluded that Customs satisfied

this element.  *Id.* at 1351.  Related to the third element governing the cash deposit or other

security, the Court declined to address that issue until after the partial remand.  *Id.* at 1355-56.

The Court's remand order exclusively focused on the second statutory element governing

material false statements, acts, or material omissions.  *Id.* at 1351-56.  Although providing

extensive analysis explaining why the determination did not satisfy this element, the Court remanded to permit "Customs to provide a well-buttressed and well-reasoned explanation of its conclusion." *Id.* at 1351, 1355; *see also id.* (remanding "for reconsideration to make a finding consistent with this opinion as to whether DTT USA made any material and false statement or act, or material omission"). Customs reasonably interpreted the Court's remand order as inviting further treatment of the second statutory element, including defining "false." Redet. at 3, 7.

Furthermore, although, in its motion for judgment on the administrative record, DTT challenged Customs' EAPA determination for failing to comply with the statutory standard for "evasion," none of DTT's arguments governed the interpretation of the term "false" in the second statutory element. *See* Pl. MJAR at 29-32, ECF No. 47-2. Rather, DTT's arguments were confined to whether its merchandise constituted "covered merchandise" under the first statutory element. *Id.* Whether the second element includes a scienter requirement did not arise until the February 25, 2021 oral argument. *See* Hr'g Tr. 57:15-64:3, ECF No. 63. Thus, it was reasonable for Customs to conclude that the Court expected the remand redetermination to interpret the term "false" under the second statutory element. Indeed, although now claiming that "false" must be read to include a culpability requirement, during the February 25 oral argument, DTT asserted that "we're not making any scienter argument." Hr'g Tr. 61:14.

In any event, in rejecting a similar argument claiming an agency failure to comply with a remand order, this Court has held that "Plaintiffs' arguments ignore the fact that the standard for the court's review is whether Commerce's decision-making is reasonable given the circumstances provided by the record as a whole, not whether the agency 'complied with the court's order.'" *Taizhou United Imp. & Exp. Co. Ltd. v. United States*, No. 16-00009, 2022 WL 500665, *5 (Ct. Int'l Trade Feb. 18, 2022) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

**III.    Customs' Interpretation Of The EAPA Statute Is Supported By Traditional Tools Of Statutory Construction Or, Alternatively, Is Entitled To *Chevron* Deference**

Customs' conclusion that an evasion determination does not require a showing of a level of culpability such as intent or negligence should be sustained; that interpretation is consistent with the plain terms of the statute.  Alternatively, Customs' interpretation is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

**A.    Legal Standard**

The Court's review of an agency's interpretation of a statute that it administers is governed by the two-step framework articulated in *Chevron*.  *See Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*, 818 F.3d 1336, 1346 (Fed. Cir. 2016).  "Step-one of *Chevron* asks whether Congress 'directly addressed the precise question at issue.'"  *Gilead Sciences, Inc. v. Lee*, 778 F.3d 1341, 1346 (Fed. Cir. 2015) (quoting *Chevron*, 467 U.S. at 842).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *BMW of North Am. LLC v. United States*, 926 F.3d 1291, 1298 (Fed. Cir. 2019).  The reviewing court employs "traditional tools of statutory construction" to ascertain whether "Congress had an intention on the precise question."  *Chevron*, 467 U.S. at 843 n.9.  "{I}f the statute is silent or ambiguous with respect to the specific issue, the question for the court {under *Chevron* Step-Two} is whether the agency's answer is based on a permissible construction of the statute."  *Id.* at 843.

**B.    Under *Chevron* Step-One, Customs Lawfully Determined That, By Its Plain Terms, The EAPA Statute Does Not Require Customs To Establish Intent Or Negligence**

The precise substantive question before the Court is whether Congress intended that the second statutory element for "evasion" under 19 U.S.C. § 1517(a)(5)(A) requires Customs to establish that "false" statements, acts, or omissions were carried out with a level of culpability

4

such as intent or negligence.  Customs lawfully determined that 19 U.S.C. § 1517(a)(5)(A) does

not contain a culpability requirement.  *See* Redet. at 3-7, 13-16.

"Step one of the *Chevron* analysis requires us to determine whether Congress has

expressed an unambiguous intent using the traditional tools of statutory construction."  *Hyundai*

*Steel Co. v. United States*, 19 F.4th 1346, 1352 (Fed. Cir. 2021) (citing cases) (internal

quotations omitted).  "{E}employ{ing} {the} traditional tools of statutory construction" involves

"examin{ing} 'the statute's text, structure, and legislative history, and apply{ing} the relevant

canons of interpretation.'"  *Atilano v. McDonough*, 12 F.4th 1375, 1380 (Fed. Cir. 2021) (citing

cases).  "If a court, employing traditional tools of statutory construction, ascertains that Congress

had an intention on the precise question at issue, that intention is the law and must be given

effect."  *Chevron*, 467 U.S. at 843 n. 9.

### 1.      The Statutory Text Supports Customs' Interpretation

Consistent with *Chevron* Step One's requirement to consider the traditional tools of

statutory construction, Customs began by considering the plain text of the Section 1517(a)(5)(A),

which defines "evasion" as referring to:

> {1} entering covered merchandise into the customs territory of the
> United States {2} by means of any document or electronically
> transmitted data or information, written or oral statement, or act
> that is *material and false, or any omission that is material*, and {3}
> that results in any cash deposit or other security or any amount of
> applicable antidumping or countervailing duties being reduced or
> not being applied with respect to the merchandise.

Redet. at 3 (quoting 19 U.S.C. § 1517(a)(5)(A) (emphasis added)); *see also Diamond Tools*

*Tech. LLC*, 545 F. Supp. 3d at 1347 (holding that "{a} determination of evasion requires three

elements").  Based on the plain text, Customs found that "{t}his definition of evasion notably

does not include a requirement that CBP find intent prior to reaching a determination of evasion"

and, thus, "{a}ccording to the plain text of the statute, when making a false statement or omission, the importer does not have to have intent to defraud the United States or reckless disregard of statutory or regulatory requirements."  Redet. at 3-4; *see also id.* ("{T}he statute indicates that if other elements are met, false statements or omissions will subject an importer to a finding of evasion without regard to whether the importer had any intent.").  Customs' interpretation of this unambiguous text should be sustained.  *See Gilead Sciences, Inc.*, 778 F.3d at 1347 ("Absent a clearly expressed legislative intention to the contrary, {the statute's plain} language must ordinarily be regarded as conclusive.") (brackets in the original).

Furthermore, because the EAPA statute does not define "false," Customs also considered dictionary definitions.  Redet. at 14; *see also Hymas v. United States*, 810 F.3d 1312, 1320 (Fed. Cir. 2016) ("The statute does not define the phrase . . ., so we give the terms their ordinary, established meaning, for which we may consult dictionaries.") (internal quotations and citation omitted).  Customs relied on the plain meaning of "false," which it found was defined as "{e}rroneous, wrong."  Redet. at 14 (quoting *False*, Oxford English Dictionary Online, December 2021.  Oxford University Press).  Because the plain meaning of "false" does not require a culpability determination such as intent or negligence, Customs concluded that "there is simply no language in the EAPA statute requiring CBP to find that an importer made false statements intentionally or with a degree of culpability."  *Id.*  Customs lawfully relied on this dictionary definition to conclude that Customs was not required to determine culpability.  *See Hymas*, 810 F.3d at 1321 ("The Service's decision to select the term 'person' to interpret the ambiguous phrase 'public or private agencies and organizations' in 16 U.S.C. § 661 reflects a permissible construction based upon a relevant dictionary definition.").

DTT challenges the definition of "false" relied on by Customs, claiming that it is inconsistent with the definition relied on by the Court in the remand decision.  Pl. Br. at 3-4. There is no inconsistency because the "false" definition relied on by the Court stated that "{w}hat is false *can be* so by intent, *by accident, or by mistake*{.}"  *Diamond Tools Tech. LLC*, 545 F. Supp. 3d at 1353 (quoting *False*, BLACK'S LAW DICTIONARY (11th ed. 2019)) (emphasis added).  That intent "can be" required does not mandate it.  The Court's definition also recognizes that "false" statements "can be" done by "accident" or "mistake" — which is consistent with Customs' interpretation of "false" as "incorrect."  *See* Redet. at 11 ("Selecting an incorrect entry type constitutes a false statement."); *id.* at 17 (because "the information that DTT provided to CBP . . . was incorrect{,} . . . DTT made false statements to CBP when it declared that no AD duties were owed"); *see also id.* at 5 (referring to EAPA "as a strict liability statute").[1]

In support of its interpretation of "false," DTT also relies on a definition of "evasion." Pl. Br. at 4.  But the statute defines "evasion" and, accordingly, there is no reason to consider a dictionary definition.  *See, e.g.*, *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776-77 (2018) ("When a statute includes an explicit definition, we must follow that definition{.}").

## 2. The Statute's Design As A Whole Supports Customs' Interpretation

Customs' interpretation of "false" is also consistent with the language and design of the statute as a whole.  When interpreting the plain meaning of the statute, in addition to considering

---

[1]  The Court also quotes a definition of "omission."  *Diamond Tools Techn. LLC*, 545 F. Supp. 3d at 1353 (quoting *Omission*, BLACK'S LAW DICTIONARY (11th ed. 2019)). Although that definition includes the term "neglect," it is not used in the sense of the culpability level of negligence, but in the sense of a failure to do something.

the "particular statutory language at issue," the Court must also look to "the language and design of the statute as a whole." *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988).

Customs' interpretation of "false" in 19 U.S.C. § 1517(a)(5)(A) as not requiring establishing a culpability level such as intent or negligence is supported by the very next subsection of the statute governing "Exception for clerical error" set forth in 19 U.S.C. § 1517(a)(5)(B), which expressly invokes the culpability level of negligence.  In particular, 19 U.S.C. § 1517(a)(5)(B) provides that the submission of false information based on a clerical error or an omission that results from clerical error will not be deemed to constitute "evasion" unless repeated clerical errors give rise to a "pattern of *negligent* conduct."  19 U.S.C. § 1517(a)(5)(B)(i)-(ii) (emphasis added).  Furthermore, 19 U.S.C. § 1517(a)(5)(B)(iii) governing "Electronic repetition of errors" provides that "the mere nonintentional repetition by an electronic system of an initial clerical error does not constitute a pattern of *negligent* conduct." *Id.* § 1517(a)(5)(B)(iii) (emphasis added).

That Congress specified a culpability level when legislating concerning the "Exception for clerical errors" provision under 19 U.S.C. § 1517(a)(5)(B), but chose not to address culpability under 19 U.S.C. § 1517(a)(5)(A), demonstrates congressional intent not to require culpability in the latter provision.  Where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Hyundai Steel Co.*, 19 F.4th at 1353 (citing, among other things, *Russello v. United States*, 464 U.S. 16, 23 (1983)); *see also, e.g.*, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020) ("It is a fundamental principle of statutory interpretation that 'absent provision{s} cannot be supplied by the courts.'") (citation omitted).  "This principle applies not only to adding

terms not found in the statute, but also to imposing limits on an agency's discretion that are not supported by the text." *Little Sisters of the Poor Saints Peter & Paul Home*, 140 S. Ct. at 2381. Reading into the EAPA statute a requirement that Customs establish intent or negligence would narrow the definition of "evasion," thereby imposing limits on Customs' authority.

### 3.     The Canons Of Statutory Construction Support Customs' Interpretation

Customs' interpretation of "false" was also informed by the canon of statutory construction instructing that courts "may not narrow a provision's reach by inserting words Congress chose to omit." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020).  Consistent with this canon, Customs concluded that, "{i}f Congress intended to require a finding of intent or culpability as a prerequisite for finding evasion, Congress would have included the language requiring CBP to do so{,}" and that it was impermissible for DTT to "read{ } an intent requirement into the statute where there is none."  Redet. at 14.

Another canon of statutory construction counsels against reading one part of a statute in such a way as to render another part inconsistent, meaningless, or superfluous.  *See, e.g.*, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("{T}he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'").  Applying this canon, Customs found that "to require a finding of knowledge or intent in a case where CBP has made a covered merchandise referral to Commerce would be inconsistent with the covered merchandise referral process as outlined in the EAPA statute."  Redet. at 6 (citing 19 U.S.C. § 1517(b)(4)). As Customs explained, "{i}mporters would inevitably argue that{,} if CBP is unable to

determine whether merchandise is subject to an AD or CVD order, the importers also should not be expected to have known that the merchandise was covered at the time of importation and thus did not have any intent to evade the payment of duties, thereby escaping liability for non-payment of duties on entries made during the EAPA period of investigation." *Id.* Courts may presume that "Congress legislates with knowledge of {the court's} basic rules of statutory construction." *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991).

DTT challenges as "speculative and unfounded" Customs' conclusion that requiring it to establish culpability "would be inconsistent with the covered merchandise referral process as outlined in the EAPA statute{,}" and that importers would raise the covered merchandise referral as a basis for lack of knowledge. Pl. Br. at 8-9. But it would be inconsistent for Congress to require Customs to prove that an importer intentionally or negligently made false statements at entry at the same time that the EAPA statute recognizes that, while the investigation is pending, Customs may face uncertainty about whether the merchandise at issue is within the scope of the applicable antidumping order. The Court need look no further than this case to see that Customs' concerns have been borne out: DTT relies on "CBP's covered merchandise referral" to contend that it "could not have been expected to know at the time of importation that its imports of diamond sawblades manufactured in Thailand were potentially subject to the AD order on diamond sawblades from China." Pl. Br. at 9-10.

### 4. The Legislative Purpose Supports Customs' Interpretation

Customs also explained how its interpretation of the statute is consistent with the legislative purpose. In particular, Customs explained that its interpretation of EAPA as "a strict liability statute{ }" — that is, as a statute that does not require Customs to establish intent or negligence — "is consistent with the purpose of the law, as the purpose of EAPA is to collect

10

antidumping and countervailing duties (CVD) that are due to the U.S. Government, and that the

U.S. Government has been deprived of because the importer failed to report its merchandise as

subject to an applicable AD/CVD order."  Redet. at 5.[2]  Relying on the legislative history's focus

on the "timely collection of the antidumping and countervailing duties owed," Customs observed

that "{t}he statute only aims to collect the duties that have been unpaid, in order to make the

U.S. Government whole and to level the playing field for the U.S. domestic industry."  *Id.*

(quoting H.R. Rep. No. 114-114, at 85 (2015)).

## 5.  The Statutory Scheme Supports Customs' Interpretation

Finally, under *Chevron* Step-One, the Court should "consider not only the bare meaning

of each word but also the placement and purpose of the language within the statutory scheme."

*Gazelle v. Shulkin*, 868 F.3d 1006, 1011 (Fed. Cir. 2017) (citations omitted); *see also*

*ClearCorrect Operating, LLC v. Int'l Trade Com'n*, 810 F.3d 1283, 1296 (Fed. Cir. 2015) ("We

further look to the Tariff Act in its entirety as 'the words of a statute must be read in their context

and with a view to their place in the overall statutory scheme.'") (quoting *King v. Burwell*, 576

U.S. 473, 492 (2015)).

In reaching its conclusion that 19 U.S.C. § 1517(a)(5)(A) does not require a culpability

determination, Customs also considered the overall statutory structure of Title 19.  In particular,

Customs considered the penalty statute, 19 U.S.C. § 1592, which expressly requires that any

material false information, acts, or material omissions be based on "fraud, gross negligence, or

negligence."  Redet. at 4-5.  Based on the distinction between 19 U.S.C. § 1517(a)(5)'s lack of a

---

[2]  "Strict liability" is defined as "{l}iability that does not depend on proof of negligence or intent to do harm . . . .  Also termed *liability without fault.*"  "*Liability,*" Black's Law Dictionary (11th ed. 2019).

culpability requirement and 19 U.S.C. § 1592's express inclusion of culpability levels, Customs concluded that, "{i}f Congress had intended to require that, in addition to determining whether covered merchandise was entered into the United States by means of false statements or omissions, CBP must also determine whether the importer did so intentionally, or without exercise of reasonable care, Congress would have done so, as it did in 19 U.S.C. § 1592." *Id.* at 4-5. Based on its comparison of the EAPA statute and 19 U.S.C. § 1592, Customs concluded that "{r}equiring CBP to find that the importer intended to make false statements under EAPA would be duplicative of CBP's authority pursuant to section 1592 and defeat the purpose of EAPA" given that "EAPA only requires payment of duties owed to the government." *Id.* at 5. Because Customs' interpretation of "false" is consistent with the statutory scheme, it should be sustained. *See, e.g.*, *Long v. Soc. Sec. Admin.*, 635 F.3d 526, 535 (Fed. Cir. 2011) (holding that, "under *Chevron,* we must uphold the Board's interpretation of 'good cause'" in the statute because "the Board's construction is rational, consistent with the {statute}, and reasonable in light of the {statute}'s design").

DTT challenges Customs' consideration of the term "false" in 19 U.S.C. § 1592, contending that Customs' analysis is "based on a contrived dissimilarity to the customs penalties provision, 19 U.S.C. § 1592." Pl. Br. at 4-5. This dissimilarity is not "contrived" because Congress expressly provided a list of culpability levels in 19 U.S.C. § 1592(a), but did not do so in 19 U.S.C. § 1517(a)(5)(A). Moreover, if Congress had intended for Customs to make a culpability finding in EAPA cases, the statute would have required *de novo* judicial review as in Section 1592 cases rather than the limited type of judicial review of agency action authorized under EAPA. *See, e.g.*, *United States v. Titan Metals Corp.*, 378 F. Supp. 3d 1325, 1331-32 (Ct. Int'l Trade 2019) ("The court decides all issues de novo in actions under section 1592.").

Furthermore, the legislative history upon which DTT relies in support of its "contrived

dissimilarity" argument (*see* Pl. Br. at 5-6) actually supports Customs' interpretation by

distinguishing 19 U.S.C. § 1592 — in which "{t}he law-enforcement nature of CBP's actions

makes it *inappropriate to subject those actions to timelines*{,}" because Customs "sometimes

requires time to . . . collect the evidence needed to meet the criteria to apply the relevant laws

and regulations" — from the EAPA statute, which would allow Customs "to conduct evasion

investigations *subject to timelines*{.}"  H.R. Rep. No. 114-114, pt. 1, at 85-86 (2015) (emphasis

added); *see also* Redet. at 15 ("EAPA authorized CBP to conduct swift investigations{.}").

DTT also misreads the legislative history as reflecting Congress' objective of "relieving

CBP of the obligation to find a *specific level* of culpability (such as fraud, gross negligence, or

negligence){.}"  Pl. Br. at 6 (emphasis in the original).  Nothing in the legislative history

supports DTT's claim.  And had Congress intended to provide Customs with an option as to

which, if any, level of culpability applied, it would have said so as it did in 19 U.S.C.

§ 1517(a)(5)(B)(i)-(ii) governing the "Exception for clerical error."  *See, e.g.*, *Rotkiske*, 140 S.

Ct. at 360-361 ("It is a fundamental principle of statutory interpretation that 'absent provision{s}

cannot be supplied by the courts.'").  DTT's reading of the legislative history does nothing more

than create ambiguity in a statute in which none exists.  *See Bostock v. Clayton Cnty*., 140 S. Ct.

1731, 1749 (2020) ("Legislative history, for those who take it into account, is meant to clear up

ambiguity, not create it.") (citation omitted).

DTT also takes issue with Customs' conclusion that, "{r}equiring CBP to find that the

importer intended to make false statements under EAPA would be duplicative of CBP's

authority pursuant to section 1592 and defeat the purpose of EAPA" because this statement

reflects Customs' "fail{ure} to account for the EAPA's purpose, which *supplements* and

*complements*, rather than duplicates, § 1592." Pl. Br. at 7 (emphasis in the original). That EAPA supplements and complements Section 1592 does not foreclose the reality that interpreting both statutes to require a finding of culpability renders the statutes duplicative.

Applying the traditional tools of statutory construction, Customs' interpretation of "false" should be sustained under *Chevron* Step-One. *See, e.g.*, *ClearCorrect Operating, LLC*, 810 F.3d at 1290 ("Here we conclude that the literal text by itself, when viewed in context and with an eye towards the statutory scheme, is clear and thus answers the question at hand.").[3]

### C.    Customs' Interpretation Is Entitled To Deference Under *Chevron* Step-Two Because It Is Permissible

In the event that the Court determines that the term "false" in the EAPA statute is ambiguous, the Court should sustain Customs' interpretation of the statute as permissible under a *Chevron* Step-Two analysis.

"In step-two, *Chevron* requires determination of 'whether the {agency's} answer is based on a permissible construction of the statute.'" *Gilead Sciences, Inc.*, 778 F.3d at 1349 (quoting *Chevron*, 467 U.S. at 842-43). "At this stage of the *Chevron* analysis, judicial deference to an agency's construction of a statutory scheme is afforded considerable weight." *Id.* (citing *Chevron*, 467 U.S. at 844); *see also Long*, 635 F.3d at 535 (holding that the Court must decide "whether the agency's construction is 'rational and consistent with the statute.'"). "If the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design," the Court must give "that reading controlling weight, even if it is not the answer 'the

---

[3]   DTT misreads the redetermination as setting forth an alternative argument that, "even if the EAPA includes a culpability requirement, DTT USA was culpable because it failed to exercise reasonable care by not requesting a scope ruling . . . from Commerce." Pl. Br. at 10. Customs did not assert, in the alternative or otherwise, that EAPA includes a culpability requirement.

court would have reached if the question initially had arisen in a judicial proceeding.'" *Long*, 635 F.3d at 535 (quoting *Regions Hosp. v. Shalala*, 522 U.S. 448, 457 (1998)).

As demonstrated above, Customs reasonably analyzed the plain meaning of "false" and applied traditional tools of statutory construction to conclude that the EAPA statute does not require Customs to establish the importer's culpability.  There is nothing in the statute or the statutory scheme indicating that Customs' interpretation is impermissible.  Because Customs' interpretation of "false" is based on a permissible interpretation of the statute, its interpretation is entitled to deference under *Chevron* Step-Two.  *See, e.g.*, *BMW of North Am.*, 926 F.3d at 1299 (after "proceed{ing} to *Chevron* step two and consider{ing} whether Commerce's interpretation . . . is a permissible reading of the statute{,}" "conclud{ing} that it is" because, among other things, "the statute does not restrict Commerce's authority on this point").

## IV.   Customs' Interpretation Is Entitled To *Skidmore* Deference

Alternatively, Customs' interpretation of "false" is entitled to *Skidmore* deference.  "Even if *Chevron* deference does not apply, an agency's construction of a statute that it is charged with administering is still subject to some deference under the standard set forth by the Supreme Court" in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1365 (Fed. Cir. 2005).  "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position{.}"  *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (citing *Skidmore*, 323 U.S. at 139-40); *see also Cathedral Candle Co.*, 400 F.3d at 1366 (recognizing that deference is appropriate "if the agency has conducted a careful analysis of the statutory issue, if the agency's position has been consistent and reflects

15

agency-wide policy, and if the agency's position constitutes a reasonable conclusion as to the proper construction of the statute, even if {the Court} might not have adopted that construction without the benefit of the agency's analysis").

First, Customs' interpretation of "false" has been consistent, reflects agency-wide policy, and is reasonable.  Only months after EAPA was enacted in February 2016, Customs published interim regulations in the Federal Register, stating that "{e}xamples of evasion could include, but are not limited to, . . . *false or incorrect* shipping and entry documentation{.}"  *Investigation of Claims of Evasion of Antidumping and Countervailing Duties, Interim Regulations*, 81 Fed. Reg. 56,477, 56,478 (Dep't of Homeland Security Aug. 22, 2016) (emphasis added).  Customs' coupling of "false" with "incorrect" demonstrates that, beginning with EAPA's enactment, Customs has consistently taken the position that providing incorrect information at entry is sufficient to constitute a material false statement, act, or omission under the statute.

Moreover, beginning with its first EAPA evasion determination in August 2017, Customs has consistently taken the position that incorrectly stating that entered merchandise is not subject to an antidumping or countervailing duty order is sufficient to constitute a material false statement, expressly rejecting the importer's lack-of-knowledge defense as inconsistent with the plain terms of the statute.  *See, e.g.*, *Notification of Final Determination as to Evasion*, EAPA Case No. 7175, 6, U.S. Customs and Border Protection (Aug. 14, 2017) (in rejecting importer's scienter defense, concluding that the importer's argument "ignores the statute's definition of evasion, which focuses only on whether insufficient cash deposits or bonds were made, not the culpability of the parties"), https://www.cbp.gov/document/report/eapa-case-number-151357175-eastern-trading-ny-inc-notice-final-determination-evasion (last visited March 28, 2022)  EAPA evasion determinations are publicly available on Customs' website and, when an

importer raises a scienter defense, the determinations contain substantially the same language concerning what constitutes a material false statement, act, or material omission.

Customs' consistent interpretation of "false" statements, acts, and material omissions reflects "the well-reasoned views of the {agency} implementing a statute" and "constitute{s} a body of experience and informed judgment to which courts and litigants may properly resort for guidance{.}" *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) (quoting *Skidmore*, 323 U.S. at 139-140). Thus, the Court should accord *Skidmore* deference to Customs' interpretation. *See Cathedral Candle Co.*, 400 F.3d at 1367 (according *Skidmore* deference to the International Trade Commission's statutory interpretation); *see also Prestonback v. United States*, 965 F.3d 1363, 1369 & n.3 (Fed. Cir. 2020) (holding that "the Government's reasonable interpretation of the recoupment statute should be afforded {*Skidmore*} deference").

## V.    The Court Should Sustain Customs' Determination That DTT Made A False Statement

In the remand redetermination, Customs thoroughly explained why its evasion determination was lawful. Among other issues, Customs explained its position concerning DTT's unreasonable reliance on the 2006 IDM and provided legal authority demonstrating DTT's obligation to seek clarification from Customs or a scope ruling from Commerce to ensure that its imports were not subject to the antidumping order. Redet. at 7-12, 16-17. As demonstrated below, DTT's challenges to Customs' redetermination lack merit.

### A.    DTT's Reliance On The 2006 IDM Should Be Rejected Because The EAPA Statute Does Not Require Customs To Establish Culpability

As Customs explained, DTT's failure to select the correct entry type for its entries of diamond sawblades constituted a false statement resulting in the underpayment of duties. Redet. at 10-12. In so concluding, Customs relied on Commerce's 2019 determination that diamond sawblades made in Thailand by DTT using Chinese cores and Chinese segments are subject to

the antidumping order.  *Id.*  DTT contends that Customs' redetermination is unlawful because

DTT relied on Commerce's 2006 IDM to determine that its merchandise was not subject to the

antidumping duty order.  Pl. Br. at 10-15.  DTT is wrong for several reasons.

DTT's reliance argument is no different than a scienter defense, which is foreclosed by

the statute; DTT's knowledge is not relevant to whether its entries constitute false statements.

As Customs concluded, the EAPA statute is a "strict liability statute" and, as such, the only

relevant inquiry is whether or not an importer has provided correct information.  Redet. at 5, 10-

12; *see also, e.g.*, *United States v. Mexico Feed & Seed Co., Inc.*, 980 F.2d 478, 484 (8th Cir.

1992) (in rejecting lack of knowledge as a defense, holding "{t}hat very well may be true, but is

irrelevant as far as CERCLA is concerned{ }" because "CERCLA is a remedial strict liability

statute{ }" and, "{a}s such, its focus is on responsibility, not culpability"); *Investigation of*

*Claims of Evasion of Antidumping and Countervailing Duties, Interim Regulations*, 81 Fed. Reg.

at 56,478 (explaining that evasion includes submitting "false or incorrect" entry documentation).

Moreover, as Customs explained, DTT's reliance on the 2006 IDM was "flawed"

because, if anything, the 2006 IDM should have raised flags regarding the potential risk of third-

country assembly.  Redet. at 7-8.  Furthermore, DTT's flawed reliance is supported by the 2006

IDM itself, which recognizes that, "as is {Commerce's} practice in every antidumping

investigation and administrative review, {Commerce} examines the facts and issues in each

proceeding on a case-by-case basis."  2006 IDM Cmt. 4.

DTT's reliance argument is also inconsistent with the plain terms of the statute, which

authorizes Customs to seek a referral from Commerce regarding whether an importer's entries

are covered merchandise.  Permitting importers to raise reliance arguments would render

superfluous provisions of the EAPA statute that expressly authorize Customs to do what it did

here — issue a covered merchandise referral to Commerce pursuant to 19 U.S.C. § 1517(b)(4). Courts are required to avoid interpreting one part of a statute in a way that makes another provision inconsistent, meaningless, or superfluous.  *See, e.g.*, *Marx*, 568 U.S. at 386.

DTT challenges Customs' conclusion that the 2006 IDM should have put DTT on notice of a potential circumvention risk.  Pl. Br. at 11-13.  Even if the Court finds that the 2006 IDM did not place DTT on notice, such a result would not undermine the lawfulness of Customs' evasion determination because, under the EAPA statute, DTT's mental state is an irrelevant consideration.  *See, e.g.*, *Mexico Feed & Seed Co., Inc.*, 980 F.2d at 484.  Moreover, even assuming that DTT's reliance on the 2006 IDM is relevant, which it is not, DTT's arguments amount to no more than disagreement with the significance that Customs has accorded to the 2006 IDM.  Under the governing substantial-evidence standard of review, that the 2006 IDM can be read to "create a clear standard" while simultaneously supporting the "inconsistent conclusion{ }" that it placed DTT on notice of the potential circumvention risk posed by third-country assembly, does not render Customs' determination lacking in substantial evidence.  *See, e.g.*, *Downhole Pipe*, 776 F.3d at 1374 ("An agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence.").  Furthermore, DTT's contentions regarding the significance of the 2006 IDM do nothing more than ask this Court to reweigh the evidence, which is also foreclosed under the governing standard of review. *See id.* at 1378 ("This court declines Appellants' invitation to reweigh the evidence in order to reject Commerce's conclusions, which were well-supported and fully explained.").

**B.**     **DTT Had A Duty To Provide Correct Information Under 19 U.S.C. § 1484**

As authority for DTT's duty to seek a scope ruling or clarification, Customs relied on 19 U.S.C. § 1484, which requires that importers exercise "reasonable care" when submitting entry

documentation to Customs to ensure the information is correct.  Redet. at 9, 17 (citing 19 U.S.C. § 1484(a)(1) (providing that an importer has a duty of "reasonable care" when preparing entry documentation).  "Reasonable care imposes an affirmative obligation on importers and their agents to confirm that the information transmitted to Customs is complete and accurate."  *United States v. Int'l Fidelity Ins. Co.*, 273 F. Supp. 3d 1170, 1179 (Ct. Int'l Trade 2017).

DTT challenges Customs' reliance on 19 U.S.C. § 1484 despite acknowledging that "Section 1484(a) requires importers to use '*reasonable care*' in reporting information to CBP at entry."  Pl. Br. at 12-13 (emphasis in the original).  Not only does DTT fail to explain why Customs' reliance on 19 U.S.C. § 1484 was unlawful, DTT makes the erroneous assertion that the Court has foreclosed Customs' reliance on that statute based on what DTT characterizes as the Court's "holding" that DTT did not make false statements because it complied with the 2006 IDM.  *Id.*  Again, the Court remanded the issue.  And, as discussed above, DTT's purported reliance on the 2006 IDM is irrelevant; DTT's mental state has no bearing on whether its statements were "false" under a strict liability statute.  *See, e.g.*, *Mexico Feed & Seed Co., Inc.*, 980 F.2d at 484.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Customs' Remand Redetermination as supported by substantial evidence and in accordance with law.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General


PATRICIA M. McCARTHY
Director

                                        /s/ Franklin E. White, Jr.
                                        FRANKLIN E. WHITE, JR.
                                        Assistant Director

OF COUNSEL:
                                        /s/ Antonia R. Soares
 TAMARI J. LAGVILAVA                    ANTONIA R. SOARES
 Attorney                              Senior Trial Counsel
 U.S. Customs and Border Protection    U.S. Department of Justice
 Office of the Chief Counsel           Civil Division, Commercial Litigation Branch
                                        PO Box 480, Ben Franklin Station
                                        Washington, DC 20044
                                        Telephone:  (202) 305-7405
                                        Facsimile:   (202) 514-7965
                                        antonia.soares@usdoj.gov

 March 30, 2022                        Attorneys for Defendant

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that these reply comments comply with the word limitation of Court of

International Trade Standard Chambers Procedures § 2(B)(1) and contains 6,160 words,

excluding the parts of the comments exempted from the word limitation.  In preparing this

certificate of compliance, I have relied upon the word count function of the word processing

system used to prepare the comments.

/s/ Antonia R. Soares
ANTONIA R. SOARES

## <u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that on this 30th day of March, 2022, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S COMMENTS ON THE REMAND REDETERMINATION" was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


<u>/s/ Antonia R. Soares</u>
ANTONIA R. SOARES