**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

| |
|---|
| DIAMOND TOOLS TECHNOLOGY LLC, |
|                          Plaintiff, |
|     v. |
| UNITED STATES |
|                          Defendant, |
|     and |
| DIAMOND SAWBLADES MANUFACTURERS' COALITION, |
|                     Defendant-Intervenor. |

COURT NO.: 20-00060

**DEFENDANT-INTERVENOR'S COMMENTS IN OPPOSITION TO THE SECOND REDETERMINATION OF U.S. CUSTOMS AND BORDER PROTECTION PURSUANT TO COURT REMAND**

**TABLE OF CONTENTS**

I. Introduction And Summary Of Argument .......................................................................... 1

II. Standard of Review ....................................................................................................... 2

III. Procedural History ........................................................................................................ 3

IV. Argument ...................................................................................................................... 8

    A. CBP's Second Redetermination Was Not Made In Accordance With The Law Because CBP's Core Determinations Of No False Statements and No Evasion Were Made Due To A Misunderstanding Of The Second CIT Remand Order ................................................................................................ 8

    B. The DSMC Agrees With CBP's Position That An EAPA Violation Has Occurred And A False Statement Has Been Made. .............................................. 10

        1. CBP's September 17, 2019 Notice Of Final Determination As To Evasion Was Correct ................................................................................ 10

        2. CBP's Statement Of Its Preferred Position Points Out That This Court's Assignment Of Importance To The Country-Of-Origin Determination In The 2006 IDM Is Incorrect ............................................ 12

        3. Statutory Construction Arguments Support CBP's Initial Determination Of Evasion ....................................................................... 14

    C. The DSMC Opposes The CBP Second Redetermination Because It Indicates That The Merchandise Entered Between March 1, 2016 And December 1, 2017 Was Not Entered Into The United States Through Evasion Within The Meaning of EAPA .......................................................................... 15

V. CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
515 F.3d 1372 (Fed. Cir. 2008)..................................................................1, 2, 8, 10

*Diamond Tools Tech. LLC v. United States*,
545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) .......................................................3, 4

*Diamond Tools Tech. LLC v. United States*,
609 F. Supp 3d 1378 (Ct. Int'l Trade 2022). .....................................................4, 12

*NEXTEEL Co. v. United States*,
28 F.4th 1226 (Fed. Cir. 2022) ...............................................................1, 3, 9, 10

*Nippon Steel Corp. v. Int'l Trade Comm'n*,
345 F.3d 1379 (Fed. Cir. 2003)...............................................................1, 3, 9, 10

**Statutes**

19 U.S.C. § 1517(a)(5)(A) .............................................................11, 12, 14, 15

19 U.S.C. § 1517(g)(2)(B) .........................................................................1, 2

Enforce and Protect Act.................................................................................2

**Other Authorities**

U.S. Customs and Border Protection, Notice of Final Determination as to
Evasion, EAPA Case No. 7184, Sept. 17, 2019 ...........................................3, 10, 14

I.	**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant-Intervenor, the Diamond Sawblades Manufacturers' Coalition (DSMC), hereby submits comments in opposition to U.S. Customs and Border Protection's (CBP) final remand determination pursuant to the remand opinion and order issued by the U.S. Court of International Trade (CIT) on December 16, 2022, in *Diamond Tools Tech. LLC v. United States*, 609 F. Supp. 3d 1378 (Ct. Int'l Trade 2022) ("Second CIT Remand Order").  *See* Final Remand Determination – *Diamond Tools Technology LLC v. United States*, Court No. 20-00060, Slip. Op. 22-145 (Court of Int'l Trade 2023) ("Second Redetermination") (ECF 92).

DSMC opposes the CBP Second Redetermination to the extent it finds that Diamond Tools Tech. LLC ("DTT USA") did not make false statements, acts or omissions on its entries made prior to December 1, 2017 and did not evade the antidumping order when it imported diamond sawblades assembled in Thailand with Chinese cores and Chinese segments prior to December 2017.[1]

DSMC submits that the CBP Second Redetermination was not in accordance with the law under 19 U.S.C. § 1517(g)(2)(B) because, in making its Second Redetermination, CBP indicated that it acted under the belief that it was required to reach certain conclusions pursuant to its reading of the Second CIT Remand Order.[2]  Clearly established Federal Circuit case law indicates that the CIT can remand agency decisions for redetermination but cannot require or direct agencies to reach any specific conclusion.  *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1383 (Fed. Cir. 2008).  *See also NEXTEEL Co. v. United States*, 28 F.4th 1226, 1238 (Fed. Cir. 2022); *Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1381 (Fed. Cir. 2003).  Because

---

[1] ECF 92, CBP Final Redetermination, *Diamond Tools Tech. LLC v. United States*, Court No. 20-00060, Slip. Op. 22-145, March 16, 2023, p. 2, 8 (hereinafter "CBP Second Redetermination").
[2] See e.g., CBP Second Redetermination, at p. 23-24.

CBP, in making its Second Redetermination, believed that it was directed to reach a decision that DTT not make false statements or material omissions in its entries prior to December 1, 2017 and also acted under the misunderstanding that it was required by this Court to make a negative evasion determination, CBP acted contrary to the law such that its Second Redetermination should not be sustained and this Court should remand the case back to CBP a third time for reconsideration and redetermination.

DSMC agrees with CBP's reasoning in which it outlines why its Second Redetermination is made under objection. DSMC submits that CBP should have adopted the reasoning that it presents under objection as its primary response to the Second CIT Remand Order and, consequently, also should have made an affirmative determination of material and false statements and an affirmative determination of evasion under the Enforce and Protect Act (EAPA). CBP could have complied with the Second CIT Remand Order and still made an affirmative determination of evasion because the Second CIT Remand Order did not specifically require a finding of no false statements. As stated above, CBP's interpretation of the Second CIT Remand Order to the effect that it directed a finding of no false statements and a negative determination of evasion was both erroneous and contrary to the law.

## II.     **STANDARD OF REVIEW**

Under 19 U.S.C. § 1517(g)(2)(B), in reviewing whether a determination by the Commissioner of U.S. Customs and Border Protection (the Commissioner) on whether covered merchandise was entered into the customs territory of the United States through evasion, the CIT evaluates whether "any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

The CIT is precluded from outright reversing a decision of an agency "at most it can simply remand for further consideration consistent with its decision." *Ad Hoc Shrimp Trade Action*

*Comm. v. United States*, 515 F.3d 1372, 1383 (Fed. Cir. 2008). *See also NEXTEEL Co. v. United States*, 28 F.4th 1226, 1238 (Fed. Cir. 2022) (finding that the CIT exceeded its authority when it "direct{ed} Commerce to reverse its finding of a particular market situation," notably the directed remand that exceeded the CIT's authority was the second remand after a more open ended remand had been made); *Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1381 (Fed. Cir. 2003) (holding that the CIT went beyond its "statutorily-assigned role to 'review'" when it expressed dissatisfaction with the fact finding underlying the Commission's review and instructed "entry by the Commission of a negative injury determination" rather than remanding the case to the Commission and instructing the Commission to undertake further examination).

## III. <u>PROCEDURAL HISTORY</u>

This case arises out of CBP's affirmative determination of evasion of the antidumping duty order (AD) order on diamond sawblades from the People's Republic of China (China) against Diamond Tools Technology LLC under the EAPA.[3] CBP's Redetermination is the second determination made on remand from this Court on the same issue in this case.

In an order and opinion of October 29, 2021 (hereinafter "First CIT Remand Order"), this Court required CBP to consider "whether DTT USA made any material and false statement or act, or material omission" with respect to DTT's entries of diamond sawblades entered before December 1, 2017 (i.e. the date that Commerce initiated the anti-circumvention proceeding).[4] This Court entered the remand order because it found that "Customs has failed to demonstrate, how, if

---

[3] U.S. Customs and Border Protection, Notice of Final Determination as to Evasion, EAPA Case No. 7184, Sept. 17, 2019, C.R. 199, P.R. 220.
[4] *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1355 (Ct. Int'l Trade 2021) (hereinafter "First CIT Remand Order"); ECF 70 date Jan., 27, 2022, U.S. Customs and Border Protection, Final Remand Determination, *Diamond Tools Technology LLC v. United States*, Court No. 20-00060, Slip. Op. 21-151 (Ct. of Int'l Trade, Oct. 29, 2021), EAPA Case No. 7184, p. 3 ("CBP Final First Remand Determination").

at all, DTT USA entered the covered merchandise by means of material and false statement or material omission."[5]

CBP found in its remand determination of January 27, 2022 (hereinafter "CBP Final First Remand Determination"), that "DTT made material false statements, acts, or omissions on entries made prior to December 1, 2017, when it entered diamond sawblades assembled in Thailand from Chinese origin materials and did not declare such entries as subject to the AD order at the time of entry."[6]

Plaintiff DTT USA submitted an opposition to the CBP Final First Remand Determination of January 27, 2022,[7] the government submitted a reply to DTT USA's opposition,[8] and the Defendant-Intervenor, DSMC submitted comments in support of CBP's Final First Remand Determination.[9] This Court held a hearing on September 21, 2022.

On December 16, 2022, this Court issued its second Opinion and Order remanding the case to the CBP (hereinafter "Second CIT Remand Order").[10] CBP's Draft Remand Determination of March 1, 2023 was responsive to the Second CIT Remand Order. In the Second CIT Remand Order, this Court indicated that "{t}he Remand Results do not comply with the Remand Order that Customs provide an adequate explanation as to its determination that DTT USA made a material false statement or act, or material omission. As such, the Court concludes that the Remand Results are not in accordance with the Remand Order, not supported by substantial evidence and not

---

[5] First CIT Remand Order, *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d at 1347.
[6] ECF 70, CBP Final First Remand Determination, at p. 3.
[7] ECF-77, Plaintiff's Comments in Opposition to the Final Results of Redetermination Pursuant to Court Remand, February 28, 2022.
[8] ECF-83, Defendant's Reply to Plaintiff's Comments on the Remand Redetermination, March 30, 2022.
[9] ECF-82, Defendant-Intervenor's Comments in Support of the Final Results of Redetermination Pursuant to Court Remand, March 30, 2022.
[10] *Diamond Tools Tech. LLC v. United States*, 609 F. Supp. 3d 1378 (Ct. Int'l Trade 2022) (hereinafter "Second CIT Remand Order").

otherwise in accordance with the law."[11]  This Court further observed that "{o}n remand, Customs claimed that '{s}electing an incorrect entry type constitutes a false statement.'  Customs devoted significant space to its re-presenting its argument that there is a '{l}ack of {an} {i}ntent {r}equirement in the EAPA,'" "however, what Customs failed to do was provide 'a well-buttressed and well-reasoned explanation of its conclusion,' as the court directed."[12]  This Court directed "Customs to reconsider its conclusion consistent with this decision and the facts of this case and, in particular, the applicability of EAPA in the confined circumstance of an importer's reliance on Commerce's clear directive."[13]  In referring to "Commerce's clear directive," this Court was referencing a 2006 Issues and Decision Memorandum (hereinafter "2006 IDM") that accompanied Commerce's *Final Determination of Sales Less at Less Than Fair Value and Final Partial Affirmative Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from the People's Republic of China*, 71 Fed. Reg. 29,303 (Dep't of Commerce May 22, 2006).[14] In that 2006 IDM, a country of origin determination was made in the context of the original investigation for a substantial transformation analysis that indicated that "the country of origin should be determined by the location of where the segments are joined to the core."[15]  The 2006 IDM also indicated that, in the context of country of origin determinations and on a going forward basis, the Department retained its authority in regard to potential circumvention of the order.[16]

CBP's Draft Remand Determination of March 1, 2023 was circulated to interested parties. CBP's Draft Remand Determination indicated that it was made under objection and that it

---

[11] *Id.* at 1385.
[12] *Id.* at p. 1385-86.
[13] *Id.* at p. 1391.
[14] *Id.* at 1387, 1391.
[15] Issues and Decision Memorandum for the Final Determination in the Antidumping Duty Investigation of Diamond Sawblades and Parts Thereof from the People's Republic of China, May 15, 2006, p. 17 (hereinafter "2006 IDM").
[16] *Id.* at p. 19

reconsidered the issue of "whether DTT made false statements, acts or omissions on its entries made prior to December 1, 2017".[17] CBP determined, under respectful objection and in order to do what CBP believed was required by the Second CIT Remand Order, "that DTT did not evade the AD Order when it imported diamond sawblades assembled in Thailand with Chinese cores and segments, prior to December 2017."[18]

Interested parties were given the opportunity to comment on CBP's Draft Remand Determination, and the DSMC and DTT USA submitted comments. DSMC opposed the Draft Remand Order[19] and DTT USA offered comments in support of the conclusion of the Draft Remand Order and in opposition to CBP's detailed explanation of why those conclusions were made under objection.[20]

In its Draft Remand Order and now in its Second Redetermination, CBP indicated that it was constrained by the Second CIT Remand Order to find that DTT did not make false statements or evade the AD Order when it imported diamond sawblades assembled in Thailand with Chinese cores and segments, prior to December 2017.

CBP indicated in its Second Redetermination that it interpreted this Court's opinion as requiring it to reach a conclusion of no evasion, stating "CBP disagrees with DSMC that the agency may make an affirmative determination of evasion and still comply with the remand order in *Diamond Tools II*."[21] Indeed, CBP indicated, contrary to arguments advanced by DSMC, that the agency believed that it was required by the Court's order to find that DTT did not make false

---

[17] ECF 95, Public Document 1, CBP Draft Remand Determination, March 1, 2023, p. 2.
[18] *Id.* at p. 2, *see also* p. 7.
[19] ECF 95, Public Document 2, Comments from Defendant-Intervenor, Diamond Sawblades Manufacturers' Coalition, March 7, 2023,.
[20] ECF 95, Public Document 3, Comments from Diamond Tools Technology, March 8, 2023.
[21] CBP Second Redetermination at p. 23.

statements.[22]  CBP provided, however, several reasons according to which it respectfully disagreed with this Court's conclusions in the Second CIT Remand Order.

*CBP Opposed This Court's Application Of The 2006 IDM To The Case*

With respect to this Court's use of the 2006 IDM, CBP objected to the application and assignment of importance to the country of origin determination made in the 2006 IDM because it did not "answer the questions presented in this case, which is whether DTT's merchandise was subject to the AD order."[23]  CBP stated that "Commerce is clear that, in 2006, it conducted a substantial transformation analysis to determine country of origin of diamond sawblades, which, as Commerce pointed out, is different from the analysis required to determine whether the product is circumventing the AD Order."[24]  CBP continued to state that "{t}he 2006 IDM was always based on the record of that investigation, and it is a decision on substantial transformation, not a determination on whether DTT's diamond sawblades were covered merchandise."[25]

*CBP Opposed This Court's Interpretation Of The EAPA Statute To Include An Intent Requirement*

CBP maintains that "EAPA does not require CBP to analyze or consider an importer's state of mind to determine whether false statements were made."[26]  CBP argues that including such a requirement is "inconsistent with the plain language of the definition of 'evasion' as provided in the statute."[27]  CBP emphasizes that "the statute makes no mention of an importer's intent or culpability."[28]

---

[22] *Id*.
[23] CBP Second Redetermination at p. 10.
[24] *Id.* at p. 11.
[25] *Id.* at p. 12.
[26] *Id.* at p. 13.
[27] *Id.* at p. 13.
[28] *Id.* at p. 13.

IV.    **ARGUMENT**

CBP was not required by the Second CIT Remand Order to reach any particular result and, to the extent CBP's Second Remand Determination was made based on a misreading or a misunderstanding by CBP that it was bound to reach a certain result, its Second Redetermination is not in accordance with the law. The DSMC agrees with CBP's fundamental position that an EAPA violation occurred and a false statement was made by DTT and also submits that CBP could have complied with the Second CIT Remand Order and still made a determination of evasion. Consequently, DSMC opposes CBP's Second Redetermination that DTT USA's filing of entries as 'Type 01' (not subject to the AD Order) for diamond sawblades made of Chinese cores and Chinese segments and that were determined to be of Chinese origin, was not a false statement. DSMC asks this Court to find that the Second Redetermination was not made in accordance with the law such that the issue of whether DTT made false statements and whether there should be an affirmative determination of evasion should be remanded back to CBP for a third redetermination and further explanation and analysis.

A.    **CBP's Second Redetermination Was Not Made In Accordance With The Law Because CBP's Core Determinations Of No False Statements and No Evasion Were Made Due To A Misunderstanding Of The Second CIT Remand Order**

DSMC submits that CBP's Second Redetermination should not be sustained because CBP incorrectly concluded that it was required to make a negative determination of evasion based on the Second CIT Remand Order. This CBP interpretation of the Second CIT Remand Order was not in accordance with the law because the Court did not require CBP to reach any specified determination. Nor does this court direct agencies to reach a certain conclusion and "at most it can simply remand for further consideration consistent with its decision." *Ad Hoc Shrimp Trade*

8

*Action Comm.*, 515 F.3d at 1383. *See also NEXTEEL Co.*, 28 F.4th at 1238; *Nippon Steel Corp.*, 345 F.3d at 1381. As a result, CBP's Second Redetermination should not be sustained.

CBP's belief that it was compelled to reach a certain result by this Court's reasoning in the Second CIT Remand Order is made very clear in its Second Redetermination. In response to DSMC's comments on the draft remand determination, CBP indicated that "CBP disagrees with DSMC that the agency may make an affirmative determination of evasion and still comply with the remand order in *Diamond Tools II* . . ."[29] CBP also indicated that the "DSMC has not provided an adequate interpretation of the holding in Diamond Tools II to support its argument that CBP was not required to find that DTT did not make false statements with respect to its pre-December 2017 entries."[30] While this Court remanded for failure to provide an adequate explanation, it did not – as CBP misunderstands, dictate an end result for CBP.

Indeed, there still appears to be an open question regarding whether the 2006 IDM language was in regard to the country of origin of Chinese-joined vs. Korean-joined merchandise, which were both subject countries at that point in the investigation. If so, and as contended by the DSMC, this would provide further clarity for the Court as to whether the language was directed at determining which subject country was at issue or whether it was directed at a subject vs. non-subject distinction. The latter appears to be the understanding of the Court, however a remand could cast further light on this matter. Additionally, CBP did not address the issue below as to whether the 2006 IDM was a backward looking decision (in effect, determining whether certain sales were more properly included in the Chinese or Korean sales databases) or whether this IDM properly serves as binding forward looking guidance to the importing community. Further clarification of this issues would be served by an additional remand. Unfortunately, CBP

---

[29] *Id.* at 23.
[30] *Id.* at 23-24.

mistakenly interpreted the Second CIT Remand Order as requiring a finding of no false statements, rather than requiring CBP to provide additional analysis and explanation.

The misunderstanding of CBP was not in accordance with the law because, as previously recalled, this Court did not require CBP to reach any specified determination. *Ad Hoc Shrimp Trade Action Comm.*, 515 F.3d at 1383. *See also NEXTEEL Co.*, 28 F.4th at 1238; *Nippon Steel Corp.*, 345 F.3d at 1381. As a result, CBP's Second Redetermination should not be sustained.

**B.** **The DSMC Agrees With CBP's Position That An EAPA Violation Has Occurred And A False Statement Has Been Made.**

Although CBP's misunderstanding that it was required to reach a certain result was in error, the DSMC agrees with CBP's fundamental position, which it expressed "under protest" that an EAPA violation has occurred and a false statement has been made.

### 1. CBP's September 17, 2019 Notice Of Final Determination As To Evasion Was Correct

On September 17, 2019, CBP issued an affirmative determination of evasion, finding that DTT USA's imports of diamond sawblades with Chinese cores and segments that were joined in Thailand were entering the United States through evasion.[31] CBP determined that "substantial evidence exists demonstrating that DTT imported into the United States Chinese-origin diamond sawblades through Thailand and claimed that the merchandise was Thai-origin. DTT did not declare that the merchandise was subject to an AD order upon entry and, as a result, the requisite cash deposits were not collected on the merchandise."[32] DSMC submits that this initial CBP determination was correct, and that the history of how a covered merchandise determination was made by Commerce informs why CBP's reasoning under objection in its Second Redetermination,

---

[31] U.S. Customs and Border Protection, Notice of Final Determination as to Evasion, Sept. 17, 2019, p. 1 & 10, C.R. 199, P.R. 220.
[32] *Id.* at p. 10.

supporting its initial determination that DTT USA made a material false statement and engaged in evasion, is also correct. Put simply, Commerce determined that the products at issue were covered by the antidumping order, the importer filed paperwork with CBP indicating that the merchandise was not covered by the scope of the order, and consequently a false statement was made.

Under 19 U.S.C. § 1517(a)(5)(A), ". . . the term 'evasion' refers to {1} entering covered merchandise into the customs territory of the United States {2} by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and {3} that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise."

In order to make its evasion determination, CBP made a covered merchandise referral to the U.S. Department of Commerce ("Commerce"), in which CBP asked, for the purposes of its EAPA investigation, whether the merchandise described is covered by an AD/CVD order.[33]  In response to the referral, Commerce found that the merchandise subject to the referral was covered by the antidumping duty order on diamond sawblades from China.[34]  In turn, CBP found, based on Commerce's response to the subject merchandise referral, that DTT USA's "entries of diamond sawblades joined in Thailand were subject to the AD order on diamond sawblades."[35]

The background on how the covered merchandise portion of CBP's evasion determination was made in this case is important because it illustrates the process that CBP followed with Commerce to determine that diamond sawblades made from Chinese cores and Chinese segments that were joined in Thailand were covered merchandise under the applicable antidumping order

---

[33] *Id.* at p. 7.
[34] *Id.* at p. 7.
[35] *Id.* at p. 8.

and should have been entered as type 03 entries (subject to AD or CVD duties) and not type 01 entries (not subject to AD or CVD duties). CBP determined that the failure to report the diamond sawblades that were made from Chinese cores and Chinese segments as type 03 entries constituted a false statement. As a result, CBP made an evasion determination under EAPA.

> **2. CBP's Statement Of Its Preferred Position Points Out That This Court's Assignment Of Importance To The Country-Of-Origin Determination In The 2006 IDM Is Incorrect**

In contrast to CBP's September 17, 2019 evasion analysis under 19 U.S.C. § 1517(a)(5)(A), CBP correctly points out in its alternative analysis that this Court chooses not to assign importance to the covered merchandise referral, and instead looks to the 2006 IDM issued by Commerce as indicative of the country of origin of diamond sawblades.[36] The 2006 IDM indicates that "the country of origin {of diamond sawblades} is determined by the location where segments and cores are attached to create finished diamond sawblades."[37] This Court characterized the 2006 IDM as "a core public decisional document to explain to the parties and the public the scope of the 2009 Order that was still in effect when DTT USA classified its covered merchandise at the time of entry prior to the circumvention determination that later changed the scope of the Order."[38]

This Court's core concern appears to be that it interprets the 2006 IDM as forward-looking guidance and that not applying the 2006 IDM would result in an injustice to DTT USA.[39] The DSMC opposes the CBP Second Redetermination because, instead of endorsing this Court's characterization of the 2006 IDM, CBP could have provided additional explanation regarding why the 2006 IDM is not controlling to address the Court's concern. Specifically, CBP could have

---

[36] CBP Second Redetermination, at p. 10-12.
[37] 2006 IDM, at p. 19.
[38] *Diamond Tools Tech. LLC v. United States*, 609 F. Supp. at 1387-88 (Second CIT Remand Order).
[39] *Id.* at 1388-89.

provided additional analysis that the 2006 IDM language cited above was in regard to whether merchandise sold in that investigation should be considered as part of the China AD investigation or part of the Korea AD investigation. In other words, in its 2006 IDM memorandum, Commerce was explaining, for purposes of those investigations, whether sales would be included in which database. Commerce did not make a determination in regard to whether merchandise would be subject or non-subject (as at that time both China and Korea were subject countries). While Commerce did not, at that time, agree with Petitioner in regard to future circumvention concerns (i.e. subject merchandise being entered as non-subject), Commerce put parties on notice on a going forward basis that such questions would still be subject to Commerce's anti-circumvention authorities.

Indeed, as CBP pointed out in its Second Redetermination, "the 2006 IDM did not answer the questions presented in this case, which is whether DTT's merchandise was subject to the AD order."[40] In CBP's analysis, "the 2006 IDM is of little importance in this EAPA investigation" because the substantial transformation and country of origin analysis that was conducted in the 2006 IDM did not consider the facts of this case and is different from the analysis required to determine whether the product is circumventing the antidumping order.[41]

While an IDM is primarily retrospective (in effect, ruling in regard to entries that have already entered the United States), to the extent that the 2006 IDM provided forward looking guidance, it warned that joining operations might raise circumvention concerns. The 2006 IDM states the following: "In any event, the Department retains that statutory authority to address circumvention concerns as appropriate."[42]

---

[40] CBP Second Redetermination, at p. 10.
[41] *Id.* at 10-11.
[42] 2006 IDM, at p. 19.

Given that DTT USA was on notice that minor joining operations in third countries such as Thailand could pose circumvention concerns, there is nothing inequitable in applying Commerce's covered merchandise determination, which indicated that diamond sawblades made from all Chinese parts are covered merchandise under the applicable antidumping order.[43] Consequently, the DSMC submits that CBP should have addressed this Court's concern by providing additional explanation and analysis and not concluding that it was required to reach a particular outcome.

### 3. Statutory Construction Arguments Support CBP's Initial Determination Of Evasion

As CBP indicated in its objection analysis, the EAPA does not contain a knowledge or culpability element.[44] As previously indicted, under 19 U.S.C. § 1517(a)(5)(A), ". . . the term 'evasion' refers to {1} entering covered merchandise into the customs territory of the United States {2} by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and {3} that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise." The DSMC agrees with CBP's explanation in its objection analysis that there is no element of intent indicated in the definition of evasion.[45]

As CBP indicated in the "protest" section of its draft remand order, "{u}nder section 1517(a)(5), in order to find evasion, CBP must only find that covered merchandise was entered into the United States by means of false statements, acts or omissions, and results in any cash

---

[43] U.S. Customs and Border Protection, Notice of Final Determination as to Evasion, Sept. 17, 2019, p. 5, C.R. 199, P.R. 220.
[44] CBP Second Redetermination, p. 13.
[45] *Id.* p. 13.

deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not applied."[46]  The two important prongs of the statutory argument are, first, that the covered merchandise was subject to an antidumping order and, second, that a false statement was made.

This Court appears to be concerned that CBP's "protest" reasoning renders a section of the statute superfluous.  But this is not the case.  Put in the most basic of terms, the law requires that certain covered merchandise enters the United States, an importer performs an action that amounts to a misrepresentation of fact or omission of a material facts, and that results in failure to pay full antidumping duties.  The fact that the statute requires an act in furtherance of a misrepresentation by the individual importer does not render the first provision of the statute superfluous.  In addition, the fact that the law requires a condition to be met (entry of covered merchandise) and an overt act in furtherance of that condition that results in a specific consequence (nonpayment of duties) is consistent with other U.S. statutes and is not contrary to any maxim of statutory construction.  The DSMC consequently submits that this Court should reconsider its interpretation of 19 U.S.C. § 1517(a)(5)(A) and that the CBP Second Redetermination that relied on this Court's analysis of the statute should not be sustained.

**C.    The DSMC Opposes The CBP Second Redetermination Because It Indicates That The Merchandise Entered Between March 1, 2016 And December 1, 2017 Was Not Entered Into The United States Through Evasion Within The  Meaning of EAPA[47]**

CBP could have followed this Court's remand directions and still reached an affirmative determination on the EAPA violation by providing additional analysis and explanation.  Because

---

[46] *Id.*
[47] *Id.* at p. 7.

CBP erroneously believed that it was bound by the Second CIT Remand Determination to make a factual finding, its Second Redetermination should not be sustained.

At issue is merchandise that was composed entirely of Chinese parts, which was determined to be of Chinese origin after minimal joining operations in a third country, but which was declared to CBP to not be of Chinese origin when imported into the United States. CBP's most recent decision indicates that it believed that this Court required that the factually incorrect statement to be deemed as truthful. In making its Second Redetermination, CBP acted on a misunderstanding that its finding of no false statements and its negative evasion determination were strictly required by the Second CIT Remand Order. Consequently, DSMC requests that this court decline to sustain the CBP Second Redetermination because it was not made in accordance with the law and that this matter should be remanded back to CBP for further analysis and explanation.

## V. CONCLUSION

Accordingly, Defendant-Intervenor respectfully requests that this Court decline to sustain the CBP Second Redetermination and remand this matter back to CBP for further analysis and explanation.

Respectfully submitted,

*Daniel B. Pickard*
Daniel B. Pickard, Esq.

BUCHANAN INERSOLL & ROONEY PC
1700 K Street, NW Washington D.C. 20006
(202) 452-7936
daniel.pickard@bipc.com
*Counsel to the Diamond Sawblade*
*Manufacturers' Coalition*

Dated: April 17, 2023

**CERTIFICATE OF COMPLIANCE**

I, Daniel B. Pickard, certify that the attached Defendant-Intervenor's comments in opposition to the Second Redetermination of U.S. Customs and Border Protection comply with the page limitation requirement of twenty pages.

*Daniel B. Pickard*
Daniel B. Pickard, Esq.