# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC,<br><br>          Plaintiff,<br><br>   v.<br><br>UNITED STATES,<br><br>          Defendant,<br><br>   and<br><br>DIAMOND SAWBLADES<br>MANUFACTURERS' COALITION,<br><br>          Defendant-Intervenor. | Court No. 20-00060 |

## PLAINTIFF'S COMMENTS IN OPPOSITION TO THE FINAL RESULTS OF THE SECOND REDETERMINATION PURSUANT TO COURT REMAND

Walter J. Spak
Jay C. Campbell
Ron Kendler
Allison J.G. Kepkay

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

April 17, 2023

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.    STANDARD OF REVIEW ....................................................................................2

III.    ARGUMENT .........................................................................................................3

      A.    CBP Continues To Misinterpret the Plain Language of 19 U.S.C. § 1517(a)(5)(A) ................................................................................................3

           1.    The EAPA is not a strict liability statute ......................................3

           2.    The EAPA's requirement for CBP to find some measure of culpability (i.e., a material false statement or omission) is not unduly burdensome .................................................................................5

           3.    The EAPA's requirement for CBP to find some measure of culpability will not impede CBP's ability to take "swift action" or cause CBP to make a negative determination whenever there is a covered merchandise referral ................................................................8

      B.    Commerce's 2006 IDM Did Not Provide Adequate Notice that DTT USA's Imports Were Potentially Covered Merchandise ...................................10

      C.    CBP's Independent Authority under the EAPA Does Not Permit It To Find Evasion Absent a Material False Statement or Omission .....................12

IV.    CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AMS Assoc. v. United States*,
737 F.3d 1338 (Fed. Cir. 2013)............................................................8, 13

*Diamond Tools Tech. LLC v. United States*,
545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ........................................1, 5, 10, 11

*Diamond Tools Technology LLC v. United States*,
Slip Op. 22-145 (Ct. Int'l Trade 2022) ...................................................... passim

*Sunpreme v. United States*,
946 F.3d 1300 (Fed. Cir. 2020)............................................................12, 13, 14

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
983 F.3d 487 (Fed. Cir. 2021)............................................................6, 7

*Trans Tex. Tire, LLC v. United States*,
519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021) ...............................................5, 6, 7

*Trust Chem Co. v. United States*,
819 F. Supp. 2d 1373 (Ct. Int'l Trade 2012) ..............................................2

## STATUTES AND REGULATIONS

19 U.S.C. § 1500(c) ...............................................................................12

19 U.S.C. § 1517 ...................................................................................1

19 U.S.C. § 1517(a)(5)............................................................................4

19 U.S.C. § 1517(a)(5)(A)........................................................................3, 4, 7

19 U.S.C. § 1517(a)(5)(B) ........................................................................4

19 U.S.C. § 1517(a)(5)(B)(ii) ....................................................................5

19 U.S.C. § 1517(b)(4) ............................................................................13

19 U.S.C. § 1517(b)(4)(A)........................................................................9

19 U.S.C § 1517(e) .................................................................................9, 14

19 U.S.C. § 1517(g)(2)(A), (B)...................................................................2

19 U.S.C. §§ 1677j(a)-(d) ........................................................................13

19 C.F.R. § 165.1 .................................................................................................5

19 C.F.R. § 351.225(l) ..........................................................................................7

19 C.F.R. § 351.225(l)(3) .....................................................................................14

## ADMINISTRATIVE DETERMINATIONS

*Diamond Sawblades and Parts Thereof from the People's Republic of China*,
    84 Fed. Reg. 33920 (July 16, 2019) ("final circumvention determ.") ....................................14

*Diamond Sawblades and Parts Thereof from the People's Republic of China*,
    71 Fed. Reg. 29303 (May 22, 2006),
    and Accompanying Issues & Decision Memorandum..................................................... passim

## MISCELLANEOUS

*Evasion*, Black's Law Dictionary (11th ed. 2019)...........................................................4

AMERICAS 121113001

## I.    INTRODUCTION

Plaintiff Diamond Tools Technology LLC ("Plaintiff" or "DTT USA") hereby submits comments in opposition to the second remand redetermination issued by U.S. Customs and Border Protection ("CBP").  *See Second Final Remand Redetermination – Diamond Tools Technology LLC v. United States*, Court No. 20-00060, Mar. 16, 2023 (ECF 92) ("2nd Redetermination").  As discussed below, while Plaintiff agrees with the final conclusion in the 2nd Redetermination (*i.e.*, that evasion did not occur with respect to DTT USA's imports entered before December 2017), Plaintiff *opposes* CBP's explanation for why it nevertheless disagrees with the Court's reasoning in *Diamond Tools I* and *Diamond Tools II.  See Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ("*Diamond Tools I*"); *Diamond Tools Technology LLC v. United States*, Slip Op. 22-145 (Ct. Int'l Trade 2022) ("*Diamond Tools II*").

In *Diamond Tools II*, the Court ordered CBP "to reconsider its conclusion consistent with {the Court's} decision and the facts of this case and, in particular, the applicability of the EAPA in the confined circumstance of an importer's reliance on Commerce's clear directive." *Diamond Tools II* at 22.  In response, CBP states in the 2nd Redetermination that it now "determine{s}, under respectful protest, that DTT USA did *not* evade the AD Order when it imported diamond sawblades assembled in Thailand with Chinese cores and segments, prior to December 2017." 2nd Redetermination at 2 (emphasis added); *see also id.* at 7-9.  Nevertheless, CBP explains that it respectfully disagrees with the Court's analyses in *Diamond Tools I* and *Diamond Tools II*, raising three main arguments:

(1)    The Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517, "does not contain a knowledge or culpability requirement" (2nd Redetermination at 13);

(2)    The U.S. Department of Commerce's ("Commerce") country-of-origin determination set forth in *Diamond Sawblades and Parts Thereof from the People's*

1

*Republic of China*, 71 Fed. Reg. 29303 (Dep't Commerce May 22, 2006), and accompanying Issues and Decision Memorandum ("2006 IDM"), is not relevant because that decision involved a "substantial transformation" analysis, whereas Commerce's response to the covered merchandise referral involved a circumvention analysis (2nd Redetermination at 10-12); and

(3)    CBP has independent authority to suspend liquidation under the EAPA, and its analysis of evasion is not bound by Commerce's timeline in the separate circumvention proceeding (2nd Redetermination at 17-22).

Each of CBP's arguments is flawed and fails to support CBP's original determination that DTT USA entered merchandise through "evasion" prior to December 2017.  Therefore, the Court should affirm CBP's determination in the 2nd Redetermination – issued under "respectful protest" – "that DTT did ***not*** evade the AD Order when it imported diamond sawblades assembled in Thailand with Chinese cores and segments, prior to December 2017."  2nd Redetermination at 2 (emphasis added).

## II.    STANDARD OF REVIEW

The court will not sustain a remand redetermination if that decision fails to comply with the terms of the court's remand order.  *See*, *e.g.*, *Trust Chem Co. v. United States*, 819 F. Supp. 2d 1373, 1378 (Ct. Int'l Trade 2012) (citation omitted).  In addition, the court evaluates whether a "determination, finding, or conclusion" under the EAPA is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2)(A), (B).

AMERICAS 121113001

### III.   ARGUMENT

### A.   CBP Continues To Misinterpret the Plain Language of 19 U.S.C. § 1517(a)(5)(A)

Despite the Court's opinions in *Diamond Tools I* and *Diamond Tools II*, CBP persists in arguing that the "material false statement or omission" element of "evasion" under the statute is essentially meaningless (not requiring any finding of culpability on the part of the target importer). In particular, CBP maintains that (1) the EAPA is a strict liability statute; (2) requiring CBP to find some measure of culpability would be unduly burdensome for CBP; and (3) requiring CBP to find some measure of culpability would compromise CBP's ability to take "swift action" to stop evasion.  For the reasons discussed below, each of these arguments lacks merit.

### 1.   The EAPA is not a strict liability statute

CBP wrongly maintains that the EAPA is a strict liability statute.  *See*, *e.g.*, 2nd Redetermination at 14 ("Whether a statement is false is a binary determination.  A statement is either false or accurate, regardless of the state of mind of a person making such statement.").  CBP asserts that the "EAPA does not require CBP to analyze or consider an importer's state of mind to determine whether false statements were made" and that, contrary to the statute, "the holding in *Diamond Tools II* necessitates that CBP must investigate and analyze the importer's state of mind at the time of importation."  2nd Redetermination at 13.  As the Court held in *Diamond Tools II*, however, CBP misinterprets the plain language of the EAPA.

The Court held that CBP's view that the EAPA is a strict liability statute (*i.e.*, not requiring any degree of culpability) "violates a core maxim of statutory construction" because it "would render {the material false statement or omission provision of the EAPA} a nullity . . . . " *Diamond Tools II* at 12-13.  CBP's interpretation would mean that CBP could find evasion based ***only*** on findings that the target importer entered covered merchandise without paying applicable

antidumping ("AD") or countervailing duties ("CVD") (the first and the third elements of "evasion" under the EAPA), without also finding that the importer made a material false statement or omission (the second element of "evasion" under the EAPA). *See Diamond Tools II* at 16 ("By its own admission, under Customs' application, that statutory requirement – the second of three – would exist perforce every time Customs found that the statutory requirement of merchandise being 'covered' – the first of three – was found by Customs to exist.").

Moreover, CBP's interpretation of the EAPA is inconsistent with the plain meaning of "evasion" and the statute's exception for clerical error. "Evasion" is defined as "{a}n act of eluding, dodging, or avoiding, or avoidance by artifice." *Evasion*, Black's Law Dictionary (11th ed. 2019). Thus, in addition to the requirement that CBP find a material "false" statement or "omission," the statute's use of the term "evasion" itself indicates that a degree of culpability is required. In response, CBP argues that the dictionary definition of "evasion" is "inapposite . . . because EAPA itself contains a definition of 'evasion' in 19 U.S.C. § 1517(a)(5) . . . ." 2nd Redetermination at 25. CBP, however, misses the point, which is that the dictionary definition of "evasion" reinforces the statutory requirement that evasion be found only when the importer entered covered merchandise by means that is "material and ***false***, or any ***omission*** that is material." 19 U.S.C. § 1517(a)(5)(A) (emphasis added). Contrary to CBP's suggestion, there is no inconsistency between the common meaning of "evasion" and the three elements of "evasion" prescribed under § 1517(a)(5)(A).

Moreover, CBP's interpretation that the EAPA is a "strict liability" statute is inconsistent with the EAPA's exception for clerical error. *See* 19 U.S.C. § 1517(a)(5)(B). If the EAPA were a strict liability statute, it would not include an exception for clerical error. CBP dismisses this point as "irrelevant and lack{ing} merit." 2nd Redetermination at 25. Yet CBP fails to explain

AMERICAS 121113001

how the exception for clerical error is consistent with its interpretation that EAPA is a strict liability statute.

Furthermore, the EAPA instructs that, despite the exception, CBP may still find evasion when "the clerical error is part of a pattern of ***negligent*** conduct . . . ." 19 U.S.C. § 1517(a)(5)(B)(ii) (emphasis added). This further demonstrates that some degree of culpability is required for CBP to make an affirmative determination of "evasion" under the statute. CBP does not attempt to respond to this point, other than misstating DTT's position as "CBP ***would not be*** allowed to find evasion if such clerical error is part of a pattern of negligent conduct." 2nd Redetermination at 25 (emphasis added).

In summary, none of CBP's arguments in the 2nd Redetermination disturb the Court's holding that "neither the text of the EAPA statute nor 19 C.F.R. 165.1 supports Customs' statement that it does not need to establish 'any level of culpability.'" *Diamond Tools I* at 1355; *see also Diamond Tools II* at 15 n.10 (noting that the EAPA does not "contain the term strict liability and the statute's legislative history does not indicate the application of that concept").

## 2. The EAPA's requirement for CBP to find some measure of culpability (i.e., a material false statement or omission) is not unduly burdensome

Next, CBP argues that requiring CBP to investigate and consider a target importer's state of mind at the time of importation places "a burden that the plain language of EAPA does not impose on CBP." 2nd Redetermination at 15. CBP's argument is misplaced. Well-established case law indicates that the pertinent question is whether the target importer had "adequate notice" at the time of importation that the merchandise was covered by the scope of an AD/CVD order. This is an objective standard that would not be unduly burdensome for CBP to implement.

In *Trans Tex. Tire, LLC v. United States*, 519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021) ("*Trans Tex. Tire*"), the Court of International Trade held that Commerce could only assess

5

AD/CVD duties from the date of the final scope memorandum – instead of from the date of the initiation notice or preliminary AD/CVD determinations – because Commerce did not provide adequate notice to the importers that certain merchandise was covered until the date of the final scope determination.  In that case, Commerce's notices of initiation and the preliminary AD/CVD determinations excluded from the underlying investigations "certain on-the-road steel wheels that are coated entirely with chrome." *Trans Tex. Tire* at 1288.  In the final scope memorandum, however, Commerce clarified that the exclusion was limited to chrome wheels produced through a chromium electroplating process, and did not extend to wheels finished with other chrome processes, such as physical vapor deposition ("PVD"). *Trans Tex. Tire* at 1288.  The court held that Commerce failed to provide adequate notice of the exclusion's coverage until issuance of the final scope memorandum, because a reasonably informed importer was not "certainly" provided notice that PVD chrome wheels, despite being coated entirely in chrome, fell outside the exclusion until that date. *Trans Tex. Tire* at 1288.  Consequently, the court held that AD/CVD duties could not be assessed on PVD chrome wheels imported before the date of the final scope memorandum. *Trans Tex. Tire* at 1288-1289.

The Federal Circuit's decision in *Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487 (Fed. Cir. 2021) ("*Tai-Ao*"), which concerned a Commerce circumvention inquiry, is also instructive.  In *Tai-Ao*, the Federal Circuit affirmed the CIT's holding that Commerce's original instructions to suspend liquidation retroactively back to the initiation date of a circumvention inquiry were unlawful, because Commerce's initiation notice did not affirmatively state that the plaintiff's imported merchandise would be covered by the circumvention inquiry. *Tai-Ao* at 497.  Instead, the Federal Circuit held that liquidation could only be suspended as of the date of the preliminary circumvention determination, when the importer was first given adequate

6

notice that its products would be covered.  *Tai-Ao* at 497.  Importantly, the Federal Circuit held that this adequate notice ("fair warning") requirement applies regardless of Commerce's suspension of liquidation regulation under 19 C.F.R. § 351.225(l), stating:  "The notice requirement reflects 'the **broader** due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct {the order or regulation} prohibits or requires.'"  *Tai-Ao* at 495 (citations omitted) (emphasis added).

In response, CBP suggests that *Trans Tex. Tire* and *Tai-Ao* are irrelevant, because neither "applies to CBP in the context of EAPA investigations . . . ."  2nd Redetermination at 26.  CBP further asserts that, "{t}he plain language of EAPA does not require that the importer be on notice that its products are subject to an AD/CVD order, nor does it place the burden on CBP to determine whether an importer had such notice."  2nd Redetermination at 26.  Once again, however, CBP ignores EAPA's requirement that, to make an affirmative determination of "evasion," CBP must find that the target importer made a material "false" statement or omission at the time of entry.  *See* 19 U.S.C. § 1517(a)(5)(A).  While not addressing EAPA investigations specifically, *Trans Tex. Tire* and *Tai-Ao* nevertheless support the "**broader** due-process principle that before **an agency** may enforce an order . . . it must 'provide regulated parties fair warning . . . .'"  *Tai-Ao* at 495 (citations omitted) (emphasis added).  As noted by this Court, "{t}he core purpose of a transparent administrative process is for Commerce, Customs and other agencies to provide clear decisions on which parties can rely in engaging in commercial transactions."  *Diamond Tools II* at 13 (citations omitted).  It follows that, where Commerce has failed to provide "adequate notice" of an AD or CVD order's coverage, an importer's declaration that its imports were Type 01 entries (*i.e.*, nonsubject merchandise) should not be treated as a material "false" statement or omission.

AMERICAS 121113001

In summary, Court of International Trade and Federal Circuit case law indicate that the importer must have "adequate notice" before it is liable for AD/CVD duties.  Moreover, "adequate notice" is an objective standard that will not burden CBP's EAPA investigation or force CBP to investigate a particular importer's state of mind.  Here, as found by the Court, Commerce's 2006 IDM was "crystal clear" that the country of origin of a diamond sawblade is the country where the segments and the core are joined.  *Diamond Tools II* at 17.  Therefore, DTT USA lacked adequate notice that the diamond sawblades it imported from Thailand were potentially covered by an expanded scope of the AD order until December 1, 2017, when Commerce initiated the circumvention inquiry.[1]

### 3. The EAPA's requirement for CBP to find some measure of culpability will not impede CBP's ability to take "swift action" or cause CBP to make a negative determination whenever there is a covered merchandise referral

CBP wrongly argues that "{r}equiring CBP to build evidence during the investigation as to the importer's state of mind at the time of importation conflicts with the clear pronouncements by Congress on the purpose of the EAPA statute – to take swift action against evasion and to collect antidumping and countervailing duties owed."  2nd Remand Redetermination at 17.  There is no conflict.  The EAPA authorizes CBP to take interim measures – including suspension of liquidation and requiring cash deposits to protect the revenue of the United States – within 90 days of the initiation of an EAPA investigation based on only a "reasonable suspicion" that evasion

---

[1] Reinforcing DTT USA's lack of adequate notice, circumvention determinations "***expand*** the scope of existing antidumping and countervailing duty orders ***to reach products that are not covered by the existing scope*** . . . ."  *AMS Assoc. v. United States*, 737 F.3d 1338, 1343 (Fed. Cir. 2013) (emphasis added).  This is also why CBP was wrong to contend that DTT USA had adequate notice as early as June 27, 2017, the date on which "CBP notified DTT that an EAPA investigation was initiated against it."  2nd Redetermination at 26.  Before Commerce initiated the circumvention inquiry on December 1, 2017, DTT USA lacked adequate notice that the AD Order might be expanded to include diamond sawblades produced in Thailand.

AMERICAS 121113001

occurred.  19 U.S.C § 1517(e).  Because CBP has the authority to impose interim measures, its ability to take swift action to protect the revenue of the United States is not curtailed by the statutory requirement to find that the importer made a false statement or material omission to support an affirmative final determination of "evasion."

Ignoring the low threshold to impose interim measures, CBP maintains that a "finding of culpability or intent at the time of importation is a fact-specific and subjective inquiry" that "is simply not feasible in the constrained investigation timeline of 300 to 360 days that the statute imposes on CBP."  2nd Redetermination at 27.  As discussed in the preceding section, however, CBP could make the requisite "false" statement or omission finding where the importer had "adequate notice" that its imported merchandise was covered by an AD/CVD order.  "Adequate notice" is an objective standard that will not burden CBP's EAPA investigation or force CBP to investigate a particular importer's state of mind.

CBP also argues that, if it "is required to analyze the importer's state of mind at the time of entry, CBP can never find evasion when there is a covered merchandise referral in an EAPA investigation."  2nd Remand Redetermination at 15.  CBP's argument is speculative and unfounded. For example, in a Covered Merchandise Referral proceeding, Commerce has the authority to determine whether the merchandise in question is unambiguously covered by the scope, defeating any attempt by an importer at the administrative level to argue that it lacked adequate notice its imports were covered merchandise based on CBP's covered merchandise referral alone.

Responding to this point, CBP argues that "EAPA does not limit the covered merchandise referral process to a question of whether merchandise is 'unambiguously covered by the scope.'" 2nd Redetermination at 27.  Plaintiff does not contend that covered merchandise referrals under 19 U.S.C. § 1517(b)(4)(A) are limited to this circumstance.  As the Court noted, there "may be . . .

instances in which an importer *should* request a scope ruling" – including when the scope is unclear. *Diamond Tools II* at 21 (emphasis added).  Under such circumstances, an importer could be found to have made a material "false" statement or omission despite some ambiguity in the scope.

Such circumstances, however, are not present here.  DTT USA's case is exceptional. Commerce itself had determined explicitly that "the country of origin {for AD purposes} is determined by the location where segments and cores are attached to create finished diamond sawblades."  2006 IDM at Comment 4.  As the Court found, DTT USA "complied fully with Commerce's clear directive" at the time of entry, and, therefore, did not make any material false statements or omissions when it declared imports of diamond sawblades from Thailand to be Type "01" entries before December 2017.  *Diamond Tools I* at 1353; *see also Diamond Tools II* at 22.

### B.   Commerce's 2006 IDM Did Not Provide Adequate Notice that DTT USA's Imports Were Potentially Covered Merchandise

In response to the Court's instruction that CBP reconsider its affirmative EAPA determination in light of Commerce's clear directive in the 2006 IDM, CBP maintains that "the 2006 IDM is of little importance in this EAPA investigation" because it involved a "substantial transformation" analysis, whereas Commerce later determined that DTT USA's imports were covered merchandise based on circumvention.  2nd Redetermination at 10-11; *see also id.* at 28 ("{I}n the 2006 IDM, Commerce did not determine whether DTT's merchandise was covered by the AD Order, but it made a finding on country of origin methodology.  It was not a 'crystal-clear' scope determination but a decision that was limited to the record of that investigation.").  CBP's argument is inconsistent with the Court's opinions in *Diamond Tools I* and *Diamond Tools II*, and fails to demonstrate that DTT USA had adequate notice that its imports of diamond sawblades from Thailand were covered merchandise before December 2017.

In *Diamond Tools I* and *Diamond Tools II*, the Court held that Commerce's 2006 IDM was "crystal clear" that the country of origin shall be determined based on the country in which the cores and segments are joined.  *See Diamond Tools I* at 1353; *Diamond Tools II* at 17.  Moreover, the Court noted that the 2006 IDM not only "issue{d} a clear and precise scope determination regarding country of origin," but also provided an "explicit rejection of petitioner's circumvention concerns."  *See Diamond Tools I* at 1354; *Diamond Tools II* at 21.  Therefore, the 2006 IDM "created a clear standard with respect to which affected companies, including DTT USA, were to operate." *Diamond Tools I* at 1354.  Finally, the Court held that "Customs . . . failed to reference any authority that would create an obligation on DTT USA to seek a scope determination from Commerce or to seek a clarification from Customs as to the scope of the 2009 Order."  *Diamond Tools I* at 1354; *see also Diamond Tools II* at 21 ("There may be circumstances in which a determination by Commerce would create the need for a different responsive action by the importer, including instances in which an importer should request a scope ruling. . . . Whatever the possibility of any of these scenarios arising in the future, none is presented here.").

Contrary to CBP's argument, the differences between Commerce's "substantial transformation" analysis in the 2006 IDM and its 2019 circumvention determination **reinforce** the conclusion that DTT USA lacked adequate notice – and did not make a material false statement or omission – when it imported diamond sawblades from Thailand as Type 01 entries (not subject to an AD or CVD order).  As summarized by the Court, "{t}he 2006 IDM was a core public decisional document to explain to the parties and the public the scope of the 2009 Order that was still in effect when DTT USA classified its covered merchandise at the time of entry prior to the circumvention determination ***that later changed*** the scope of the Order."  *Diamond Sawblades II* at 15 (emphasis added).  Consequently, DTT USA did not have "adequate notice" that its pre-December-2017

AMERICAS 121113001

imports were potentially covered merchandise until Commerce initiated the circumvention inquiry on December 1, 2017.

### C.   CBP's Independent Authority under the EAPA Does Not Permit It To Find Evasion Absent a Material False Statement or Omission

CBP asserts that its authority to find evasion under the EAPA should not be tied to any Commerce decisions or timelines.  *See* 2nd Remand Redetermination at 17-22.  Irrespective of its independent authority under the EAPA, however, CBP still must find – based on substantial evidence – that each of the three elements is satisfied to support an affirmative determination of evasion, namely that the importer made entries of (1) covered merchandise (2) by means of a material false statement or omission, (3) resulting in a reduction or avoidance of AD duties.  Here, the Court correctly held in *Diamond Tools II* that DTT USA did not make material false statements or omissions with respect to its pre-December-2017 entries.

Citing *Sunpreme Inc. v. United States*, 946 F. 3d 1300 (Fed. Cir. 2020) (en banc) ("*Sunpreme*"), CBP argues that its suspension of DTT USA's pre-December-2017 entries must be continued, because Commerce later determined that DTT USA's entries were "covered merchandise" in response to CBP's covered merchandise referral.  *See* 2nd Redetermination at 18 ("*Sunpreme*'s holding, that if entries are already suspended under CBP's authority, the suspension of liquidation must continue if Commerce later confirms that the merchandise is subject to the AD/CVD order . . . .") & 19 ("{I}f CBP's suspension of liquidation under EAPA predates confirmation from Commerce that the merchandise is in scope, CBP's suspension of liquidation may, and should, continue.").

*Sunpreme*, however, does not apply to the facts of this case.  In *Sunpreme*, the Federal Circuit held that CBP is authorized under 19 U.S.C. § 1500(c) "to suspend liquidation of goods when it determines that the goods fall within the scope of an ambiguous antidumping or

countervailing duty order." *Sunpreme* at 1321.  Here, however, CBP did **not** determine that DTT

USA's imports of diamond sawblades were covered by the AD order on China; CBP was unable

to make that determination and referred the question to Commerce under 19 U.S.C. § 1517(b)(4).

*See* CBP, Scope Referral Request for merchandise under EAPA Investigation 7184, imported by

Diamond Tools Technology LLC and concerning the investigation of evasion of the antidumping

duty order on diamond sawblades from the People's Republic of China (A-570-900) (Nov. 21,

2017) (Public Document 184) at 2 ("Covered Merch. Referral").  Specifically, CBP asked

Commerce whether Thailand was the country of origin based on Commerce's prior determination

that the country of origin is where the core and segments are joined.  *See* Covered Merch. Referral

at 2.  In response, Commerce confirmed that Thailand **was** the country of origin, because

Commerce conducted a circumvention inquiry and ultimately **expanded** the scope of the AD order

on diamond sawblades **from China** to include certain of DTT USA's imports of diamond

sawblades **from Thailand**.  *See* Commerce, Diamond Sawblades and Parts Thereof from the

People's Republic of China: Notification of the Final Determination of the Anti-Circumvention

Inquiry in Response to the Covered Merchandise Referral (July 10, 2019) (Public Document 209)

at 5 ("{W}e have reached an affirmative final circumvention finding for diamond sawblades made

with Chinese cores and Chinese segments, going back to the initiation date of Commerce's anti-

circumvention inquiry.") ("Covered Merch. Resp."); *see also AMS Assoc. v. United States*, 737

F.3d 1338, 1343 (Fed. Cir. 2013) ("In order to prevent circumvention, 19 U.S.C. §§ 1677j(a)-(d)

authorize Commerce **to expand the scope** of existing antidumping and countervailing duty orders

*to reach products that are not covered by the existing scope* and to suspend liquidation through formal anti-circumvention inquiries.") (emphases added).[2]

Moreover, unlike in *Sunpreme*, Commerce did ***not*** continue the earlier suspension of liquidation imposed by CBP as interim measures.  Instead, Commerce stated that, in accordance with 19 C.F.R. § 351.225(l)(3), it "will direct CBP to suspend liquidation and to require a cash deposit of estimated duties on unliquidated entries of diamond sawblades produced (*i.e.*, assembled or completed) using Chinese cores and Chinese segments by {DTT Thailand} that were entered .

. . for consumption **on or after December 1, 2017, the date of initiation of this anti-circumvention inquiry**."  *Final Circumvention Determination* at 33921 (emphasis added).  While claiming to "cit{e} *Sunpreme* in this remand redetermination simply to illustrate the relationship between commerce and CBP authorities{,}" 2nd Redetermination at 28-29, CBP failed to explain the case's relevance in light of the important distinctions highlighted above.

More importantly, the critical question is not whether CBP had authority to ***suspend*** liquidation as part of interim measures under 19 U.S.C. § 1517(e), but rather whether CBP could permissibly ***maintain*** that suspension (and ultimately assess AD duties) based on an affirmative ***final determination*** of evasion.  Here, the Court correctly held that CBP failed to explain or support with substantial evidence its determination that DTT USA made a material false statement or omission with respect to its entries before December 2017.  *Diamond Tools II* at 10-11.

---

[2]   Notably, Commerce did not find that all of DTT USA's imports from Thailand were circumventing the AD order.  Commerce only determined that diamond sawblades produced in Thailand using Chinese-origin cores ***and*** Chinese-origin segments were circumventing the AD order.  *See Diamond Sawblades and Parts Thereof from the People's Republic of China*, 84 Fed. Reg. 33920, 33920-21 (July 16, 2019) (final circumvention determ.) ("*Final Circumvention Determination*").  DTT USA also imported diamond sawblades that were manufactured in Thailand using Thai-origin cores or Thai-origin segments.

Consequently, CBP's prior determination that DTT USA's pre-December-2017 entries evaded the AD order on diamond sawblades from China is unsupported by substantial evidence.

Asserting its independent authority, CBP also argues that December 1, 2017, "has no significance for CBP under EAPA for finding whether the importer made false statements."  2nd Redetermination at 21.  As discussed above, however, the Court held that DTT USA followed Commerce's "clear directive" in the 2006 IDM by declaring its imports before December 2017 to be Type "01" entries.  In light of the 2006 IDM, DTT USA lacked adequate notice until December 1, 2017 (when Commerce initiated the circumvention inquiry) that the diamond sawblades it imported were potentially subject to an expanded scope of the AD order.

CBP also cites the Court's holding in *Diamond Tools I* that "Commerce's later circumvention timeline would restrict Customs' authority to find that DTT USA's pre-December 2017 entries were 'covered merchandise,' thereby limiting Customs' enforcement authority under the EAPA with regard to those entries."  2nd Redetermination at 21.  Here, however, the Court only affirmed CBP's determination that DTT USA's pre-December-2017 entries were covered merchandise.  The Court did ***not*** affirm CBP's determination that DTT USA made material false statements or omissions with respect to the pre-December-2017 entries.

Overall, CBP's arguments concerning its independent authority under the EAPA are unavailing, because DTT USA did not make any material false statements or omissions with respect to its pre-December-2017 entries.

15

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court affirm the 2nd Redetermination's conclusion – made under "respectful protest" – that DTT USA did not enter covered merchandise through evasion prior to December 2017.

<div style="margin-left: 40%;">

Respectfully submitted,

WHITE AND CASE LLP

 /s/ Jay C. Campbell
Walter J. Spak
Jay C. Campbell
Ron Kendler
Allison J.G. Kepkay
WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

</div>

Date:  April 17, 2023                    Counsel to Diamond Tools Technology LLC

16

CERTIFICATE OF COMPLIANCE

I, Jay C. Campbell, certify that the attached Plaintiff's comments in opposition to the final results of redetermination pursuant to court remand comply with the page limitation requirement, as stated in the Court's March 21, 2023, Scheduling Order.  Plaintiff's comments run 16 pages.

<div align="right">
____/s/ Jay C. Campbell_____
Jay C. Campbell
</div>