UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | Court No. 20-00060 |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| DIAMOND SAWBLADES ) | |
| MANUFACTURERS' COALITION, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## <u>ORDER</u>

Upon consideration of the remand redetermination issued by U.S. Customs and Border Protection pursuant to *Diamond Tools Technology LLC v. United States*, 609 F. Supp.3d 1378 (Ct. Int'l Trade 2022); plaintiff's and defendant-intervenor's comments upon the remand redetermination; defendant's reply thereto; and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained in all respects; and it is further

ORDERED that judgment is entered in this case.

_____
JUDGE

Dated: _____, 2023
          New York, NY

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

|  |  |  |
|---|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES, | ) | Court No. 20-00060 |
| Defendant, | ) | |
| and | ) | |
| DIAMOND SAWBLADES MANUFACTURERS' COALITION, | ) | |
| Defendant-Intervenor. | ) | |

---

**DEFENDANT'S REPLY TO
PLAINTIFF'S AND DEFENDANT-INTERVENORS'
COMMENTS ON THE REMAND REDETERMINATION**

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

TAMARI J. LAGVILAVA
Senior Attorney
U.S. Customs and Border Protection
Office of the Chief Counsel

ANTONIA R. SOARES
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
antonia.soares@usdoj.gov

May 26, 2023

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

BACKGROUND ...................................................................................................... 2

    I.       The Court's First Remand Order And CBP's Remand Redetermination ............... 2

    II.     The Court's Second Remand Order And CBP's Remand Redetermination........... 3

ARGUMENT ........................................................................................................... 6

    I.       Standard Of Review ............................................................................................. 6

    II.     CBP's Redetermination Should Be Sustained Because It Complies With The
           Court's Remand Order, Under Respectful Protest ................................................ 7

          A.  The Coalition's Arguments Lack Merit ......................................................... 7

          B.  DTT Erroneously Interprets CBP's Redetermination, Under Respectful Protest,
              As Seeking To Revisit Issues Already Decided In *Diamond Tools II* ............ 14

CONCLUSION........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Can Tho Import-Export Joint Stock Company v. United States,*
    435 F. Supp.3d 1300 (Ct. Int'l Trade 2020) ........................................................................14

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ..............................................................................................................6

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ..............................................................................................................7

*Diamond Tools Tech. LLC v. United States,*
    545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021)................................................................2, 7, 15

*Diamond Tools Technology LLC v. United States,*
    609 F. Supp.3d 1378 (Ct. Int'l Trade 2022) ...............................................................*passim*

*Downhole Pipe & Equip., L.P. v. United States,*
    776 F.3d 1369 (Fed. Cir. 2015)............................................................................................6

*Eregli Demir ve Celik Fabrikalari T.A.S v. United States,*
    435 F. Supp.3d 1378, 1381 (Ct. Int'l Trade 2020)............................................................13

*Garg Tube Export LLP v. United States,*
    600 F. Supp.3d 1276 (Ct. Int'l Trade 2022) ...........................................................12, 15, 16

*Hyundai Heavy Industries Co., Ltd. v. United States,*
    527 F. Supp.3d 1374 (Ct. Int'l Trade 2021) ......................................................................13

*Jinko Solar Co. v. United States,*
    317 F. Supp. 3d 1314 (Ct. Int'l Trade 2018)......................................................................14

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015).........................................................................6

*Meridian Prods., LLC v. United States,*
    890 F.3d 1272 (Fed. Cir. 2018)..........................................................................................14

*Tai-Ao Aluminium (Taishan) Co., Ltd. v. United States,*
    415 F. Supp.3d 1391 (Ct. Int'l Trade 2019) ......................................................................13

*Viraj Group, Ltd. v. United States,*
    343 F.3d 1371 (Fed. Cir. 2003)...............................................................................6, 13, 14

**Statutes**

19 U.S.C. § 1516a(b)..................................................................................6

19 U.S.C. § 1517........................................................................................1

19 U.S.C. § 1517(g)................................................................................6, 7

19 U.S.C. § 1517(g)(2)(B)..........................................................................

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>DIAMOND SAWBLADES )<br>MANUFACTURERS' COALITION, )<br><br>Defendant-Intervenor. ) | Court No. 20-00060 |

**DEFENDANT'S REPLY TO**
**PLAINTIFF'S AND DEFENDANT-INTERVENOR'S**
**COMMENTS ON THE REMAND REDETERMINATION**

Pursuant to this Court's March 21, 2023 order, defendant, the United States, respectfully submits this reply to the comments filed by plaintiff, Diamond Tools Technology LLC (DTT), and defendant-intervenor, the Diamond Sawblades Manufacturers' Coalition (the Coalition or DSMC).  *See* DTT Cmts., ECF No. 97; DSMC Cmts., ECF No. 96.  This reply concerns the remand redetermination, under respectful protest, filed by U.S. Customs and Border Protection (CBP) pursuant to the Court's remand order in *Diamond Tools Technology LLC v. United States*, 609 F. Supp.3d 1378 (Ct. Int'l Trade 2022) (*Diamond Tools II*).  *See* Final Remand Redetermination, ECF No. 92 (Redet.).  The Coalition opposes CBP's remand redetermination on multiple grounds.  Although agreeing with CBP's redetermination finding of no evasion under the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517, DTT devotes its comments to

opposing CBP's explanation as to the basis for its redetermination under respectful protest.  As explained below, the Court should sustain CBP's redetermination because it complies with the Court's remand order, is supported by substantial evidence, and is otherwise in accordance with law.

## BACKGROUND

### I.    The Court's First Remand Order And CBP's Remand Redetermination

This action arises out of CBP's affirmative determination of evasion of the antidumping duty (AD) order on diamond sawblades from the People's Republic of China (China) against DTT under EAPA.  DTT challenged the affirmative determination and, on October 29, 2021, the Court remanded in part for reconsideration.  *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) (*Diamond Tools I*).  Although holding that CBP had lawfully found DTT's diamond sawblades to be "covered merchandise," the Court remanded to CBP to explain how DTT's entry of diamond sawblades prior to December 2017 as type "01" entries — that is, as entries not subject to an AD order — constituted a material and false statement or material omission under EAPA.  *Id.* at 1347-55.

In analyzing EAPA's material-and-false-statement element, the Court relied on the 2006 Issues and Decision Memorandum that Commerce issued in connection with its original antidumping investigation of diamond sawblades from China (2006 IDM) in which Commerce found that "country of origin should be determined by the location of where the segments are joined to the core."  *Id.* at 1351-52 (quoting 2006 IDM at Cmt. 4).  The Court found that, "{g}iven Commerce's clearly stated conclusion, DTT USA did not make a material and false statement by importing the diamond sawblades as Thai-origin because such a statement was not 'erroneous', 'untrue' or 'deceitful{ }'" based on the fact that "DTT USA's imports were made of

2

Chinese cores and segments assembled in *Thailand.*" *Id.* at 1353 (emphasis in the original).  The

Court concluded that, "by importing the diamond sawblades as Thai-origin, DTT USA complied

fully with Commerce's clear directive that the country of origin be determined by the country in

which the cores and segments are joined." *Id.*  In light of these findings related to the 2006 IDM,

the Court found that CBP had not appropriately addressed whether a material omission had been

made, or a material false statement or act occurred.  *Id.* at 1353-54.

On January 27, 2022, CBP issued its first remand redetermination, continuing to find that

DTT made material and false statements or acts, or material omissions, with respect to

merchandise entered prior to December 1, 2017.  Remand Redetermination, ECF No. 70 (Redet.

I).  CBP found that DTT's reliance on the 2006 IDM was "flawed" because, if anything, the

2006 IDM should have raised concerns regarding the potential risk of third-country assembly.

*Id.* at 9-10.  CBP also provided legal authority demonstrating DTT's obligation to seek

clarification from CBP or a scope ruling from Commerce to ensure that its imports were not

subject to the AD order.  *Id.*; *see also id.* at 17.

## II.      The Court's Second Remand Order And CBP's Remand Redetermination

DTT continued to contest CBP's findings in the first remand redetermination in

comments filed with the Court.  On December 22, 2022, the Court remanded the first remand

redetermination after concluding that CBP failed to provide an adequate explanation for its

finding that DTT made a material and false statement or act, or a material omission.  *Diamond*

*Tools II*, 609 F. Supp.3d at 1385-91.  The Court found that, in light of DTT's reliance on

Commerce's 2006 IDM, DTT's failure to declare that its merchandise was subject to the AD

order did not constitute a material and false statement under EAPA.  *Id.*

In particular, the Court found that, at the time of entry, DTT's representation of the entry type of the diamond sawblades reflected an accurate understanding of the 2006 IDM because "Commerce's words were unequivocal and left no doubt as to the meaning of the precise scope of the AD order in this case." *Id.* at 1387.  The Court also found that "{t}he 2006 IDM was a core public decisional document to explain to the parties and the public the scope of the 2009 Order that was still in effect when DTT USA classified its covered merchandise at the time of entry." *Id.* at 1387-1388.  The Court thus found that, "{i}n this case, not only did Commerce issue a clear and precise scope determination regarding country of origin . . ., DTT USA relied on and followed Commerce's clear and specific instructions{.}" *Id.* at 1391.  The Court further found that "DTT USA filling out the import documentation based on the explicit and clear terms of Commerce's order and the associated 2006 IDM, does not, in accordance with statutory construction, comprise a material and false statement or omission." *Id.* at 1388.  The Court concluded that CBP "ha{d} not provided an explanation of how DTT USA's entry of diamond sawblades under type 01 from Thailand constituted a false statement when Commerce itself instructed importers 'that the country of origin should be determined by the location of where the segments are joined to the core.'" *Id.* at 1389-1390 (quoting 2006 IDM at Cmt. 4).  The Court directed CBP to issue a new determination "reconsider{ing} its conclusion consistent with this decision and the facts of this case and, in particular, the applicability of the EAPA in the confined circumstance of an importer's reliance on Commerce's clear directive." *Id.*

Based on the Court's instructions, in the second remand redetermination, CBP reconsidered, under respectful protest, whether DTT made material false statements, acts, or omissions on its entries.  Redet. at 2, 7-10.  In its analysis, CBP applied the Court's finding that, in filing its pre-December 1, 2017 entries, DTT was acting consistently with the 2006 IDM.  *Id.*

at 7.  CBP observed that the Court in *Diamond Tools II* found that "Commerce's words were unequivocal and left no doubt as to the meaning of the precise scope of the AD Order in this case{;}" that the Court further concluded that the 2006 IDM was a "core public decisional document to explain to the parties and the public the scope of the {AD order} that was still in effect when DTT classified its covered merchandise at the time of entry{;}" and that the "Court also emphasized the limited nature of its holding, ordering CBP to reconsider the 'applicability of the EAPA in the *confined circumstance* of an importer's reliance on Commerce's clear directive.'"  *Id.* at 8 (emphasis in the original).  CBP concluded that, in light of "the limited set of facts applicable to DTT's pre-December 1, 2017 entries and the Court's . . . opinion in *Diamond Tools II,* under respectful protest, CBP finds that DTT did not make false statements, and thus its actions do not constitute evasion under EAPA."  *Id.*

CBP applied the following "limited set of facts": that Commerce determined that country of origin of diamond sawblades would be determined by the place where cores and segments were joined; that DTT's diamond sawblades were assembled in Thailand where its manufacturing operation consisted of joining Chinese-origin cores and Chinese-origin segments to produce finished diamond sawblades; and that DTT's filing of entries as Type "01" was consistent with the country of origin methodology outlined in the 2006 IDM.  *Id.* at 8-9.  CBP determined that, to the extent that the country-of-origin methodology is deemed controlling, DTT's filing of entries as Type "01" was not a false statement because DTT was acting under the country-of-origin methodology effective at the time of the entry.  *Id.* at 9.  CBP also concluded that this finding is limited to the unique set of facts presented in this case and is issued under the Court's instruction in *Diamond Tools II* — that DTT is deemed to have relied on the "clear directive" from Commerce.  *Id.*  Thus, to comply with the Court's findings and the remand order,

CBP determined, under respectful protest, that DTT did not evade the AD order when it imported diamond sawblades assembled in Thailand with Chinese cores and segments, prior to December 2017.  *Id.* at 9-10.

CBP also provided an explanation for its decision to issue the remand redetermination under protest.  *See id.* at 2 n.8 ("We are issuing this redetermination under protest because, as explained herein, we respectfully disagree with this Court's interpretation of the EAPA statute and the interplay of Commerce's authorities with those of CBP.") (citing *Viraj Group, Ltd. v. United States*, 343 F.3d 1371 (Fed. Cir. 2003)); *see also* Redet. at 10-22.

## ARGUMENT

## I.    Standard Of Review

The EAPA statute provides that, "{i}n determining whether a determination under subsection (c) or review under subsection (f) is conducted in accordance with those subsections," this Court "shall examine — (A) whether {CBP} fully complied with all procedures under subsections (c) and (f); and (B) whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  19 U.S.C. § 1517(g)(2).

In remand proceedings, the Court will sustain an agency's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law."  *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  Substantial evidence means evidence that a "reasonable mind might accept as adequate to support a conclusion." *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Under this standard, "the possibility of

drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

II.   **CBP's Redetermination Should Be Sustained Because It Complies With The Court's Remand Order, Under Respectful Protest**

CBP's redetermination, which was issued under respectful protest, complies with the Court's remand order and should be sustained. The Coalition opposes CBP's redetermination. *See* DSMC Cmts. Although agreeing with CBP's redetermination finding of no evasion, DTT devotes its comments to opposing "CBP's explanation for why it nevertheless disagrees with the Court's reasoning in *Diamond Tools I* and *Diamond Tools II*." DTT Br. at 1. We address the Coalition's and DTT's arguments below.

A.   **The Coalition's Arguments Lack Merit**

The Coalition opposes the redetermination to the extent that CBP found that DTT did not make false statements, acts or omissions and did not evade the antidumping order when it imported diamond sawblades assembled in Thailand with Chinese cores and Chinese segments prior to December 2017. In particular, the Coalition contends that the redetermination was not in accordance with law under 19 U.S.C. § 1517(g)(2)(B) because "CBP indicated that it acted under the belief that it was required to reach certain conclusions pursuant to its reading of the {remand order}." DSMC Br. at 1; *see also id.* at 2, 8-10. Similarly, the Coalition contends that CBP could have complied with the remand order and still made an affirmative determination of evasion because the remand order did not specifically require a finding of no false statements. *Id.* at 2, 15-16. The remand redetermination complies with the remand order.

Without quoting it, the Coalition relies on one statement in the redetermination in support of its argument that CBP acted under the belief that it was required to reach certain conclusions.

DSMC Br. at 1 (citing Redet. at 23-24); *see also id.* at 6-7, 9.  On the cited pages, CBP stated that "DSMC has not provided an adequate interpretation of the holding in *Diamond Tools II* to support its argument that CBP was not required to find that DTT did not make false statements with respect to its pre-December 1, 2017 entries."  Redet. at 23-24.  Read in context, CBP's statement conveys that applying the holding in *Diamond Tools II* — which turns on the significance of the 2006 IDM to the analysis of EAPA's false-statements element — foreclosed a finding that DTT made false statements under the statute.  *See id.* at 7-10.  In *Diamond Tools II*, CBP explained, the Court found that, in light of DTT's reliance on Commerce's 2006 IDM, DTT's failure to declare that its merchandise was subject to the AD order did not constitute a material and false statement under EAPA.  Redet. at 2 (citing *Diamond Tools II*, 609 F. Supp.3d at 1385-88).  CBP further explained that the Court "directed CBP to issue a new determination 'reconsider{ing} its conclusion consistent with this decision and the facts of this case and, in particular, the applicability of the EAPA in the confined circumstance of an importer's reliance on Commerce's clear directive.'"  *Id.* (quoting *Diamond Tools II*, 609 F. Supp.3d at 1391).  "Based on the Court's instructions, {CBP} . . . reconsidered, under respectful protest, whether DTT made false statements, acts, or omissions{.}"  *Id.*  In reconsidering the issue, CBP relied on the Court's finding that "DTT was acting consistent with Commerce's prior interpretation of the scope of the AD Order" as set forth in the 2006 IDM.  *Id.* at 7.

As CBP explained, in Commerce's 2006 country-of-origin methodology for diamond sawblades, it found that "the country of origin is determined by the location where segments and cores are attached to create finished diamond sawblades."  *Id.* at 8 (quoting 2006 IDM at 19).  CBP further explained that the Court in *Diamond Tools II* found that:  "Commerce's words were unequivocal and left no doubt as to the meaning of the precise scope of the AD Order in this

case{;}" that the 2006 IDM was a 'core public decisional document to explain to the parties and the public the scope of the {AD order} that was still in effect when DTT classified its covered merchandise at the time of entry prior to the circumvention determination that later changed the scope of the Order{ }"; and emphasized the limited nature of its holding, ordering CBP to reconsider "applicability of the EAPA in the *confined circumstance* of an importer's reliance on Commerce's clear directive." *Id.* (quoting *Diamond Tools II*, 609 F. Supp.3d at 1391).  Because Commerce determined that country of origin of diamond sawblades would be determined by the place where cores and segments were joined and because DTT's diamond sawblades were assembled in Thailand where its manufacturing operation consisted of joining Chinese-origin cores and Chinese-origin segments to produce finished diamond sawblades, CBP concluded, under respectful protest, that "DTT's filing of entries as Type '01' is consistent with the country of origin methodology outlined in the 2006 IDM, and to the extent that methodology is deemed controlling, was not a false statement." *Id.* at 8-9 (citing 2006 IDM; Notice of Final Determination as to Evasion, September 17, 2019, Confidential Record Document (C.R.) No. 199 (September 17 Determination)).  Indeed, in *Diamond Tools II*, the Court found that DTT did not make a false statement:  "DTT USA filling out the import documentation based on the explicit and clear terms of Commerce's order and the associated 2006 IDM, does not, in accordance with statutory construction, comprise a material and false statement or omission." 609 F. Supp. 3d at 1388.  Thus, in light of the Court's findings "that the importer is considered to have relied on the 'clear directive' from Commerce" in the 2006 IDM when entering its merchandise as Type "01", CBP was foreclosed from concluding that DTT made a false statement based on the same act.

CBP's analysis demonstrates that the agency applied the remand order's finding that the 2006 IDM constituted a "clear directive."  The Coalition fails to explain how CBP's application of the Court's finding was unlawful.

The Coalition maintains that "there still appears to be an open question regarding whether the 2006 IDM language was in regard to the country of origin of Chinese-joined vs. Korean-joined merchandise, which were both subject countries at that point in the investigation."  DSMC Br. at 9.  CBP discerned no such "open question" in *Diamond Tools II*.  *See* Redet. at 7-10.  Rather, the Court's finding regarding the 2006 IDM is unequivocal:

> At the time of entry, DTT USA's representation of the entry type of the diamond sawblades reflected an accurate understanding of the 2006 IDM issued by Commerce{. . . .}  Commerce's words were unequivocal and left no doubt as to the meaning of the precise scope of the AD order in this case. What is more, in the 2006 IDM Commerce itself expressly rejected the petitioner's concern that Commerce's AD Order and accompanying IDM could lead to circumvention.

*Diamond Tools II*, 609 F. Supp.3d at 1388 (citing IDM at Cmt. 4); *see also id.* ("DTT USA filling out the import documentation based on the explicit and clear terms of Commerce's order and the associated 2006 IDM, does not, in accordance with statutory construction, comprise a material and false statement or omission."); *id.* at 1387 ("{a}t the time of entry, DTT USA's representation of the entry type of the diamond sawblades reflected an accurate understanding of the 2006 IDM issued by Commerce{.}"); *see also* Redet. at 7-10.  Although the Coalition contends that "a remand could cast further light on this matter" (DSMC Br. at 9), another remand is not warranted in light of the Court's findings related to the 2006 IDM.

The Coalition also contends that, "instead of endorsing this Court's characterization of the 2006 IDM, CBP could have provided additional explanation regarding why the 2006 IDM is not controlling to address the Court's concern."  DSMC Br. at 12-13.  As the Coalition

recognizes, in outlining its objections to *Diamond Tools II*, CBP addressed its position that the

2006 IDM did not foreclose a false statement. *Id.* at 13 (quoting Redet. at 10-11); *see also*

Redet. at 10-13.  But its objections notwithstanding, CBP concluded that application of the

Court's findings concerning the 2006 IDM left the agency with no option but to make a finding

of no evasion.  Redet. at 7-10.  This Court has sustained redeterminations when faced with

similar arguments from a defendant-intervenor dissatisfied with a remand redetermination.  *See*

*Garg Tube Export LLP v. United States*, 600 F. Supp.3d 1276, 1280 (Ct. Int'l Trade 2022)

("Although Nucor argues Commerce's prior determination was correct and Commerce should

simply offer a fuller explanation of its determination . . .{,} Commerce concedes it has no further

explanation to offer.").

Also without merit is the Coalition's contention that another remand is necessary because

"CBP did not address the issue below as to whether the 2006 IDM was a backward looking

decision (in effect, determining whether certain sales were more properly included in the Chinese

or Korean sales databases) or whether this IDM properly serves as binding forward looking

guidance to the importing community." DSMC Br. at 9; *see also id.* at 12-13.  The Coalition's

contention lacks merit given the Court's finding that the 2006 IDM provided "a clear

directive{,}" and that DTT's compliance with that directive did not constitute a material and

false statement or omission.  *Diamond Tools II*, 609 F. Supp. 3d at 1388, 1391.

The Coalition further contends that CBP's decision to find no evasion, under respectful

protest, was in error because "CBP should have adopted the reasoning that it presents under

objection as its primary response to the Second CIT Remand Order and, consequently, also

should have made an affirmative determination of material and false statements and an

affirmative determination of evasion under the Enforce and Protect Act (EAPA)."  DSMC Br. at

2.  This is so, the Coalition asserts, because it disagrees with the Court's underlying decision, devoting several pages of its comments to arguments as to the correctness of CBP's evasion determination, the Court's erroneous findings concerning the significance to the 2006 IDM, and the lawfulness of CBP's evasion determination.  *Id.* at 10-15.  The Coalition's argument lacks merit.

Although the redetermination addresses CBP's objections to *Diamond Tools II*, CBP did so for the limited purpose of explaining its basis for issuing the redetermination under respectful protest.  Redet. at 10-22; *see also id.* at 2 n.8 ("We are issuing this redetermination under protest because, as explained herein, we respectfully disagree with this Court's interpretation of the EAPA statute and the interplay of Commerce's authorities with those of CBP.") (citing *Viraj Group, Ltd.*, 343 F.3d 1371).  CBP did not intend for its objections to be construed as revisiting issues already decided by the Court.  Indeed, this Court has observed that defendant-intervenors' disagreement with remand redeterminations is no basis for revisiting issues already decided by the Court.  *See Eregli Demir ve Celik Fabrikalari T.A.S v. United States*, 435 F. Supp.3d 1378, 1381 (Ct. Int'l Trade 2020) ("Defendant-Intervenors' opposition to the 3rd Remand Results consists solely of its disagreement with the court's opinions in this proceeding{,}" and states that "Defendant-Intervenors 'continue to concur' with Commerce's initial decision{.}"  Defendant-Intervenors correctly recognize, however, that the court 'will not re-visit these issues.'"); *Tai-Ao Aluminium (Taishan) Co., Ltd. v. United States*, 415 F. Supp.3d 1391, 1395 (Ct. Int'l Trade 2019) (in holding that the remand results are consistent with the remand order, observing that defendant-intervenor "continues to disagree with the court's decision . . . {and} thus argues that Commerce's decision {issued} under protest was in error and is not supported by substantial evidence or otherwise in accordance with law"); *see also Hyundai Heavy Industries Co., Ltd. v.*

*United States*, 527 F. Supp.3d 1374, 1377 (Ct. Int'l Trade 2021) ("ABB's opposition to the Second Remand Results is based on its disagreement with the court's prior opinions in this proceeding. . . .  ABB raises no specific arguments challenging the Second Remand Results that the court has not addressed in those prior opinions; rather, ABB seeks to preserve its 'appellate rights.'").

To the extent that the Coalition takes issue with CBP's authority to file a redetermination under protest, it is settled that the agency may do so.  *See Meridian Prods., LLC v. United States*, 890 F.3d 1272, 1277 n.3 (Fed. Cir. 2018) (citing *Viraj Grp., Ltd.*, 343 F.3d at 1376).  In *Meridian*, the Federal Circuit held that "Commerce will reach a remand determination under protest under circumstances where the CIT remands with instructions that dictate a certain outcome that is contrary to how Commerce would otherwise find."  *Id.*  Moreover, as this Court has held, "{b}y complying with the court's order under protest, Commerce preserves for appeal the arguments and positions it presented in the final determination and {remand results}."  *Jinko Solar Co. v. United States*, 317 F. Supp. 3d 1314, 1321, n.12 (Ct. Int'l Trade 2018) (citing *Viraj*, 343 F.3d at 1376-77), *aff'd*, 961 F.3d 1177 (Fed. Cir. 2020).

Finally, the Coalition erroneously contends that CBP could have complied with the remand order and made an affirmative determination of evasion by providing additional analysis and explanation.  DSMC Br. at 2, 8, 15-16.  As CBP explained, although largely agreeing with the Coalition's position related to the significance of the 2006 IDM and its interpretation of the EAPA statute as a strict liability statute, CBP found that the agency could not make an affirmative determination of evasion and comply with *Diamond Tools II*.  Redet. at 23.  In particular, CBP explained that finding that DTT made a false statement was foreclosed after

applying the Court's finding that the 2006 IDM constituted a "clear directive" to DTT that its entries were not subject to the AD order. *Id.* at 7-10.

In sum, the Coalition fails to demonstrate that CBP's redetermination did not comply with the remand order. Accordingly, the redetermination should be sustained. *See Can Tho Import-Export Joint Stock Company v. United States*, 435 F. Supp.3d 1300, 1305 n.8 (Ct. Int'l Trade 2020) (in sustaining remand redetermination under protest, observing that "Defendant-Intervenors also state that Commerce's Second Remand Results are not in accordance with law . . . ; however, they do not elaborate on that claim of error."); *Garg Tube Export LLP*, 600 F. Supp.3d at 1280 (in sustaining remand redetermination under protest, observing that, "{a}lthough Nucor argues Commerce's prior determination was correct and Commerce should simply offer a fuller explanation of its determination . . .{,} Commerce concedes it has no further explanation to offer.").

### B.      DTT Erroneously Interprets CBP's Redetermination, Under Respectful Protest, As Seeking To Revisit Issues Already Decided In *Diamond Tools II*

Although agreeing with CBP's redetermination finding of no evasion, DTT devotes its comments to opposing "CBP's explanation for why it nevertheless disagrees with the Court's reasoning in *Diamond Tools I* and *Diamond Tools II*." DTT Br. at 1. But CBP's discussion of its objections to *Diamond Tools II* had the limited purpose of explaining the basis for the redetermination under respectful protest — *not* to revisit issues already decided by this Court.

As discussed above, in the redetermination, CBP explained the basis for its redetermination under respectful protest by outlining its objections to the Court's findings concerning the 2006 IDM and interpretation of the EAPA statute. Redet. at 10-22. In so doing, CBP did not intend to revisit issues already decided by the Court in *Diamond Tools II*. Instead,

CBP complied with the *Diamond Tools II* remand order by applying the Court's findings

concerning the 2006 IDM.  Redet. at 7-10, 23-24.

Because the redetermination concludes, under respectful protest, that DTT did not engage

in evasion in violation of EAPA, we do not believe it is appropriate to address those aspects of

DTT's comments that involve matters beyond the scope of the *Diamond Tools II* remand order.

Indeed, we believe addressing these issues would not comply with the remand order.  *See Garg

Tube Export LLP*, 600 F. Supp.3d at 1280 n.4 (Commerce "explaining that to revisit an analysis

already rejected by the court would be inconsistent with the Court's order in *Garg II*").  To the

extent that the Court determines that the Government is authorized to address DTT's arguments,

we respectfully request an opportunity to brief these issues.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain CBP's remand

redetermination and enter judgment in this case.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General


PATRICIA M. McCARTHY
Director


<u>/s/ Franklin E. White, Jr.</u>
FRANKLIN E. WHITE, JR.
Assistant Director

15

OF COUNSEL:

/s/ Antonia R. Soares

| | |
|---|---|
| TAMARI J. LAGVILAVA | ANTONIA R. SOARES |
| Senior Attorney | Senior Trial Counsel |
| Enforcement and Operations | U.S. Department of Justice |
| Office of the Chief Counsel | Civil Division, Commercial Litigation Branch |
| U.S. Customs and Border Protection | PO Box 480, Ben Franklin Station |
| | Washington, DC 20044 |
| | Telephone:  (202) 305-7405 |
| | antonia.soares@usdoj.gov |

May 26, 2023                          Attorneys for Defendant

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the attached defendant's reply complies with the page limitation of

20 pages set forth in the Court's Scheduling Order dated March 21, 2023.

/s/ Antonia R. Soares
ANTONIA R. SOARES

## **CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on this 26th day of May, 2023, a copy of the

foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S AND DEFENDANT-INTERVENOR'S

COMMENTS ON THE REMAND REDETERMINATION" was filed electronically.  I

understand that notice of this filing will be sent to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.


/s/ Antonia R. Soares
ANTONIA R. SOARES