UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC,    ) | |
|          Plaintiff,    ) | |
|    v.    ) | |
| UNITED STATES,    ) | Court No. 20-00060 |
|          Defendant,    ) | |
|    and    ) | |
| DIAMOND SAWBLADES MANUFACTURERS' COALITION,    ) | |
|          Defendant-Intervenor.    ) | |

## ORDER

Upon consideration of the application for fees pursuant to the Equal Access to Justice Act filed by plaintiff, Diamond Tools Technology LLC, defendant's opposition thereto, and all other pertinent papers, it is hereby

ORDERED that plaintiff's application is denied.

_____
JUDGE

Dated: _____, 2023
     New York, NY

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>DIAMOND SAWBLADES )<br>MANUFACTURERS' COALITION, )<br><br>Defendant-Intervenor. ) | Court No. 20-00060 |

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S APPLICATION
FOR ATTORNEY FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT**

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

TAMARI J. LAGVILAVA                    ANTONIA R. SOARES
Senior Attorney                        Senior Trial Counsel
Enforcement and Operations             U.S. Department of Justice
Office of the Chief Counsel            Civil Division, Commercial Litigation Branch
U.S. Customs and Border Protection     PO Box 480, Ben Franklin Station
                                       Washington, DC 20044
                                       Telephone:  (202) 305-7405
                                       antonia.soares@usdoj.gov


November 27, 2023                      Attorneys for Defendant

## TABLE OF CONTENTS

QUESTIONS PRESENTED ................................................................................................. 2

BACKGROUND ................................................................................................................... 3

I.      The Law Governing Customs And Border Protection's EAPA Determination ................ 3

II.     CBP's Determination That DTT Had Violated EAPA ....................................................... 4

III.    DTT's Challenge To CBP's EAPA Final Determination .................................................... 6

        A.      The Court's First Remand Opinion And CBP's Remand Redetermination ........... 7

        B.      The Court's Second Remand Opinion And CBP's Remand Redetermination ........ 9

        C.      The Court's Final Judgment ................................................................................ 10

SUMMARY OF THE ARGUMENT ................................................................................... 10

ARGUMENT ...................................................................................................................... 12

I.      Legal Standard ............................................................................................................... 12

II.     DTT's EAJA Application Should Be Denied .................................................................. 14

        A.      The Government's Position Was Substantially Justified ..................................... 15

                1.      CBP's Position Was Substantially Justified ............................................. 15

                2.      The Government's Litigation Position Was Substantially Justified
                        And DTT *Concedes* As Much .................................................................. 18

                3.      DTT's Arguments Lack Merit ................................................................. 22

        B.      The Special Circumstances Presented By This Case Make An Award Unjust ..... 25

                1.      An EAJA Award Would Be Unjust Because This Case Involves An
                        Issue Of First Impression And A Novel Issue As DTT Concedes ........... 25

                2.      An EAJA Award Would Be Unjust Because DTT Has Made
                        Misrepresentations In Its Fee Application ................................................ 27

        C.      The Court Should Reject DTT's Extra-Statutory Basis For Seeking Attorney
                Fees ..................................................................................................................... 30

III.   Even If DTT Were Entitled To An EAJA Award, Its Requested Attorney Fees Are Contrary To Law And Otherwise Unreasonable ...............................................33

    A.   DTT Fails To Establish That It Is Entitled To A Special-Factor Enhancement ....33

    B.   DTT Is Not Entitled To Attorney Fees Based On The Adjusted *Laffey* Matrix ....37

    C.   DTT Did Not Correctly Calculate The Cost Of Living Adjustment ....................38

    D.   DTT Applied An Incorrect Standard In Determining Paralegal Fees...................40

    E.   DTT Impermissibly Seeks Compensation For Litigating Unsuccessful Claims ...................................................................................................................40

    F.   DTT's Fee Request Is Unreasonable ..................................................................43

        1.   DTT's Time Entries Show An Excessive Number Of Attorney Hours And Excessive Reliance On Senior Attorneys ...........................................43

        2.   DTT Seeks Fees For Irrelevant Work .......................................................45

        3.   DTT's Seeks Fees For Vague And Redundant Time Entries ............................46

CONCLUSION.....................................................................................................................46

# TABLE OF AUTHORITIES

## Cases

*Adkins v. United States*,
 154 Fed. Cl. 290 (2021) ................................................................................... 42

*Air Transp. Ass'n of Can. v. FAA*,
 156 F.3d 1329 (D.C. Cir. 1998) ...................................................................... 30

*All One God Faith, Inc. v. United States*,
 589 F. Supp.3d 1238 (Ct. Int'l Tade 2022) ................................................... 17

*Almanza v. United States*,
 137 Fed. Cl.61 (2018) ............................................................................... 48, 51

*American Air Parcel Forwarding Co. v. United States*,
 697 F. Supp. 505 (Ct. Int'l Tade 1988) ............................................. 25, 26, 32

*Ardestani v. I.N.S.*,
 502 U.S. 129 (1991)...................................................................................... 35

*Automatic Plastic Molding, Inc. v. United States*,
 276 F. Supp.2d 1362 (Ct. Int'l Tade 2003) ................................................... 19

*Biery v. United States*,
 818 F.3d 704 (Fed. Cir. 2016)................................................................. 41, 42

*Broad Ave. Laundry & Tailoring v. United States*,
 693 F.2d 1387 (Fed. Cir. 1982)..................................................................... 21

*Buckhannon Bd. and Care Home, Inc. v.*
 *West Virginia Dep't of Health and Human Res.*,
 532 U.S. 598 (2001)...................................................................................... 14

*California Marine Cleaning, Inc. v. United States*,
 43 Fed. Cl. 724 (1999) .................................................................................. 43

*Chiu v. United States*,
 948 F.2d 711 (Fed. Cir. 1991)....................................................................... 43

*Devine v. Sutermeister*,
 733 F.2d 892 (Fed. Cir. 1984)......................................................... 16, 29, 31

*DGR Assocs., Inc. v. United States*,
 690 F.3d 1335 (Fed. Cir. 2012)..................................................................... 17

*Diamond Tools Tech. LLC v. United States,*
    545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ...................................................... *passim*

*Diamond Tools Tech. LLC v. United States,*
    609 F. Supp.3d 1378 (Ct. Int'l Trade 2022) .............................................. 11, 17, 46

*Eley v. District of Columbia,*
    793 F.3d 97 (D.C. Cir. 2015) ..................................................................................... 41

*Ellis v. United States,*
    711 F.2d 1571 (Fed. Cir. 1983) ................................................................................ 47

*F.J. Vollmer Co. v. Magaw,*
    102 F.3d 591 (D.C. Cir. 1996) ................................................................................. 39

*Fakhri v. United States,*
    507 F. Supp.2d 1305 (Ct. Int'l Trade 2007) ..................................................... 30, 34

*Fanning, Phillips & Molnar v. West,*
    160 F.3d 717 (Fed. Cir. 1998) ................................................................................. 35

*Farrar v. Hobby,*
    506 U.S. 103 (1992) .................................................................................................. 45

*Fidelity Constr. Co. v. United States,*
    700 F.2d 1379 (Fed. Cir.) ......................................................................................... 35

*Gaudiosi v. Mellon,*
    269 F.2d 873 (3d Cir. 1959) ............................................................................... 31, 33

*Gava v. United States,*
    699 F.2d 1367 (Fed. Cir. 1983) ......................................................................... 23, 27

*Gavette v. Office of Personnel Management,*
    808 F.2d 1456 (Fed. Cir. 1986) ......................................................................... 22, 23

*Haselwander v. McHugh,*
    797 F.3d 1 (D.C. Cir. 2015) ..................................................................................... 42

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ......................................................................................... *passim*

*Hubbard v. United States,*
    480 F.3d 1327 (Fed. Cir. 2007) ......................................................................... 43, 45

*I.N.S. v. Jean,*
    496 U.S. 154 (1990) ......................................................................................... *passim*

*Ikadan System USA, Inc. v. United States*,
   639 F. Supp.3d 1339 (Ct. Int'l Trade 2023) ........................................................... 23

*Int'l Custom Prods., Inc. v. United States*,
   77 F. Supp.3d 1319 (Ct. Int'l Trade 2015) ....................................................... 38, 40

*Int'l Custom Products, Inc. v. United States*,
   843 F.3d 1355 (Fed. Cir. 2016).......................................................................... 15, 38

*Jazz Photo Corp. v. United States*,
   597 F. Supp.2d 1364 (Ct. Int'l Trade 2008) ............................................... 38, 41, 47

*Johnson v. Yellow Cab Transit Co.*,
   321 U.S. 383 (1944)....................................................................................................... 31

*Keirton USA, Inc. v. United States*,
   627 F. Supp.3d 1342 (Ct. Int'l Trade 2023) ................................................... *passim*

*Laffey v. Northwest Airlines, Inc.*,
   572 F. Supp. 354 (D.D.C. 1983)..................................................................................... 41

*Levernier Constr., Inc. v. United States*,
   947 F.2d 497 (Fed. Cir. 1991).................................................................... 35, 36 45

*Lizarraga Customs Broker v. Bureau of Customs and Border Protection*,
   35 C.I.T. 1439 (2011) .............................................................................. 38, 39, 40

*Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*,
   837 F.2d 465 (Fed. Cir.)........................................................................................... 21

*Maracich v. Spears*,
   570 U.S. 48 (2013)....................................................................................................... 36

*Marek v. Chesny*,
   473 U.S. 1 (1985)......................................................................................................... 45

*McMillan v. Dep't of Justice*,
   No. 2015-3042, 2016 WL 11812593 n.1 (Fed. Cir. June 9, 2016) ........................... 42

*New Jersey v. EPA*,
   703 F.3d 110 (D.C. Cir. July 20, 2012) ................................................................... 51

*Norris v. S.E.C.*,
   695 F.3d 1261 (Fed. Cir. 2012)............................................................................. *passim*

*Oguachuba v. INS*,
   706 F.2d 93 (2d Cir. 1983)................................................................................... 30, 31

*Parrott v. Shulkin*,
    851 F.3d 1242 (Fed. Cir. 2017)........................................................................ 44

*Patrick v. Shinseki*,
    668 F.3d 1325 (Fed. Cir. 2011)........................................................................ 15

*Phillips v. General Services Admin.*,
    924 F.2d 1577 (Fed. Cir. 1991)........................................................................ 42

*Pierce v. Underwood*,
    487 U.S. 552 (1988).................................................................................*passim*

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945)........................................................................................ 31

*Richlin Sec. Serv. Co. v. Chertoff*,
    553 U.S. 571 (2008)........................................................................................ 44

*Rodriguez v. Sec. of Health and Human Servs.*,
    632 F.3d 1381 (Fed. Cir. 2011)........................................................................ 41

*Role Models America, Inc. v. Brownlee*,
    353 F.3d 962 (D.C.Cir.2004)............................................................... 42, 47, 49

*Royal Brush Mfg., Inc. v. United States*,
    75 F.4th 1250 (Fed. Cir. 2023) ......................................................................... 3

*Saysana v. Gillen*,
    614 F.3d 1 (1st Cir. 2010)............................................................................... 27

*Scarborough v. Principi*,
    541 U.S. 401 (2004).................................................................................*passim*

*Shah Bros. v. United States*,
    9 F. Supp.3d 1402 (Ct. Int'l Trade 2014) ......................................................... 38

*Starry Assocs., Inc. v. United States*,
    892 F.3d 1372 (Fed. Cir. 2018).................................................................*passim*

*Sumecht NA, Inc. v. United States*,
    437 F. Supp.3d 1316 (Ct. Int'l Trade 2020) ..................................................... 22

*Truckers United for Safety v. Mead*,
    329 F.3d 891 (D.C. Cir. 2003).......................................................................... 39

*WHR Grp., Inc. v. United States*,
    121 Fed. Cl.673 (2015).................................................................................... 43

## Statutes

19 U.S.C. § 1401a (1982) ................................................................................................ 23, 29

19 U.S.C. § 1517 ........................................................................................................................ 2, 3

19 U.S.C. § 1517(a)(5)(A) .................................................................................................. 17, 20

19 U.S.C. § 1517(b)(1) ....................................................................................................... 3, 4, 5

19 U.S.C. § 1517(e) ................................................................................................................... 6

19 U.S.C. § 1592 ................................................................................................................. 23, 37

19 U.S.C. § 1677j(b) ................................................................................................................. 6

28 U.S.C. § 2412 ...................................................................................................................... 11

28 U.S.C. § 2412(d) ....................................................................................................... *passim*

## Regulations

19 C.F.R. § 165.1 ...................................................................................................................... 6

19 C.F.R. § 165.15(d)(1) .......................................................................................................... 6

19 C.F.R. § 165.24(c) ................................................................................................................ 6

19 C.F.R. § 165.41 .................................................................................................................... 5

19 C.F.R. § 351.225(l)(3) .......................................................................................................... 7

## Administrative Decisions

*Diamond Sawblades and Parts Thereof from the People's*
    *Republic of China and the Republic of Korea,*
    74 Fed. Reg. 57,145 (Dep't Commerce Nov. 4, 2009) ............................................ 5

*Diamond Sawblades and Parts Thereof from the People's*
    *Republic of China and the Republic of Korea,*
    71 Fed. Reg. 29,303 (Dep't of Commerce May 22, 2006) ...................................... 7

*Investigation of Claims of Evasion of Antidumping and*
    *Countervailing Duties, Interim Regulations,*
    81 Fed. Reg. 56,477 (Dep't of Homeland Security Aug. 22, 2016) ....................... 16

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| DIAMOND TOOLS TECHNOLOGY LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant,<br><br>　　and<br><br>DIAMOND SAWBLADES<br>MANUFACTURERS' COALITION,<br><br>　　　　　Defendant-Intervenor. | Court No. 20-00060 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S APPLICATION
FOR ATTORNEY FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT**

Pursuant to Rule 54.1 of the Rules of this Court, defendant, the United States, respectfully submits this response in opposition to the application for attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA), filed by plaintiff, Diamond Tools Technology LLC (DTT or DTT USA) (ECF No. 103) (Pl. Br.).  The Court should deny DTT's EAJA application.  As demonstrated below, the Government's position before the agency and in this litigation was substantially justified because this case presented a matter of first impression and a novel issue.  Indeed, DTT *concedes* as much.

Even if the Court determines that the Government's position is not substantially justified, EAJA's provision governing "special circumstances" would render such an attorney-fee award unjust because the interpretation of the statutory provision at issue — the evasion provision of

the Enforce and Protect Act of 2015 (EAPA), 19 U.S.C. § 1517 — involves a matter of first impression and a novel issue.  Moreover, an EAJA award would be unjust because DTT has misrepresented its status as an Illinois limited liability company, and its submissions include misleading documents.

Furthermore, in the event that the Court concludes that DTT is entitled to attorney fees, DTT's requested award is contrary to law and unreasonable for the following reasons: (1) DTT failed to establish that it is entitled to enhanced EAJA fees based on a "special factor"; (2) DTT failed to establish that it is entitled to enhanced fees under the "Adjusted *Laffey* Matrix"; (3) DTT has not correctly calculated its requested cost-of-living adjustment (COLA); (4) DTT has not correctly determined its requested paralegal fees; (5) DTT impermissibly seeks attorney fees related to its unsuccessful claims; and (6) DTT impermissibly seeks attorney fees for excessive, irrelevant, vague, and duplicative time entries.

## QUESTIONS PRESENTED

1.      Whether the Government's position was substantially justified when it involved both an issue of first impression and a novel issue governing EAPA's material-false-statement element.

2.      In the event that the Court concludes that the Government's position was not substantially justified, whether this case presents "special circumstances" that would render an award of attorney fees unjust.

3.      In the event that the Court concludes that the Government's position was not substantially justified and that no special circumstances exist, whether DTT is entitled to its actual hourly fees under EAJA's "special factor" or enhanced fees under the Adjusted *Laffey* Matrix.

4.      In the event that the Court concludes that DTT is entitled to attorney fees under

EAJA, whether DTT's requested fees should be reduced because they were contrary to law and

are otherwise unreasonable.

## **BACKGROUND**

## I.      **The Law Governing Customs And Border Protection's EAPA Determination**

At issue in this case is a final determination under EAPA, which authorizes U.S. Customs

and Border Protection (CBP) to investigate allegations of evasion of antidumping (AD) and

countervailing (CVD) duty orders.  19 U.S.C. § 1517.  "Congress, concerned with evasion of

antidumping duties, on February 24, 2016, enacted the EAPA, a statutory scheme for

determining whether 'covered merchandise was entered into the customs territory of the United

States through evasion.'"  *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1255 (Fed. Cir.

2023) (quoting 19 U.S.C. § 1517(c)(1)(A)).  EAPA thus established a new CBP administrative

procedure for investigating allegations of evasion as part of the United States' efforts to ensure a

level playing field for domestic industries.  Under EAPA, Federal agencies or interested parties

may submit allegations to CBP that reasonably suggest that merchandise covered by an AD or

CVD order has entered the United States through evasion.

Upon receiving an allegation, the statute mandates a formal investigation process, and

CBP's regulations established additional procedures.  CBP's Trade Remedy Law Enforcement

Directorate (TRLED) must initiate an investigation within 15 days of receiving an allegation that

"reasonably suggests that covered merchandise has been entered into the customs territory of the

United States through evasion."  19 U.S.C. § 1517(b)(1).  EAPA defines "evasion" as:

> {E}ntering covered merchandise into the customs territory of the
> United States by means of any document or electronically
> transmitted data or information, written or oral statement, or act
> that is material and false, or any omission that is material, and that

> results in any cash deposit or other security or any amount of
> applicable antidumping or countervailing duties being reduced or
> not being applied with respect to the merchandise.

*Id.* § 1517(a)(5)(A).  The statute defines "covered merchandise" as merchandise that is subject

to an AD or CVD order.  19 U.S.C. § 1517(a)(3)(A)-(B).

The statute provides that, "{n}ot later than 90 calendar days after initiating an

investigation . . . {TRLED} shall decide based on the investigation if there is a reasonable

suspicion that such covered merchandise was entered into the customs territory of the United

States through evasion{.}"  *Id.* § 1517(e).  If there is such reasonable suspicion, TRLED is

required to impose interim measures, including "suspend{ing} the liquidation of each

unliquidated entry of such covered merchandise that entered on or after the date of the initiation

of the investigation{.}"  *Id.*

EAPA directs TRLED to make its final determination, "based on substantial evidence,"

within 300 calendar days after the initiation of the investigation.  *Id.* § 1517(c)(1)(A).  The

statute provides for de novo review of CBP's final determination from CBP's Office of

Regulations & Rulings (OR&R), *id.* § 1517(f)(1); 19 C.F.R. § 165.41, and judicial review in this

Court.  *Id.* § 1517(g)(2)(A)-(B).

## II.     CBP's Determination That DTT Had Violated EAPA

DTT is an importer of diamond sawblades, a circular cutting tool composed of two main

components: a "core" and "segments."  In November 2009, Commerce issued an antidumping

duty order on imports of diamond sawblades and parts thereof from China.  *Diamond Sawblades

and Parts Thereof from the People's Republic of China and the Republic of Korea*, 74 Fed. Reg.

57,145 (Dep't Commerce Nov. 4, 2009) (AD order) (the 2009 AD Order).  In February 2017, the

Diamond Sawblades Manufacturers' Coalition (the Coalition or DSMC), a group of U.S.

producers of diamond sawblades, filed an EAPA allegation that DTT was evading the 2009 order by transshipping Chinese diamond sawblades through Thailand, in coordination with its affiliate DTT Thailand, and presenting these transshipped sawblades to CBP as non-subject goods.

In March 2017, TRLED initiated an investigation and, thereafter, issued multiple requests for information (RFI) to DTT, seeking data related to the entry of its sawblades.  In June 2017, TRLED further investigated DTT Thailand's operations by visiting the facilities in Thailand. After that visit, TRLED concluded that there was "reasonable suspicion" of evasion because the company did not have sufficient capacity to produce to the amount needed to export to the United States.  Thereafter, TRLED imposed interim measures pursuant to 19 U.S.C. § 1517(e).

Thereafter, TRLED issued an additional RFI to DTT and DTT Thailand.  In response, DTT Thailand asserted that the company manufactured diamond sawblades onsite at its facility in Thailand, and that some of the cores and segments used were sourced from China.  TRLED determined that the 2009 AD order did not address expressly whether "covered merchandise" included diamond sawblades that resulted from the joining of subject components in Thailand. Accordingly, TRLED concluded that it was unable to determine whether the merchandise at issue is covered merchandise.  In November 2017, pursuant to 19 U.S.C. § 1517(b)(4)(A), TRLED referred the matter to Commerce as to whether the diamond sawblades laser welded in Thailand by DTT Thailand are within the scope of the 2009 AD order.

In August 2017, DSMC requested separately that Commerce issue a ruling that imports made in Thailand from cores and segments from China circumvent the 2009 AD order.  In December 2017, Commerce initiated a circumvention inquiry pursuant to 19 U.S.C. § 1677j(b). In July 2018, Commerce aligned the covered merchandise referral with its concurrent anti-circumvention inquiry.  In July 2019, Commerce found that diamond sawblades made with

Chinese cores and segments were circumventing the 2009 AD order, and that diamond sawblades made with Chinese cores and Chinese segments are covered merchandise. Specifically, Commerce found that, based on its circumvention determination, diamond sawblades made in Thailand by DTT using Chinese cores and Chinese segments are subject to the 2009 AD order.

Following Commerce's response to the EAPA referral, DTT filed with TRLED written submissions asserting that the company did not evade the 2009 AD order through its entries of diamond sawblades that were imported before December 1, 2017.  Specifically, DTT contended that, because Commerce initiated its circumvention inquiry on December 1, 2017, any entries of diamond sawblades manufactured in Thailand with Chinese cores and segments made prior to December 1, 2017 were not covered merchandise within the scope of the 2009 AD order.

In September 2019, TRLED issued its final affirmative evasion determination, finding that, "{b}ased on Commerce's response to the covered merchandise referral, . . . DTT's entries of diamond sawblades joined in Thailand were subject to the 2009 AD order on diamond sawblades."  In October 2019, DTT filed an appeal with CBP's OR&R for *de novo* review of TRLED's final determination.  In January 2020, OR&R sustained the final determination.

## III.   **DTT's Challenge To CBP's EAPA Final Determination**

In this Court, DTT challenged CBP's affirmative evasion determination on several grounds, contending that CBP:  (1) unlawfully imposed EAPA interim measures on entries of subject merchandise made before December 1, 2017 (the effective date of Commerce's determination that DTT's related exporter circumvented antidumping duties); (2) did not satisfy any of the three elements required to establish evasion; (3) unlawfully did not release confidential information obtained during CBP's investigation in violation of DTT's due process

rights; and (4) unlawfully applied EAPA interim measures four days after the deadline for reaching this determination.

Related to the material-and-false statements element of EAPA, DTT asserted that CBP unlawfully found that the company's entries satisfied that element because Chinese cores and segments joined in Thailand were outside the scope of the 2009 AD order.  In support of its argument, DTT relied on the 2006 final determination of the original AD investigation in which Commerce determined that a diamond sawblade's "country of origin should be determined by the location of where the segments are joined to the core."  *Diamond Sawblades and Parts Thereof from the People's Republic of China*, 71 Fed. Reg. 29,303 (Dep't of Commerce May 22, 2006) (final LTFV determ.), and accompanying Issues and Decision Memorandum at 17 (2006 IDM).  DTT maintained that, until December 1, 2017, the effective date of Commerce's affirmative final circumvention determination, DTT reasonably relied on Commerce's 2006 IDM, and correctly declared its imports from Thailand to be type "01" entries — that is, not subject to an AD or CVD order — because the country of origin was Thailand based on the country in which the cores and segments were joined.

### A.     The Court's First Remand Opinion And CBP's Remand Redetermination

In October 2021, the Court issued an opinion and order that rejected:  (1) DTT's due process and procedural challenges to CBP's imposition of interim measures; (2) DTT's due process challenge to CBP's determination not to provide DTT with proprietary evidence during the EAPA proceedings; and (3) DTT's argument that CBP failed to establish the "covered merchandise" element for evasion.  *Diamond Tools I*, 545 F. Supp. 3d at 1332-1351.  The Court, however, remanded in part for CBP to explain how DTT's entry of diamond sawblades prior to December 2017 as type "01" entries — that is, as entries not subject to an AD order — constituted a material and false statement or material omission under EAPA.  *Id.* at 1347-55.

In analyzing EAPA's material-and-false-statement element, the Court relied on Commerce's 2006 IDM issued in connection with its original antidumping investigation of diamond sawblades from China in which Commerce found that "country of origin should be determined by the location of where the segments are joined to the core." *Id.* at 1351-52 (quoting 2006 IDM at cmt. 4).  The Court found that, "{g}iven Commerce's clearly stated conclusion, DTT USA did not make a material and false statement by importing the diamond sawblades as Thai-origin because such a statement was not 'erroneous', 'untrue' or 'deceitful{ }'" based on the fact that "DTT USA's imports were made of Chinese cores and segments assembled in *Thailand.*" *Id.* at 1353 (emphasis in the original).  The Court concluded that, "by importing the diamond sawblades as Thai-origin, DTT USA complied fully with Commerce's clear directive that the country of origin be determined by the country in which the cores and segments are joined." *Id.*  In light of these findings based on the 2006 IDM, the Court found that CBP had not appropriately addressed whether a material false statement or act or material omission occurred.  *Id.* at 1353-54.

In January 2022, CBP issued its first remand redetermination, continuing to find that DTT made a material false statement with respect to merchandise entered prior to December 1, 2017, based on the scope and circumvention findings made by Commerce during the EAPA proceedings.  Remand Redetermination, ECF No. 70 (Redet. I).  Specifically, CBP interpreted EAPA to not require a showing of a level of culpability such as intent or negligence.  Rather, CBP interpreted "false" to mean "incorrect{,}" and referred to EAPA "as a strict liability statute."  Redet. I at 5; *see also id.* at 11, 17 (substantially same).  CBP also found that DTT's reliance on the 2006 IDM was "flawed" because, if anything, the 2006 IDM should have raised concerns regarding the potential risk of third-country assembly.  *Id.* at 9-10.  CBP also provided

legal authority demonstrating DTT's obligation to seek clarification from CBP or a scope ruling from Commerce to ensure that its imports were not subject to the 2009 AD order. *Id.*; *see also id.* at 17.

In briefing in support of CBP's remand redetermination, we contended that, CBP lawfully determined that the material-and-false statements element of the EAPA evasion provision does not contain a culpability requirement whereby the agency was required to determine DTT's state of mind when entering merchandise — that is, whether it had done so intentionally or negligently. In advancing its statutory interpretation, we relied on traditional tools of statutory construction and, alternatively, that the Government's interpretation was entitled to deference.

**B.** **The Court's Second Remand Opinion And CBP's Remand Redetermination**

In December 2022, the Court remanded a second time after concluding that CBP failed to provide an adequate explanation for its finding that DTT made a material and false statement or act, or a material omission. *Diamond Tools Tech. LLC v. United States*, 609 F. Supp.3d 1378, 1385-91 (Ct. Int'l Trade 2022) (*Diamond Tools II*). Rejecting our argument, the Court found that, in light of DTT's reliance on Commerce's 2006 IDM, DTT's failure to declare that its merchandise was subject to the AD order did not constitute a material and false statement under EAPA. *Id.* Accordingly, the Court directed CBP to issue a new determination "reconsider{ing} its conclusion consistent with this decision and the facts of this case and, in particular, the applicability of the EAPA in the confined circumstance of an importer's reliance on Commerce's clear directive." *Id.* at 1388.

Based on the Court's instructions, in the second remand redetermination, CBP reconsidered, under respectful protest, whether DTT made material false statements, acts, or omissions on its entries. Second Remand Redetermination, at 2, 7-10, ECF No. 92 (Redet. II).

In its analysis, CBP applied the Court's finding that, in filing its pre-December 1, 2017 entries, DTT was acting consistently with the 2006 IDM.  *Id.* at 7.  Under respectful protest, CBP concluded that, in light of "the limited set of facts applicable to DTT's pre-December 1, 2017 entries and the Court's . . . opinion in *Diamond Tools II*, . . . DTT did not make false statements, and thus its actions do not constitute evasion under EAPA."  *Id.*

### C.    The Court's Final Judgment

Although it agreed with CBP's redetermination finding of no evasion under EAPA, in its comments brief, DTT challenged CBP's explanation as to the basis for its redetermination under respectful protest.  On July 28, 2023, the Court issued a final judgment sustaining the second remand redetermination.

The Government did not appeal the Court's final judgment.

On October 26, 2023, DTT filed its EAJA application, contending that the Government's position was not substantially justified because CBP found that DTT engaged in evasion even though it complied with the "clear standard" set forth in Commerce's 2006 IDM, and because CBP failed to comply with the Court's first remand order.  Pl. Br. at 10-12.  Relying on EAJA's "special factor," DTT further contends that it is entitled to its actual fees in the amount of $603,111.11.  *Id.* at 12 & Pl. Ex. 1.  Alternatively, DTT contends it is entitled to enhanced fees under the Adjusted *Laffey* Matrix or to the application of a COLA.  *Id.* at 13.  In support of its EAJA application, DTT relies on the declaration of Dr. Hongyu Ye, the president and largest shareholder of DTT.  *See* Ye Decl. & Exs. 1-3.

### SUMMARY OF THE ARGUMENT

DTT's EAJA application should be denied for several reasons.

First, the Government's position was substantially justified.  DTT's sole successful claim involved the interpretation of the material-false-statement element of EAPA's evasion provision.

Although the Court ultimately positioned CBP to declare that DTT did not make a material false statement when it entered its merchandise based on its reliance on Commerce's 2006 IDM, the Government reasonably interpreted the material-false-statement element, in the absence of any precedent, as being governed by Commerce's current determination regarding the scope of the AD order.  The lack of any legal precedent governing that element in the EAPA statute counsels against an award of attorney fees in this case.  In fact, not only did the interpretation of the material-false-statement element present a matter of first impression, this case also presented a novel issue — namely, DTT's reliance on the 2006 IDM despite Commerce's more recent pronouncement regarding the scope of the AD order.  Indeed, DTT *concedes* that this case presented a matter of first impression (the interpretation of EAPA's evasion provision) *and* a novel issue (the relevance of Commerce's 2006 IDM to the EAPA statutory scheme).  Binding precedent forecloses a finding that the Government was not substantially justified when presented, as here, with matters of first impression or novel issues.  This case presents both.

Second, even if the Court were to conclude that the Government's position was not substantially justified, EAJA's provision governing "special circumstances" would render an award of attorney fees unjust.  Special circumstances have been recognized when the Government unsuccessfully advanced novel and credible legal theories in good faith, or when the case was one of first impression, or when it involved an unsettled area of the law.  An award of attorney fees would be unjust because this case presented a matter of first impression related to the interpretation of the material-false-statement element of the EAPA evasion provision.  The case also presented a novel issue related to the applicability of Commerce's 2006 IDM to CBP's evasion determination.  Again, DTT concedes as much.

- 11 -

Special circumstances that would render an award of attorney fees unjust are also presented by DTT's misrepresentations regarding its status as an Illinois limited liability company, as well as its misleading submissions to this Court in support of its EAJA application. DTT relies on the declaration of its president in contending that it is entitled to EAJA fees because CBP's EAPA investigation and subsequent litigation forced DTT out of business. However, publicly available records from the Illinois Office of the Secretary of State show that the Illinois limited liability company that DTT has identified as the entity at issue in this case was voluntarily dissolved in September 2016. Furthermore, the declaration includes misleading documents.

Third, even if the Court were to conclude that the Government's position was not substantially justified and that an award of fees was not otherwise unjust, DTT is not entitled to the amount of attorney fees it seeks for the following reasons: (1) DTT failed to establish that it is entitled to its actual fees based on a "special factor" because this case did not require specialized customs law skills; (2) DTT failed to establish that it is entitled to enhanced fees under the "Adjusted *Laffey* Matrix" because that matrix does not apply in cases like this one in which the hourly rate is limited by statute; (3) DTT has not correctly calculated its requested COLA; (4) DTT has not correctly determined the amount of paralegal fees available under EAJA; (5) DTT impermissibly seeks attorney fees related to its unsuccessful claims; and (6) DTT impermissibly seeks attorney fees for excessive, irrelevant, vague, and duplicative time entries.

## **ARGUMENT**

### I.    **Legal Standard**

Congress enacted EAJA "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights" in actions brought by or against the United

States.  *Scarborough v. Principi*, 541 U.S. 401, 407 (2004); *see also I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("{T}he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions.").

The Court may award EAJA fees when the applicant shows that it is an eligible and prevailing party in a civil action brought by or against the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. §§ 2412(d)(1)(A)-(B); *id.* § 2412(d)(2)(B).  A plaintiff bears the burden of alleging that the Government's position was not substantially justified, of demonstrating that it is a "prevailing party" that meets the financial eligibility conditions related to net worth and number of employees, and of filing a timely application containing an itemized account of fees and costs.  *Scarborough*, 541 U.S. at 405, 414.

The Government bears the burden of showing that its position was substantially justified. *Id.* at 415.  The "position of the United States" is defined in EAJA as "the position taken by the United States in the civil action {and} the action or failure to act by the agency upon which the civil action is based."  28 U.S.C. § 2412(d)(2)(D).  Thus, the agency's "prelitigation actions and the Government's litigation position are both relevant to the inquiry and both must be reasonable in fact and law."  *Int'l Custom Products, Inc. v. United States*, 843 F.3d 1355, 1358 (Fed. Cir. 2016).  Although the "position" of the Government involves prelitigation conduct as well as the litigation itself, when determining whether the position of the United States was justified, a court does not separately consider every position the Government has taken, but instead makes one determination for the action as a whole.  *Jean*, 496 U.S. at 159, 161-62.

The Supreme Court has held that a position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person" and has a "reasonable basis both in law and

- 13 -

fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Patrick v. Shinseki*, 668 F.3d 1325, 1330 (Fed. Cir. 2011) ("The government can establish that its position was substantially justified if it demonstrates that it adopted a reasonable, albeit incorrect, interpretation of a particular statute or regulation."). Thus, a prevailing party may recover fees in the "very small category of cases" in which "the Government's position will be deemed so unreasonable as to produce an EAJA award." *Pierce*, 487 U.S. at 574.

Even if the Government's position was not substantially justified, special circumstances may bar granting a prevailing party an EAJA award. *See* 28 U.S.C. § 2412(d)(1)(A). The "special circumstances" exception is intended to serve as a "safety valve . . . to {e}nsure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts." *Devine v. Sutermeister*, 733 F.2d 892, 895-96 (Fed. Cir. 1984) (quoting H.R. Rep. No. 96-1418, at 11, *as reprinted in* 1980 U.S.C.C.A.N 4984, 4990) (cleaned up).

## II.   DTT's EAJA Application Should Be Denied

DTT's EAJA application should be denied because CBP's affirmative evasion determination and the Government's litigation position were substantially justified given that this case presents an issue of first impression governing the interpretation of the EAPA statute, as well as a novel issue related to the significance of Commerce's 2006 IDM to CBP's EAPA determination. For the same reasons, the special circumstances presented by this case render a fee award unjust. Further, a fee award to DTT would be unjust because it has misrepresented its status as an Illinois limited liability company, and it has included misleading documents in its EAJA application.

### A.    <u>The Government's Position Was Substantially Justified</u>

DTT is not entitled to attorney fees because the Government's position was substantially justified. As demonstrated below, the Government had a reasonable basis in law and fact for finding evasion under EAPA and litigating the issue, and this case involves both a matter of first impression and a novel issue governing EAPA's material-false-statement provision.

The Supreme Court explained that "substantially justified" does not mean "'justified to a high degree,' but rather 'justified in substance or in the main'— that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565; *accord Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012). "{A} position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2.

When determining whether the Government's position is substantially justified, "the court considers whether, inter alia: (i) the issue is novel or a matter of first impression, i.e., the matter has not been clearly decided, (ii) the government had a reasonable basis in law and fact for litigating the issue, and (iii) there is a split in applicable authority." *Keirton USA, Inc. v. United States*, 627 F. Supp.3d 1342, 1346-47 (Ct. Int'l Trade 2023) (citing, among other cases, *Norris*, 695 F.3d at 1265-66 & *DGR Assocs., Inc. v. United States*, 690 F.3d 1335, 1342 (Fed. Cir. 2012)).

### 1.    <u>CBP's Position Was Substantially Justified</u>

CBP's affirmative determination of evasion was substantially justified.

Under EAPA, "{a} determination of evasion requires three elements: (1) entering covered merchandise into the United States; (2) by means of any document or data or information, written or oral statement, or act that is material and false, or any omission that is

material; and (3) that results in any applicable cash deposit or other security being reduced or not

applied to the merchandise." *Diamond Tools II*, 609 F. Supp.3d at 1383 (citing 19 U.S.C.

§ 1517(a)(5)(A); *All One God Faith, Inc. v. United States*, 589 F. Supp.3d 1238, 1241-42 (Ct.

Int'l Trade 2022), *appeal docketed*, No. 23-1078 (Fed. Cir. Oct. 25, 2022).

An examination of the merits of this EAPA action demonstrates that CBP's position in

the case, although ultimately unsuccessful, had a reasonable basis in law and fact.  First, since

EAPA was enacted in 2016, CBP's interpretation of the term "false" in the evasion provision's

second element has been consistent.  Only months after EAPA was enacted in February 2016,

CBP published interim regulations in the *Federal Register*, stating that "{e}xamples of evasion

could include, but are not limited to, . . . *false or incorrect* shipping and entry documentation{.}"

*Investigation of Claims of Evasion of Antidumping and Countervailing Duties, Interim*

*Regulations*, 81 Fed. Reg. 56,477, 56,478 (Dep't of Homeland Security Aug. 22, 2016)

(emphasis added).  CBP's coupling of "false" with "incorrect" demonstrates that, beginning with

EAPA's enactment, CBP has consistently taken the position that providing incorrect information

at entry is sufficient to constitute a material false statement, act, or omission under the statute.

Moreover, as explained in our remand briefing, beginning with its first EAPA evasion

determination in August 2017, CBP has consistently taken the position that incorrectly stating

that entered merchandise is not subject to an antidumping or countervailing duty order is

sufficient to constitute a material false statement, expressly rejecting the importer's lack-of-

knowledge defense as inconsistent with the plain terms of the statute.  *See, e.g.*, *Notification of*

*Final Determination as to Evasion*, EAPA Case No. 7175, 6, U.S. Customs and Border

Protection (Aug. 14, 2017) (in rejecting importer's scienter defense, concluding that the

importer's argument "ignores the statute's definition of evasion, which focuses only on whether

insufficient cash deposits or bonds were made, not the culpability of the parties"),

https://www.cbp.gov/document/report/eapa-case-number-151357175-eastern-trading-ny-inc-notice-final-determination-evasion (last visited March 28, 2022).

Consistent with this practice, CBP concluded that DTT had engaged in evasion with respect to merchandise entered prior to December 1, 2017, based on the scope and circumvention findings made by Commerce during the EAPA proceedings.  Redet. I, ECF No. 70.  Specifically, CBP interpreted EAPA to not require a showing of a level of culpability such as intent or negligence.  Rather, CBP interpreted "false" to mean "incorrect{,}" and interpreted EAPA to be "a strict liability statute."  Redet. I at 5.  Thus, CBP concluded that "{s}electing an incorrect entry type constitutes a false statement."  *Id.* at 11.  Because "the information that DTT provided to CBP . . . was incorrect{,}" CBP determined that "DTT made false statements to CBP when it declared that no AD duties were owed{.}"  *Id.* at 17.

Given this practice, CBP's position that DTT had engaged in evasion when declaring that no AD duties were owed was reasonable, notwithstanding the Court's ultimate legal conclusion that Commerce's 2006 IDM precluded CBP from determining that DTT had engaged in evasion. While the Court found DTT's position more convincing, it is not the case that CBP offered no defense or explanation.  Rather, CBP's practice of interpreting EAPA as a strict liability statute was the foundation for its actions.

Under similar circumstances, this Court has found CBP's position at the administrative level to be substantially justified.  In *Automatic Plastic Molding, Inc. v. United States*, this Court found that "the Government has adequately sustained its burden that Customs's position at the administrative level was substantially justified{ }" because it "examined the evidence before it, applied what it considered to be the appropriate legal standard, and provided an analysis based

on the facts and law as it understood them."  276 F. Supp.2d 1362, 1368 (Ct. Int'l Trade 2003).

The Court further found that "an examination of the evidence that was before Customs shows

that it was susceptible to different interpretations by reasonable people."  *Id.* at 1369.  The Court

thus concluded that "Customs was clearly reasonable in maintaining its position at the

administrative level and that it did not 'press{ } a tenuous position without factual or legal

foundation.'"  *Id.* (quoting *Gavette v. OPM*, 808 F.2d 1456, 1467 (Fed. Cir. 1986)); *see also id.*

at 1370 ("{I}t cannot be said that the Government, on behalf of Customs, did not make out a

substantial case or that its insistence on its position was not clearly reasonable.").

### 2.    The Government's Litigation Position Was Substantially Justified And DTT *Concedes* As Much

The Government's litigation position was substantially justified because it entailed a

reasonable consideration of the law and facts in a case of first impression and involving a novel

issue.

The Government was substantially justified in defending its position that the second

element of EAPA's evasion provision did not require CBP to establish DTT's culpability and

that Commerce's 2006 IDM did not render DTT's entries of subject merchandise lawful.  Faced

with an issue of first impression, the Government provided a reasonable basis for its statutory

interpretation based on the express terms of the statute.  In particular, the Government employed

traditional tools of statutory construction to show that CBP lawfully determined that the

material-and-false statements element of the EAPA evasion provision does not contain a

culpability requirement whereby the agency was required to determine DTT's state of mind

when erroneously entering its covered merchandise — that is, whether it had done so

intentionally or negligently.  *See* Def. Reply, ECF No. 83.

The Court disagreed with the Government's interpretation of the EAPA evasion

provision, and relied on Commerce's 2006 IDM in holding that DTT correctly entered its merchandise. But the Court's rejection of the Government's position on the merits does not render the Government's position less than substantially justified. The substantially-justified standard "does not raise a presumption that the Government position was not justified, simply because it lost the case." *Norris*, 695 F.3d at 1265 (cleaned up). "The decision on an award of attorney fees is a judgment independent of the result on the merits, and is reached by examination of the government's position and conduct through the EAJA prism, not by redundantly applying whatever substantive rules governed the underlying case." *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 467 (Fed. Cir.), *cert. denied*, 488 U.S. 819 (1988) (cleaned up). Nor does the Government's position have to be "correct" or even "justified to a high degree." *Id.* (quoting *Pierce*, 487 U.S. at 565, 566 n.2). Rather, "substantially justified" means only that the Government's position was "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person." *Id.* (quoting *Pierce*, 487 U.S. at 565); *see also Norris*, 695 F.3d at 1265 ("Put another way, substantially justified means there is a dispute over which reasonable minds could differ.") (cleaned up).

Moreover, "the government did not advocate for an unsupportable position under the applicable law." *Keirton USA, Inc.*, 627 F. Supp.3d at 1348. Indeed, in *Ikadan System USA, Inc. v. United States*, a decision issued seven months after *Diamond Tools II*, this Court held that EAPA is a strict liability statute after agreeing with the same statutory-construction analysis presented by the Government in this case. *Compare* 639 F. Supp.3d 1339, 1346-1350 (Ct. Int'l Trade 2023) *with* Def. Reply, ECF No. 83. DTT contends that "the existence of *Ikadan* does nothing to justify CBP's decision vis-à-vis DTT USA" given that the Court in *Ikadan*

- 19 -

distinguished this case due to the 2006 IDM.  Pl. Br. at 11.  But the *Ikadan* Court's statutory interpretation of EAPA's material-and-false-statements element demonstrates that the Government did not advocate an unsupportable position in this case.

Further, cases such as this one — involving matters of first impression — are precisely the types of cases in which the Federal Circuit has held that EAJA fees are not warranted.  The Federal Circuit has recognized that "in assessing the justification of the government's position, courts consider the clarity of the governing law, that is, whether judicial decisions on the issue left the status of the law unsettled, and whether the legal issue was novel or difficult." *Norris*, 695 F.3d at 1265 (cleaned up).

Here, there is a lack of binding legal precedent — indeed, there was a lack of *any* relevant case law — governing the interpretation of the EAPA provision.  Thus, this is precisely the type of case in which the Government's position has been found to be substantially justified. *See Norris*, 695 F.3d at 1265 (holding that the Government's position was substantially justified because "the government offered a reasonable legal argument on a somewhat unsettled {and} difficult issue over which reasonable minds could differ") (cleaned up); *Keirton USA, Inc.*, 627 F. Supp.3d at 1347 ("Here, the position of the United States was substantially justified because the issue was a novel issue, of first impression, and the government had a reasonable basis in law and fact to litigate the issue."); *Sumecht NA, Inc. v. United States*, 437 F. Supp.3d 1316, 1323 (Ct. Int'l Trade 2020) ("The uncertainty in the law during the underlying litigation also supports a conclusion that Defendant's position was substantially justified.") (citing cases).

This case is analogous to *American Air Parcel Forwarding Co. v. United States*, in which this Court found that the Government's position was substantially justified in a case involving CBP's interpretation of "the term 'assembled merchandise' under 'transaction value' provision

- 20 -

in 19 U.S.C. § 1401a (1982){.}"  697 F. Supp. 505, 506 (Ct. Int'l Trade 1988) (citation omitted).

The Court observed that "no prior reported decisions have construed the term{.}"  *Id.*  In

denying the prevailing party's EAJA application, the Court agreed with the Government's

assessment that "its legal position was based upon its reasonable interpretation of the statute,

legislative history, and relevant case law."  *Id.* at 507.

Indeed, in seeking a fee enhancement under EAJA's special factor, DTT *concedes* that

this case presented a matter of first impression (the interpretation of EAPA's evasion provision)

*and* a novel issue (the relevance of Commerce's 2006 IDM to the EAPA statutory scheme):

> Prior to this action, there were only a handful of cases in this Court
> that addressed EAPA generally and *no cases that addressed the*
> *culpability requirements of that statute.*  Bringing this case to a
> successful resolution required a deep study of EAPA and *how that*
> *statute intersects with Commerce's administration of the*
> *antidumping duty law as well as 19 U.S.C. § 1592.*

Pl. Br. at 12 (emphasis added).  Such a concession undermines DTT's claim that the

Government's position was not substantially justified.  *See Gava v. United States*, 699 F.2d

1367, 1371 (Fed. Cir. 1983) (in holding that "the government had a reasonable basis for litigating

the issue before the Court of Claims{,}" observing that, in its brief, plaintiff "twice described the

question . . . as 'one of first impression'").

Because no prior decision by this Court or the Federal Circuit has addressed the

interpretation of the material-false-statement provision of EAPA evasion provision, it would be

punitive to impose fees against the Government in this case.  Indeed, awarding attorney fees

against the Government under these circumstances could have a chilling effect on agencies'

ability to interpret statutes raising matters of first impression or novel issues under the laws they

administer.

3.   __DTT's Arguments Lack Merit__

Notwithstanding DTT's concession that this case presents both an issue of first impression and a novel issue, DTT contends that the Government's position is not substantially justified, relying on nothing more than the Court's rejection of the Government's position.  *See* Pl. Br. at 10-12.

As discussed above, although the Court rejected the Government's legal and factual analysis, the Court's disagreement with the Government creates no presumption that its position was not substantially justified.  Rather, the question as to whether the Government's position was substantially justified is analytically distinct from whether its merits position was correct or incorrect.  *See Scarborough*, 541 U.S. at 415 ("Congress did not . . . want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case.'"); *Norris*, 695 F.3d at 1265 (substantially same); *Keirton USA, Inc.*, 627 F. Supp.3d at 1349 ("Although the government's arguments were not ultimately persuasive, they were nevertheless reasonable arguments at the time they were advanced.").

DTT contends that the Government's position that DTT has engaged in evasion in violation of EAPA was not substantially justified because Commerce's 2006 IDM constituted a "clear standard" that it had not engaged in evasion.  Pl. Br. at 10-11.  DTT is wrong.  Reasonable minds could disagree about the relevance of the 2006 IDM to this EAPA case.  The 2006 IDM was issued by Commerce in an administrative review unrelated to any party in this case.  Significantly, when DTT raised its reliance argument during the anti-circumvention proceedings before Commerce, that agency provided a lengthy explanation as to why its 2006 IDM was not dispositive as to whether DTT had circumvented the AD order.  PR 208 at 10-13.  Commerce

explained that diamond sawblades from Thailand were not investigated in the 2006 IDM, and

that the anti-circumvention inquiry was the first time Commerce was examining whether

diamond sawblades made with Chinese cores and/or Chinese segments by a company in

Thailand and exported to the United States should be included in the AD order on diamond

sawblades from China. *Id.* Commerce further explained that the 2006 IDM involved substantial

transformation analysis to determine country of origin of diamond sawblades, and that was based

on the record of the investigation and information supplied by the specific respondents in that

investigation, which did not include DTT. *Id.* Here, however, Commerce's findings in its anti-

circumvention proceedings were based on information that DTT provided about its own specific

production process, and Commerce's findings applied only to DTT. *Id.* Given Commerce's

assessment of its 2006 IDM, CBP was not unreasonable in also questioning the relevance of the

2006 IDM to the EAPA investigation.

DTT also contends that the Government's position that DTT engaged in evasion was not

substantially justified because CBP failed to comply with the Court's first remand order. Pl. Br.

at 11-12. But CBP reasonably interpreted the Court's remand order as inviting further treatment

of the second statutory element, including defining "false." Redet. at 3, 7. The Court found that

CBP's final determination did not satisfy EAPA's material-false-statement element, stating that

it was remanding to permit "Customs to provide a well-buttressed and well-reasoned explanation

of its conclusion." *Diamond Tools Tech. LLC*, 545 F. Supp. 3d at 1351, 1355; *see also id.*

(remanding "for reconsideration to make a finding consistent with this opinion as to whether

DTT USA made any material and false statement or act, or material omission"). In responding

to the Court's first remand order, in good faith, the Government sought to address the issues

raised by the Court. Again, that the Court concluded that CBP failed to comply with the remand

order does not create a presumption that CBP's position was not substantially justified.  In any

event, the Federal Circuit has held that the Government's litigating position was substantially

justified "even where, as here, the court's decision was highly critical of the government's action

that the suit challenged."  *Gava*, 699 F.2d at 1371; *see also Saysana v. Gillen*, 614 F.3d 1, 6-7

(1st Cir. 2010) (holding that the Government's position was not unreasonable even then the

decision at issue contained "strong language . . . regarding the clarity of the statute").

Although claiming the Government's interpretation of "evasion" is not substantially

justified, DTT did not raise the issue concerning whether the material-and-false-statements

provision required a showing of culpability in its motion for judgment on the record.  None of

DTT's arguments governed the interpretation of the term "false" in the second statutory element.

*See* Pl. MJAR at 29-32, ECF No. 47-2.  Rather, DTT's arguments were confined to the first and

third statutory elements.  *Id.*  Whether the second element includes a culpability requirement did

not arise until the February 25, 2021 oral argument.  *See* Hr'g Tr. 57:15-64:3, ECF No. 63.

Indeed, although now claiming that "false" must be read to include a culpability requirement,

during the February 25 oral argument, DTT asserted that "we're not making any scienter

argument."  *Id.* at 61:14.  Only after the Court issued *Diamond I* and remanded the case to CBP

did DTT focus its challenge on the issue of culpability.  Because DTT had not raised this issue in

its motion for judgment on the administrative record, the parties had not briefed statutory

interpretation until the first remand order in *Diamond Tools I.*  Thus, it was reasonable for CBP

to conclude that the Court expected the remand redetermination to include statutory

interpretation related to the term "false" under EAPA's second evasion element.  *Cf. Norris*, 695

F.3d at 1266 (recognizing that, when the prevailing party does not raise an argument such as

citing to precedent it later argues is controlling, such circumstances "leav{e} room for the government to make a reasonable argument for a contrary result").

> **B.** **The Special Circumstances Presented By This Case Make An Award Unjust**

Even if the Court were to conclude that the Government's position was not substantially justified, a fee award would not be warranted if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This case presents special circumstances because it involves issues of first impression and novel issues. This case also presents special circumstances because DTT's EAJA application includes misrepresentations concerning its status as an Illinois limited liability company, as well as misleading documents. For these reasons, a fee award would be unjust.

> **1.** **An EAJA Award Would Be Unjust Because This Case Involves An Issue Of First Impression And A Novel Issue As DTT Concedes**

Congress intended for the "special circumstances" provision to be a "safety valve" to "insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of law that often underlie vigorous enforcement efforts." *Devine v. Sutermeister*, 733 F.2d 892, 895 (Fed. Cir. 1984) (quoting H.R. Rep. No. 96-1418, at 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, at 4990).

Special circumstances have been recognized when the Government unsuccessfully advanced novel and credible legal theories in good faith, or when the case was one of first impression, or when it involved an unsettled area of the law. *See, e.g.*, *Keirton USA, Inc.*, 627 F. Supp.3d at 1346 & n.5 ("Special circumstances include novel and credible legal theories the government raised in good faith.") (citing *Devine*, 733 F.2d at 895-96; *Am. Air Parcel Forwarding Co.*, 697 F. Supp. at 507 (recognizing special circumstances in a case of first impression).

- 25 -

As discussed above, this case presents a matter of first impression related to the interpretation of the material-false-statement element of the EAPA evasion provision, as well as a novel issue – that is, the relevance of Commerce's 2006 IDM to CBP's EAPA final determination despite Commerce's more recent pronouncement regarding the scope of the AD order.  Indeed, DTT *concedes* that this case presents both a matter of first impression and a novel issue.

In *American Air Parcel Forwarding Co.*, this Court found special circumstances because "th{e} case was one of first impression{,}" involving CBP's interpretation of "the term 'assembled merchandise' under 'transaction value' provision in 19 U.S.C. § 1401a (1982){.}" 697 F. Supp. at 506-507 (citation omitted).  The Court observed that "no prior reported decisions have construed the term{.}"  *Id.*  Given that "th{e} case was one of first impression{,}" the Court concluded that, "{t}o award attorneys' fees in such a case could have a chilling effect on the Customs Service from appraising any merchandise adversely to an importer if there has been no previous judicial construction of the particular terms of the value statute to the type of transaction in issue."  *Id.*  The Court further concluded that granting the prevailing party's EAJA application "could { } diminish vigorous defense by the government in such cases of first impression{, and} {t}he overall effect of such a posture would be adverse to the revenue and public interest and not within the intent of Congress under the EAJA."  *Id.*  Accordingly, "the Court f{ound} that special circumstances in this case would make unjust an award of attorneys' fees to {the prevailing party}."  *Id.*

The Court's holding in *American Air Parcel Forwarding Co.* applies with equal force here; this case also presents a matter of first impression related to statutory interpretation. Congress intended for the "safety valve" of the EAPA statute to cover this type of situation.

**2.     An EAJA Award Would Be Unjust Because DTT Has Made
          Misrepresentations In Its EAJA Application**

Special circumstances should also bar an EAJA award to DTT because it has

misrepresented its status as an Illinois limited liability company, and its submissions include

misleading documents.

EAJA's special-circumstances provision "also gives the court discretion to deny awards

where equitable considerations dictate an award should not be made." *Devine*, 733 F.2d at 895-

896 (quoting H.R. Rep. No. 96-1418, at 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, at

4990). "The 'special circumstances' language in the statute requires the application of traditional

equitable principles in determining whether a prevailing party is entitled to an EAJA award."

*Fakhri v. United States*, 507 F. Supp.2d 1305, 1320 (Ct. Int'l Trade 2007) (citing *Air Transp.*

*Ass'n of Can. v. FAA*, 156 F.3d 1329, 1333 (D.C. Cir. 1998); *Oguachuba v. INS*, 706 F.2d 93 (2d

Cir. 1983)). "The doctrine of unclean hands is equitable in nature and within the sound

discretion of the trial court." *Id.* (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach.*

*Co.*, 324 U.S. 806, 814-15 (1945); *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383 (1944)).

"The defense need not be raised by a party as the court can invoke it *sua sponte.*" *Id.* (citing

*Devine*, 733 F.2d at 896; *Gaudiosi v. Mellon*, 269 F.2d 873 (3d Cir. 1959)). "The maxim

imposes itself on a party seeking affirmative relief, whether a corporation or an individual,

requiring they act in good faith and conscience." *Id.* (citing *Precision Instrument Mfg. Co.*, 324

U.S. at 814-15). "The doctrine is invoked to protect the integrity of the court." *Id.* (citing

*Gaudiosi*, 269 F.2d at 881) ("Courts are concerned primarily with their own integrity in the

application of the clean hands maxim and even though not raised by the parties the court will of

its own motion apply it."). "When seeking affirmative relief under EAJA, equity requires that a

party has acted in good faith and fairly and not engaged in conduct condemned and pronounced

wrongful by honest and fair-minded men." *Id.* (citations and internal quotations omitted). "The moral intent, and not the actual injury incurred, is the fundamental inquiry in determining whether a party has unclean hands." *Id.*

Here, DTT should be barred from recovering a few award because it has made misrepresentations concerning its status as an Illinois limited liability company, and has submitted misleading documents to the Court.

Based on publicly available information, we have determined that Dr. Ye has served as president and shareholder of multiple entities bearing the name "Diamond Tools Technology LLC" in both Illinois and Indiana. The Illinois and Indiana entities, the respective dates of creation, and the current status of each of these entitles are listed in the table below.

| ENTITY NAME & ADDRESS | CREATION DATE | STATUS |
|---|---|---|
| Diamond Tools Technology LLC<br>221 S. Franklin Road, Ste. 740<br>Indianapolis, IN 46219-7718 | 12/29/2011 | Voluntarily Dissolved 1/7/2023 |
| Wanbang Diamond Tools USA Inc.<br>9339 Castlegate Dr.<br>Indianapolis, In, 46256 | 06/10/2015 | Voluntarily Dissolved 11/30/2019 |
| Diamond Tools Technology LLC<br>22 Lindon Lane<br>Vernon Hills, IL 60061 | 2/22/2010 | Voluntarily Dissolved 1/11/2011 |
| Diamond Tools Technology Inc.<br>723 Hastings Lane<br>Buffalo Grove, IL 60089 | 1/28/2011 | Dissolved 12/5/2011 |
| Diamond Tools Technology LLC<br>723 Hastings Lane<br>Buffalo Grove, IL 60089 | 12/29/2011 | Voluntarily Dissolved 9/27/2016 |
| Diamond Tools Technology LLC<br>22 Lindon Lane<br>Vernon Hills, IL 60061 | 3/16/2023 | Active |

*See* Appx1-11[1] (company profiles of DTT entities from the Illinois Secretary of State website and the Indiana Secretary of State website); *see also* Office of the Illinois Secretary of State Business Entity Search, https://apps.ilsos.gov/businessentitysearch/businessentitysearch (last visited Nov. 21, 2023); Indiana Secretary of State InBiz Website, https://bsd.sos.in.gov/publicbusinesssearch (last visited Nov. 26, 2023).  The DTT entity located in Buffalo Grove, Illinois — allegedly the entity that DTT contends was put out of business due to the EAPA investigation — was actually dissolved on September 27, 2016.  Appx8.  Thus, Dr. Ye has misrepresented that the DTT entity located in Buffalo Drive, Illinois, suspended its operations in 2022.  *See* Ye Decl. ¶¶ 7-8.  Significantly, the address that DTT provided in CBP's Automated Commercial Environment (ACE) system is for a DTT entity located on 9339 Castlegate Drive, Indianapolis, Indiana.  C.R. 24.  That DTT entity was voluntarily dissolved on November 30, 2019.  Appx2.

Further, the documents accompanying the Ye Declaration are misleading.  First, in support of DTT's claim that it was a "healthy operation," the Ye Declaration relies on 2016 financial statements from the DTT entity located in Buffalo Grove, Illinois.  Ye Decl. ¶ 3 & Ex. 1.  Not only is the Buffalo Grove, Illinois DTT entity not the relevant entity in this case, the 2016 financial statements expressly disclaim that they have been reviewed or audited.  *Id.* Ex. 1 at 3.

Second, in support of its claim that the EAPA investigation and the subsequent litigation led DTT to "suspend its operations in 2022" and "forced DTT USA out of business," Dr. Ye relies on what he declares to be DTT's 2022 financial statements.  *Id.* ¶ 7-8 & Ex. 2.  DTT's purported 2022 financial statements, however, bear no indication that they were prepared by a certified public accountant.  *Id.* Ex. 2.  Nor do DTT's purported 2022 financial statements

---

[1]  "Appx__" is a page of the Government's appendix accompanying this response brief.

provide a company address.  *Id.*  Thus, there is no basis to determine whether the purported 2022 financial statements are authentic or relate to the Buffalo Grove, Illinois DTT entity at issue in the 2016 financial statements.

Third, in support of this claim, DTT also relies on its purported 2022 IRS tax returns and 2022 Illinois and Indiana tax filings.  Ye Decl. ¶ 3 & Ex. 2.  But those tax filings do not appear to be associated with the Buffalo Grove, Illinois DTT entity in the 2016 financial statements.  Rather, the DTT entity at issue in the 2022 tax filings is located in Vernon Hills, Illinois.  *Id.* Ex. 2 at 7/48, 27/48, 36/48, 48/48.  And the street address of 22 Lindon Lane, Vernon Hills, Illinois, for the registered agent appearing in DTT's 2022 Illinois tax filing is the same street address as the DTT entity created on March 16, 2023.  *Id.* Ex. 2 at 31/48; *see also* Appx10-11.  The DTT entity created on March 16, 2023 is the only currently active DTT entity.

The special circumstances presented by DTT's misleading submissions and its misrepresentations concerning its status as a limited liability company warrant denying its EAJA application.  *See Fakhri*, 507 F. Supp.2d at 1321 (holding that due to "a series of misrepresentations to this court{,}" "{i}n equity, Plaintiff is without clean hands and is thus barred from recovering under the statute").

## C.    The Court Should Reject DTT's Extra-Statutory Basis For Seeking Attorney Fees

In its fee application, DTT asks this Court to award fees based on a standard found nowhere in the EAJA statute.  In particular, DTT contends that, "{a}side from these {statutory} criteria, the Court should consider what the actions of {CBP} have done to DTT USA: CBP has driven DTT USA out of business."  Pl. Br. at 1-2, 14-15.  DTT contends that "CBP has done this through the unlawful position it took in its {EAPA} investigation and through its unreasonable adherence to that unlawful position in this Court."  *Id.*  DTT further contends that "such an

award will provide some measure of compensation to DTT USA and, perhaps more importantly, such an award will bring a measure of accountability to CBP." *Id.* DTT also contends that the Court should consider alleged harm to its reputation arising from the EAPA determination. *Id.* at 15. DTT's attempt to engraft a new element into the EAJA statute fails for several reasons.

First, the EAJA statute does not authorize the Court to consider, as a basis for a fee award, any such alleged consequences of an agency enforcement action on an entity. Indeed, the Federal Circuit has held that "punishing governmental misconduct . . . {is} not among the reasons that Congress enacted § 2412(d)." *Starry Assocs.*, 892 F.3d at 1384. Rather, the purpose of EAJA, is "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights" in actions brought by or against the United States. *Scarborough*, 541 U.S. at 407 (2004).

Second, DTT's argument in favor of an extra-statutory element is foreclosed because the Court must interpret and apply EAJA strictly, and not attempt to "do equity" in a way that is not consistent with the statute. *Levernier Constr., Inc. v. United States*, 947 F.2d 497, 502-503 (Fed. Cir. 1991). Because it renders the United States liable for attorney fees for which it would not otherwise be liable, EAJA is a partial waiver of sovereign immunity, which "must be strictly construed in favor of the United States." *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991); *accord Levernier Constr., Inc.*, 947 F.2d at 502. Thus, EAJA allows this Court to make an award against the Government "only to the extent explicitly and unequivocally provided." *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 721 (Fed. Cir. 1998) (quoting *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1386 (Fed. Cir.), *cert. denied*, 464 U.S. 826 (1983)).

Finally, even if the EAJA statute permitted the Court to consider the alleged consequences of an enforcement action on a prevailing party, which it does not, DTT has failed

- 31 -

to show that its alleged demise is a result of CBP's EAPA investigation, final determination, and the subsequent defense of that determination.  DTT relies on the declaration of Dr. Ye, the president and largest shareholder of DTT, and documents appended thereto — DTT's 2016 financial statements, its 2022 financial statements, and its 2022 tax filings — as support for the purported financial health of DTT before the EAPA investigation commenced in 2017.  Ye Decl. & Exs. 1-3.  We discuss the irregularities presented by the Ye Declaration and its supporting documents in Section II.B.2 and, thus, will not focus on those particular issues here.  Instead, we show that, even in the absence of those issues, DTT fails to establish that CBP's EAPA investigation caused DTT's demise.

As a preliminary matter, absent from the Ye Declaration is *any* evidence of DTT's financial status from 2017 through 2021 — a time period that included a global pandemic.  Indeed, even DTT's 2016 financial statements do not support DTT's claim that it was a "healthy operation" at that time.  Rather, DTT's 2016 financial statements state under "Significant Change in Operations" that "the company increased operating expenses by 9%, while sales decreased by 17% as compared to 2015{,}" and that "{n}arrowing gross margin percentage and increasing personnel costs and travel expenses are the most obvious contributors to significant losses in 2016."  Ye Decl. Ex. 1 at 8 (p. 9/9).  Had DTT continued with its "significant losses" for the years subsequent to 2016 — including during the global pandemic, it is plausible that DTT was "driven out of business" due to circumstances unrelated to CBP's EAPA investigation and subsequent litigation.  DTT has not demonstrated otherwise.

In sum, the Court should reject DTT's attempt to have this Court introduce an element into its EAJA analysis that impermissibly calls upon the Court to "do equity."  *Levernier*, 947 F.2d at 502-503; *cf. Starry Assocs., Inc*, 892 F.3d at 1381 ("declin{ing} Starry's invitation to

construe the 'special factor' exception to 'operate to the farthest reach of {its} linguistic

possibilities' in a manner that 'contravene{s} the statutory design.'") (quoting *Maracich v.*

*Spears*, 570 U.S. 48 (2013)).

### III.   Even If DTT Were Entitled To An EAJA Award, Its Requested Attorney Fees Are Contrary To Law And Otherwise Unreasonable

If the Court were to award attorney fees, DTT's requested award is contrary to law and

unreasonable for the following reasons: (1) DTT failed to establish that it is entitled to enhanced

EAJA fees based on a special factor; (2) DTT failed to establish that it is entitled to enhanced

fees under the "Adjusted *Laffey* Matrix"; (3) DTT has not correctly calculated its requested

COLA; (4) DTT has not correctly calculated its requested paralegal fees; (5) DTT impermissibly

seeks attorney fees related to its unsuccessful claims; and (6) DTT impermissibly seeks attorney

fees for excessive, irrelevant, vague, and duplicative time entries.

### A.   DTT Fails To Establish That It Is Entitled To A Special-Factor Enhancement

DTT contends it is entitled to its actual attorney fees at an hourly rate of $617.84 rather

than EAJA's $125 statutory cap based on EAJA's "special factor" enhancement.  Pl. Br. at 12.

In particular, DTT contends that this case requires "specialized customs law skills" because

"{p}rior to this action, there were only a handful of cases in this Court that addressed EAPA

generally and no cases that addressed the culpability requirements of that statute{,}" and that

"{b}ringing this case to a successful resolution required a deep study of EAPA and how that

statute intersects with Commerce's administration of the antidumping duty law as well as 19

U.S.C. § 1592."  *Id.*  DTT further contends that its "law firm, White & Case LLP, had the

required depth of knowledge in all of these fields{,}" and that "{t}his specialized knowledge

warrants a significant enhancement well above the $125 statutory fee contained in the EAJA{ }"

— that is, to $617.84, "{t}he average hourly rate for the White & Case professionals who worked on this case{.}"  *Id.*  DTT's arguments fail for several reasons.

Under EAJA, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).  The Supreme Court examined the meaning of § 2412(d)(2)(A)'s "special factor" exception in *Pierce*, holding that "the exception for 'limited availability of qualified attorneys for the proceedings involved' must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence."  487 U.S. at 572.  The Supreme Court further explained that the exception "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question — as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation."  *Id.*  The Court then provided two examples of the former:  "an identifiable practice specialty such as patent law, or knowledge of foreign law or language."  *Id.*  "That the $125 per hour cap appears significantly outdated . . . cannot be a basis for redefining the 'special factor' language in the statute{, and} Congress may address any current inconsistency with the realities of legal practice by raising the statutory cap."  *Starry Assocs., Inc.*, 892 F.3d at 1379 n.2.

First, DTT's contention that this case requires "specialized customs law skills" is unfounded.  Pl. Br. at 12.  This Court has recognized that "cases involving customs law are not automatically worthy of elevated attorneys' fees{.}"  *Int'l Custom Prods., Inc. v. United States*, 77 F. Supp.3d 1319, 1333 (Ct. Int'l Trade 2015) (quoting *Shah Bros. v. United States,* 9 F. Supp.3d 1402, 1410 (Ct. Int'l Trade 2014)), *aff'd*, 843 F.3d 1355 (Fed. Cir. 2016).  Rather, "a special factor fee enhancement may be appropriate where specialized skills in customs law are

both necessary and limited." *Id.*; *see also Jazz Photo Corp. v. United States*, 597 F. Supp.2d 1364 (Ct. Int'l Trade 2008) ("The court next considers whether specialized customs law skills were required for competent representation in the case.") (citing *Pierce*, 487 U.S. at 572); *Lizarraga Customs Broker v. Bureau of Customs and Border Protection*, 35 CIT 1439, 1460 (2011) ("{T}he grant of a special factor enhancement is conditioned upon the requirement that specialized skill was actually needed for the action before the court.").

Ignoring this standard, DTT has failed to demonstrate that there were a limited number of qualified attorneys available to handle this matter, and has also failed to demonstrate that this litigation required "specialized customs law skills." The statutory interpretation issues presented by this case do not constitute a specialized area of law pursuant to the standards of *Pierce*, and knowledge of customs law was not required to achieve the resolution of this case. The sole issue in which DTT was a prevailing party related to the interpretation of the second element of the EAPA evasion provision related to material-and-false statements. The litigation presented a question of statutory interpretation and, thus, only required an understanding of statutory interpretation and administrative law. All litigators of general competence should be familiar with the principles of statutory interpretation. Thus, any competent litigator would have been qualified to handle this case. Consequently, no specialized skills or knowledge were necessary for the resolution of this case. Further, the expertise that White & Case attorneys have acquired regarding EAPA through practice does not qualify for a special-factor enhancement. *See, e.g.*, *Truckers United for Safety v. Mead*, 329 F.3d 891, 895 (D.C. Cir. 2003) ("stressing that nothing in EAJA or its legislative history indicates that the Congress intended to entitle 'all lawyers practicing administrative law in technical fields' to a fee enhancement, we {have} refused to recognize 'expertise acquired through practice' as a special factor warranting an enhanced fee");

*F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 598 (D.C. Cir. 1996) ("If expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements").

In support of its claim for a "special factor" enhancement, DTT relies on *Lizarraga Customs Broker*, and the Court's observation that, "for purposes of EAJA, customs law is a specialized practice area, distinct from general and administrative law."  Pl. Br. at 12 (quoting 35 C.I.T. at 1460).  But, as demonstrated above, the Court's analysis in *Lizarraga Customs Broker* did not end there.  Rather, the Court also considered whether "specialized customs law skills were required for competent representation in this case{,}" and concluded plaintiff was *not* entitled to such an enhancement.  *Lizarraga Customs Broker*, 35 C.I.T. at 1460 (citing cases). The facts of this case compel the same result.

Moreover, DTT's reliance on the difficulty and novelty of the case — that handling it required "a deep study of EAPA," and that "White & Case LLP, had the required depth of knowledge" — are precisely the types of considerations that the Supreme Court rejected in setting forth the relevant standard.  *See Pierce*, 487 U.S. at 573 ("The 'novelty and difficulty of issues,' the 'work and ability of counsel,' and 'the results obtained,' . . . are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are.").  Even *Lizarraga Customs Broker*, a case upon with DTT relies for its special-factor argument, *rejected* the novelty of the issues presented as a basis for application of the special factor, holding that "the novelty and difficulty of the issues, although they were present, did not require the attention of lawyers who specialize in customs law."  35 CIT at 1460.

In sum, DTT has failed to establish the basis for a special factor enhancement.

**B.** **DTT Is Not Entitled To Attorney Fees Based On The Adjusted *Laffey* Matrix**

Alternatively, DTT contends that, if the Court does not award it attorney fees based on the actual rates charged by White & Case, then the Court should award it attorney fees based on the "Adjusted *Laffey* Matrix."  Pl. Br. at 13.  DTT is wrong.

"Both the *Laffey* Matrix and the Adjusted *Laffey* Matrix are prepared by the U.S. Attorney's Office for the District of Columbia and include a chart of hourly rates for attorneys based on the number of years in practice." *Rodriguez v. Sec. of Health and Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011).  The methodology used to compute the rates started with the matrix of hourly rates developed in *Laffey v. Northwest Airlines, Inc.* 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).  In that case, "the District Court for the District of Columbia set out a matrix of reasonable rates for attorneys in the Washington, D.C. metropolitan area who were engaged in complex federal litigation at that time." *Biery v. United States*, 818 F.3d 704, 712 (Fed. Cir. 2016) (citations omitted).

DTT contends that "{t}his matrix is the 'first and most influential matrix' in the D.C. Circuit 'for lawyers who practice 'complex federal litigation.'"  Pl. Br. at 13 (quoting *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015)).  But the Federal Circuit has not adopted the *Laffey* Matrix.  *See Biery*, 818 F.3d at 713 ("We have not had occasion to determine whether the *Laffey* Matrix is an appropriate starting point for fee awards, but have acknowledged its use by the Court of Federal Claims.").

Indeed, the Federal Circuit has held that the *Laffey* Matrix is inapplicable in EAJA matters given that it provides for a presumptive statutory cap of $125 per hour.  *See McMillan v. Dep't of Justice*, No. 2015-3042, 2016 WL 11812593, at *3 n.1 (Fed. Cir. June 9, 2016) ("By its

terms, {the *Laffey* Matrix} "does not apply to cases in which the hourly rate is limited by statute."); *see also Phillips v. General Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991) ("The statute, however, constrains us to a lodestar award of ${125} per hour, increased only by the cost of living adjustment."); *Haselwander v. McHugh*, 797 F.3d 1, 4 (D.C. Cir. 2015) ("It is understood . . . that this Matrix does not apply in cases in which the hourly rate is limited by statute, as is so with EAJA.") (citing  28 U.S.C. § 2412(d) & *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 968-69 (D.C. Cir. 2004) (holding that the statutory cap trumps with respect to fee requests under EAJA); *Adkins v. United States*, 154 Fed. Cl. 290, 305 (2021) (in analyzing a fee-shifting statute with terms similar to EAJA, holding that "the *Laffey* Matrix (or its variations) is not applicable when determining reasonable attorney's fees" when a relevant fee-shifting statute "expressly caps the hourly rate at a cost-of-living-adjusted $125").

## C.   DTT Did Not Correctly Calculate The Cost Of Living Adjustment

In the event that the Court rejects its fee-enhancement arguments, DTT contends that its attorneys should be compensated at an hourly rate of $245.42 to reflect the COLA.  Pl. Br. at 13 & Attach. 1.  As demonstrated below, DTT's COLA calculation is incorrect.

Under EAJA, a $125 per-hour cap applies to attorney fees awards "unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).  To receive a COLA in its award, a plaintiff must allege that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index (CPI), and provide the Court with relevant CPI data.  *AGMA Security Service, Inc. v. United States*, 160 Fed. Cl. 384, 403 (2022).

To calculate the COLA, courts multiply EAJA's $125 hourly cap by the applicable CPI and then divide that product by $155.7, which is the CPI for March 1996, when the cap was

- 38 -

raised from $75 to $125.  *Id.* (citing *California Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 733-34 (1999)).  In determining which CPI is applicable to a given award, the Federal Circuit has adopted the use of "a single mid-point inflation adjustment factor applicable to services performed before and after that mid-point."  *Id.* (quoting *Chiu v. United States*, 948 F.2d 711, 722 n.10 (Fed. Cir. 1991)).  "Under the 'mid-point' method, the Court determines the 'month that lies at the midpoint between the first and last month for which attorneys' fees are being awarded,' and uses the CPI for that 'mid-point' month as the basis for the cost of living adjustment to the statutory cap."  *Id.* (quoting *WHR Grp. v. United States*, 121 Fed. Cl. 673, 679 (2015)).  Next, the ratio between the mid-point CPI and the baseline CPI must be computed.  *Id.* Thus, the formula for calculating a COLA adjustment is as follows:

$$\$125 \quad \text{x} \quad \frac{\text{mid-point CPI}}{\text{baseline CPI}}$$

*Id.*  As discussed above, the baseline CPI is 155.70.  *Id.* (citing cases).  If a local CPI is available for the area where the attorneys performed their services, then the local CPI should be used instead of the national CPI.  *Parrott v. Shulkin*, 851 F.3d 1242, 1249-50 (Fed. Cir. 2017).

Most of the legal services in this case were provided from March 27, 2020 through July 28, 2023 when the Court entered judgment.  There are 1,218 days between the two dates, and the midpoint falls at 609 days, or on November 26, 2021.  Accordingly, the Court should use the CPI from November 2021 to calculate the COLA adjustment.  Based upon the CPI-U for the Mid-Atlantic area, the CPI-U for November 2021 is $277.95.  *See* Bureau of Labor Statistics, United States Department of Labor, https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexhistorical_us_table.htm (last visited Nov. 18, 2023).  Applying the formula, the CPI calculation should be $125 (statutory cap) x $277.95 (CPI for the Mid-Atlantic region for November 2021) /155.70 (March 1996 CPI) = $223.15 per hour.

- 39 -

Rather than applying this formula, DTT used the CPI Inflation Calculator from the U.S.

Bureau of Labor Statistics, which uses the CPI for All Urban Consumers (CPI-U) U.S. cities

average series for all items.  *See* Pl. Br. Ex. 3.  Because DTT did not apply the requisite formula

for calculating the COLA-adjusted hourly rate, the Court should reject DTT's cost-of-living

adjusted hourly rate of $245.42 and adopt the Government's $223.15 adjusted hourly rate.

### D.   DTT Applied An Incorrect Standard In Determining Paralegal Fees

DTT contends that it is entitled to fees for the services of two paralegals in the amounts

of $238.12 and $222.13, respectively.  *See* Pl. 13-14 & Attach. 1.  DTT is not entitled to these

fee amounts.

While the Supreme Court has held that paralegal fees may be reimbursed at market rates

as opposed to cost, *Richlin Security Service Co. v. Chertoff*, 553 U.S. 571, 573, 587-88 (2008),

the Federal Circuit has held that paralegal fees are subject to EAJA's $125 statutory

cap.  *Levernier Constr., Inc.*, 947 F.2d at 503.  The Federal Circuit further held that, because the

statute does not refer to a COLA for non-attorneys, paralegal fees may not be augmented by a

COLA.  *Id.*  Thus, the paralegal rates should also be capped at the EAJA rate of $125 per hour.

### E.   DTT Impermissibly Seeks Compensation For Litigating Unsuccessful Claims

DTT's itemized statements include fees related to issues for which it was unsuccessful in

this litigation.  *See* Pl. Br. Ex. 1.  Under EAPA, DTT is not entitled to fees for advancing

unsuccessful claims.

In determining whether a prevailing party is seeking reasonable attorney fees, the Court's

first step is to calculate a "lodestar" by multiplying the number of hours it finds the prevailing

party expended on the litigation by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424,

433 (1983).[2]  The party seeking fees under EAJA bears the burden of submitting evidence

supporting the hours worked.  *Id.*  "{T}he extent of a plaintiff's success is a crucial factor in

determining the proper amount of an award of attorney's fees{,}" and "where the plaintiff

achieved only limited success, the district court should award only that amount of fees that is

reasonable in relation to the results obtained."  *Id.* at 440; *see also Farrar v. Hobby*, 506 U.S.

103, 114 (1992) ("Indeed, 'the most critical factor' in determining the reasonableness of a fee

award 'is the degree of success obtained.'") (citations omitted); *accord Hubbard v. United

States*, 480 F.3d 1327, 1333 (Fed. Cir. 2007).

    Where a plaintiff is only partially successful, the Court must engage in a two-part inquiry

to calculate the appropriate amount of fees.  First, the Court must determine whether the plaintiff

"fail{ed} to prevail on claims that were unrelated to the claims on which he succeeded."

*Hensley*, 461 U.S. at 434.  If a plaintiff's successful and unsuccessful claims are unrelated, the

hours spent on the unsuccessful claims must be excluded in calculating the fee.  *Id*.  Here, DTT's

sole successful claim — whether CBP's EAPA determination satisfied the material-and-false

statements element of the evasion provision — is unrelated to its unsuccessful claims.

Accordingly, DTT should not be awarded fees related to its unsuccessful claims.

    Although conceding that it did not prevail on all of its challenges in this litigation (*see* Pl.

Br. at 3, 9), DTT nevertheless seeks attorney fees for its unsuccessful claims.  DTT's 18-page

itemized billing statements include entries for DTT's unsuccessful due process, procedural, and

covered merchandise challenges, as well as its argument that the Court did not reach related to

---

[2]  Although *Hensley* did not involve the EAJA statute, the Supreme Court in *Jean*, 496
U.S. at 161, held that the *Hensley* analysis applies to EAJA cases.  *See also Hubbard*, 480 F.3d at
1333.

the EAPA evasion provision's third element.  *See* Pl. Br. Ex. 1; *see also* Appx12-29

(highlighting in yellow entries referring to unsuccessful claims and claim not reached by the

Court).  Many of the time entries related to its unsuccessful claims are either specifically referred

to as "due process" and "statutory procedures" or as "Claim 6" and "Claim 7."  Because attorney

fees for unsuccessful claims are not compensable under EAJA, DTT's claim for such fees should

be disallowed.  *See, e.g.*, *Jazz Photo Corp.*, 597 F. Supp.2d at 1371 ("conclud{ing} that the

better result in this case is to avoid a result requiring the government to bear the expense of

defending even its reasonable positions") (citing *Ellis v. United States,* 711 F.2d 1571, 1576

(Fed. Cir. 1983)).

Further, DTT's counsel included most of the fees related to its unsuccessful claims in

"block billing," the time-keeping method by which each lawyer and paralegal enters the total

daily time spent working on a case, rather than itemizing the time expended on specific tasks.

This type of billing requires the Court to approximate the amount of time which should be

allocated to each task.  *Role Models*, 353 F.3d at 971.  "With such inadequate descriptions the

court cannot determine with a high degree of certainty, as it must, that the billings are

reasonable." *Id.*  When faced with block billing entries making it impossible to determine the

appropriate amount attributable to successful arguments, some courts have simply voided the

entire time entries billed as block time, while other courts have deducted from the requested

number of hours.  *See Almanza v. United States*, 137 Fed. Cl. 611, 620 (2018) (citing cases

discussing these options).  The Court should consider these options here because it is impossible

to separate relevant reimbursable work from the irrelevant work in DTT's block-billing entries.

*See id.* (holding that, "because counsel have also included several block billing entries that

intermingle {irrelevant} settlement administration tasks with other services, the Court will reduce each of those entries by 50% to account for the disallowed time").

**F.   DTT's Fee Request Is Unreasonable**

In addition to impermissibly seeking fees for unsuccessful claims, DTT's fee application is unreasonable because it reflects:  (1) an excessive number of attorney hours and excessive reliance on senior attorneys; (2) irrelevant time entries; and (3) vague and redundant time entries.

**1.   DTT's Time Entries Show An Excessive Number Of Attorney Hours And Excessive Reliance On Senior Attorneys**

DTT's billing statements reflect an excessive number of hours and an excessive reliance on senior attorneys for briefing and preparation for oral argument.  The Court should exercise its discretion to reduce these requested fees.  Further, as discussed above, to the extent these fees are unrelated to the sole issue in which DTT is a prevailing party, any fee award should be reduced for that reason.

The Court should exclude from the fee calculation "hours that were not 'reasonably expended.'"  *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94-1011, at 6 (1976)).  Counsel for the prevailing party must exercise the same "billing judgment" it would in billing a private client, "exclud{ing} from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id*.

White & Case's itemized billing statements reflect an excessive number of hours and an excessive reliance on senior attorneys for briefing.  For example, DTT seeks fees in connection with the work of five attorneys — including two partners and a senior attorney — who billed 153.8 hours for preparing DTT's motion for judgment on the agency record, and for six attorneys — including two partners and two senior attorneys — who billed 139.97 hours for preparing DTT's reply in support of its motion for judgment on the agency record.  *See* Appx31.  Given

that DTT's reply brief numbered only 24 pages as compared to DTT's 38-page motion for judgment on the agency record, it is unreasonable for DTT to seek fees for a comparable number of hours and staffing for the two submissions.

Equally excessive is DTT's request for 144 hours of fees in connection with lead counsel's preparation for oral argument. *See* Appx31. Those 144 hours are billed to four attorneys, including two partners, as well as a senior trade analyst. *Id.* Given that the Court issued questions for oral argument, it is difficult to discern why preparation for oral argument would entail a number of hours comparable to the 153.8 hours billed by the five attorneys who prepared DTT's motion for judgment on the agency record. Such excessive fees should not be reimbursed. *See, e.g.*, *Role Models*, 353 F.3d at 972 ("{T}here is a point at which thorough and diligent litigation efforts become overkill.") (citation omitted).

Also excessive are the number of hours expended on remand briefing related to *Diamond I* and *Diamond II*. For example, five attorneys billed 36 hours to prepare comments on the draft remand redetermination related to *Diamond I*, and the same five attorneys billed 68.9 hours for preparing comments on the final remand redetermination related to *Diamond I. See* Appx32. The draft remand redetermination and the final version are virtually identical. Thus, it is unreasonable for DTT to seek almost double the amount of hours for its attorneys to prepare comments related to the final version of the remand redetermination.

The same excessive fees and attorney staffing appear in White & Case's billing statements related to the *Diamond II* remand briefing. In connection with that remand, five attorneys billed 36.7 hours to prepare comments on the draft remand redetermination, but then three attorneys expended 86.7 hours to prepare comments on the final remand redetermination. *See* Appx32. This level of effort is particularly unreasonable because, on remand, CBP

determined that DTT had not violated EAPA after applying the Court's *Diamond II* decision.
*See* Redet. II.

Because DTT has failed to demonstrate the reasonableness of the level of staffing and
hours billed for briefing and oral argument, the Court possesses the discretion to "exclude from
this initial fee calculation hours that were not 'reasonably expended.'" *See Hensley*, 461 U.S. at
434.

## 2. DTT Seeks Fees For Irrelevant Work

DTT's itemized statement also contains charges that are irrelevant to the EAPA
statutory interpretation issue.  Such fees should be disallowed.

Among the irrelevant entries are those related to White & Case's consideration of issues
for appeal to the Federal Circuit.  For example, page 15 of White & Case's itemized statement
refers to calls, discussions, and emails among five attorneys related to "appeal prospects" and
"possible appeal issues."  *See* Pl. Ex. 1.  Similarly, page 18 includes two entries related to
"appeal" and "research on rule governing appeal," respectively.  *Id.*  Other irrelevant entries
are the following:

- A May 13, 2020 time entry for "{r}esponding to the client's request to
  prepare a progress report for the auditors."  Because this work appears in
  block billing, it is difficult to discern how much of the 3.70 hours billed
  was devoted to this irrelevant work.

- A May 18, 2020 time entry related to "{o}ption of FOIA request in
  EAPA; internal discussions."

- A December 1, 2020 time entry for the following work on DTT's reply
  brief even though the reply brief had already been filed:  "Legal analysis,
  document review and correspondence related to CIT reply brief and
  relevant CIT precedent and case development and strategy."  Also, it is
  unclear how "case development and strategy" is relevant to work on
  DTT's reply brief.

- A February 13, 2023 time entry related to "'stay' negotiations with other Petitioner Counsel; pros and cons of stay discussed."

*Id.* at 2, 15, 18.

This Court should deduct such irrelevant hours from the fee request.

### 3.   DTT Seeks Fees For Vague And Redundant Time Entries

DTT's billing statements also reflect vague and duplicative entries.  For example, one of its attorneys provides multiple entries stating variations on the following:  "research judicial precedents precluding agency from, before reaching final administrative conclusion, using that conclusion as sole basis for finding presence of one of that conclusion's statutory prerequisites." *See* Pl. Ex. 1 at 6, 7 (November 16, 2020 through November 20, 2020 time entries).  Not only is this entry difficult to understand, it appears four times for a total of 16.1 hours by a senior attorney.  *Id.*

### CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny DTT's EAJA application.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General


PATRICIA M. McCARTHY
Director


/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

- 46 -

OF COUNSEL:

                /s/ Antonia R. Soares

TAMARI J. LAGVILAVA         ANTONIA R. SOARES
Senior Attorney                  Senior Trial Counsel
Enforcement and Operations     U.S. Department of Justice
Office of the Chief Counsel      Civil Division, Commercial Litigation Branch
U.S. Customs and Border Protection  PO Box 480, Ben Franklin Station
                         Washington, DC 20044
                         Telephone:  (202) 305-7405
                         antonia.soares@usdoj.gov

November 27, 2023           Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the attached "DEFENDANT'S RESPONSE TO PLAINTIFF'S

APPLICATION FOR ATTORNEY FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT"

contains 13,910 words and, thus, complies with the word-count limitation set forth in the Court's

Standard Chambers Procedures.

<u>/s/ Antonia R. Soares</u>
ANTONIA R. SOARES

## <u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that on this 27th day of November, 2023, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S APPLICATION FOR ATTORNEY FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT" was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ Antonia R. Soares</u>
ANTONIA R. SOARES